# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRETT CULVER,                    :

      Plaintiff             :

    v.                              :   NO. 1:CV-01-0904

COMMONWEALTH OF          :
PENNSYLVANIA, *et al.*,          :   (JUDGE KANE)

      Defendants            :

**FILED**
**MAY 0 9 2003**
HARRISBURG, PA.   DEPUTY CLERK

## DOCUMENTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

BY:  MARYANNE M. LEWIS
Deputy Attorney General
I.D. No. 83812

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation Section

Office of Attorney General
Litigation Section
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-9719 - Direct
(717) 772-4526 - Fax

DATED:   May 9, 2003

# <u>TABLE OF CONTENTS</u>

Unsworn Declaration of Thomas E. Miknich    . . . . . . . . . . . . . . . . . . . . . Exhibit A

Unsworn Declaration of Carol Dotter   . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit B

Unsworn Declaration of J. Kevin Kane   . . . . . . . . . . . . . . . . . . . . . . . . Exhibit C

Unsworn Declaration of Robert D. Shannon   . . . . . . . . . . . . . . . . . . . . . Exhibit D

Unsworn Declaration of Vincent F. Mooney   . . . . . . . . . . . . . . . . . . . . . Exhibit E

Deposition of Brett Culver taken July 30, 2002   . . . . . . . . . . . . . . . . . . Exhibit F

Exh A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRETT CULVER,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 1:CV-01-0904** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA,** *et al.*, | : | **(JUDGE KANE)** |
| | : | |
| **Defendants** | : | |

## UNSWORN DECLARATION OF THOMAS E. MIKNICH

I, **THOMAS E. MIKNICH**, hereby declare under the penalty of perjury that the following is true and correct and based upon my personal knowledge:

1.     I am currently employed by the Pennsylvania Department of Corrections ("DOC") as a correctional officer at the State Correctional Institution at Mahanoy. Pennsylvania ("SCI-Mahanoy").   I have been employed by the DOC for approximately ten years.

2.     At all times relevant to this complaint, I was a correctional officer assigned as the Program Services Officer in the Education Building at SCI-Mahanoy.

3.     As a corrections officer, I am familiar with the standard policies and procedures followed at SCI- Mahanoy, as well as those of the DOC, including inmate disciplinary procedures and record keeping practices concerning misconduct reports and inmate grievances.   I am also familiar with the various DOC Administrative Directives that impact inmates.

4.     As the Program Services Officer, it was my duty and responsibility to provide and the safety and security in the library  and to supervise inmates' library

activities.  This included, but was not limited to enforcing DOC policy during library hours to assure that inmates conduct themselves in a safe and  appropriate manner.

5.     On April 13, 2000, inmate Brett Culver, DD-3483 came to the desk for a pass from the Recreation Library.  I noticed that Culver had a folder with a newspaper and papers inside of the newspaper.  The papers appeared to me to be blank Grievance and Request Slip forms.  Pursuant to SCI-Mahanoy policy, folders and other documents are not permitted in the Recreation Library.  I also observed that the newspaper was that of inmate Dana Gillingham.  (*See* Attachment "A").

6.     I explained to Culver that inmates are not to posses another inmates newspaper outside of the cell block and that possession of another inmate's property is not permitted and is considered contraband.  I further explained to Culver that while files and documents are permitted in the Law Library, they are not permitted in the Recreation Library.  I gave Culver a warning and requested that he forfeit the newspaper.

7.     Culver refused to give me the newspaper and pursuant to DC-ADM 801, policy I issued Culver Misconduct No. A 159045, Possession of Contraband and Loaning or Borrowing Property and confiscated the property.  In accordance with DOC policy,   I issued Culver a Confiscation Receipt, No. A 150818 for the newspaper and  31 pages of what I described as legal work.  (*Id.*)

8.     Subsequent to the issuance of the misconduct, the confiscated materials were placed in an envelope, labeled,  sealed and taken to the property room, pending disposition of the misconduct.  I had no further involvement with the confiscated materials.

9.    Culver's misconduct hearing regarding was held on April 17, 2000. After a review of the information, documentation and evidence presented, the hearing examiner found Culver guilty of possession of contraband, reduced the charge to a Class II misconduct and revoked the contraband. (*Id.*)

10.   I did not have any conversations with the hearing examiner, the Superintendent, or anyone  regarding the sanction imposed regarding Culver's misconduct.

11.   After I issued the misconduct to Culver, I had no further discussion with him. At no time did I harass, stalk or make any threatening statements to Culver or falsify any of his records.

12.   At all times relevant to Culver's misconduct, as well as the allegations contained in the complaint, I acted in accordance with the Department of Corrections Administrative Directives, including DC-ADM 801 and acted in accordance with those directives.

5- 7 -03
**DATE**

*Thomas E. Miknich*
**THOMAS E. MIKNICH**
**Corrections Officer, SCI-Mahanoy**

# ATTACHMENT A

FORM 141    PART I         COMMONWEALTH OF PENNSYLVANIA
Rev. 6-84

☒ MISCONDUCT REPORT  ☐ OTHER    DEPARTMENT OF CORRECTIONS                    A 159045

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| DD3483 | Culver, Brett | SCImAH | 1510 | 4-13-00 | 4-13-00 |

| Quarters | Place of Incident |
|---|---|
| D/B #39 | Prog/svc CO's Desk |

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION**

Class 1 CAT B #8 Possession of Contraband

Class 1 CAT D #28 Loaning or borrowing Property

**STAFF MEMBER'S VERSION**    On Above date & time Inmate Culver DD3483 came to the Desk for his PASS from the Recreation Library. Inmate Culver had a Newspaper with law work on the Inside of Newspaper. The Newspaper was Inmate Gillingham, DANA DT5065 D/B#6. Confiscated Items Receipt No# A150818.

SSI

**IMMEDIATE ACTION TAKEN AND REASON**    Continue Present Status Pending Further Action By the Hearing Examiner

| PRE-HEARING CONFINEMENT | | | |
|---|---|---|---|
| | IF YES | | |
| | TIME | DATE | |
| ☐ YES | | | |
| ☒ NO | N/A | N/A | ☒ REQUEST FOR WITNESSES AND REPRESENTATION    FORMS GIVEN TO INMATE    ☒ INMATE'S VERSION |

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY    SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY | |
|---|---|---|---|
| CO'2 _____ -Miksich | CO'U W Bega | DATE | TIME 24 HOUR BASE |
| | | 4-13-00 | 1920 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | Misconduct Category | Signature of Person Serving Notice |
|---|---|---|---|
| DATE | TIME | ☒ CLASS 1  ☐ CLASS 2 | KCMayer /K.C. MAYER |
| 4-15-00 | 0800 | | |

**NOTICE TO INMATE**
You are scheduled for a hearing on this allegation on the date and the time indicated or as soon thereafter as possible. You may remain silent, if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class 1 misconduct, any pre-release status you have will be revoked.

Case 1:01-cv-00904-YK-KH    Document 72-3    Filed 05/09/2003    Page 8 of 100

**DC-154A**

## No. A 150818

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

## Confiscated Items Receipt (Inmate)

| DC Number | Name | Cell | Institution | Date | Time |
|---|---|---|---|---|---|
| DD 3483 | Culver | D/B #39 | SCImAH | 4-13-00 | 1510 |

| | Misconduct Report Prepared | Comment: |
|---|---|---|
| __Random Search<br>__General Search<br>__Investigative Search | Yes _X_ No ___ | Misconduct NO # A159045 |

| Items Confiscated | Items Confiscated |
|---|---|
| 1 EA Newspaper (Times-News, Erie P.A) | |
| 3 1 pages Leagle work 4 File | |
| | |
| | |
| | |
| | |
| | |

Signature and Title of Officer   CO' Mckinn

1. DC-15                    2. Deputy Superintendent for Operations                    3. Inmate

**DC-1** PART II A     **COMMONWEALTH OF PENNSYLVANIA**
Rev. 6-86
**INMATE REQUEST FOR**     **DEPARTMENT OF CORRECTIONS**
**REPRESENTATION AND WITNESSES**

| DC Number | Name | Institution | Date | Number as on Part I |
|---|---|---|---|---|
| DD 3483 | Culver, Brett | SCI MAH | 4-13-00 | A15 9045 |

You have been charged with a misconduct. You may request assistance and/or witnesses to appear at your hearing by completing the section(s) below.

In order to have assistance or witnesses at your hearing, you must complete this form and present all copies to one of your housing officers no later than 9:00 a.m. the first working day after you receive notice of the misconduct.

Assistance: ☐ I do not request assistance
☑ I request assistance by _Emory Smith #BH-9137 D/B_ _no, not necessary, DC_
(The person requested must be willing to assist you) _ADM Sec E, 5-9_

Witnesses: You may request witnesses in accord with DC-ADM 801. State the relevance and importance of the testimony the witness will give.

---

**If Inmate**
1. Name of Witness:    No.    Quarters

_Dana Gillingham DT-5265 D/B_

Why is this person's testimony relevant and important?

_He gave me the News Paper to hold._
_He was with me at Library, and_
_was there when the C.O. started the_
_incident. (Eye and ear witness.)_

**DO NOT WRITE IN THIS SECTION**
For Use by Hearing Examiner

Witness permitted? _No_ If not, why not?

---

_I can't decipher Names_

**If Inmate**
2. Name of Witness:    No.    Quarters

_Both Individuals who signed: Reporting Staff._
_Members   Sec of DC-141_

Why is this person's testimony relevant and important?

_Because Staff Members_
_Version DC-141 is untrue,_
_and verbal testimony is required for Record_
_as there has been Constitutional Rights violations._

Witness permitted? _No_ If not, why not?

_neither staff refused - Report is_
_sufficient as required staff test would_
_be._

---

**If Inmate**
3. Name of Witness:    No.    Quarters

Why is this person's testimony relevant and important?

Witness permitted?    If not, why not?

---

_Brett Culver_
**Inmate's Signature**

This section to be completed by Housing Officer only

Received completed form __0730__ hours __4-14-00__
    Time       Date

_R Sm__
**Housing Officer's Signature**

**Hearing Examiner's Signature**

WHITE—DC-15    YELLOW—Inmate's Copy To Be Given After Action By Hearing Examiner    **PINK—Staff Member Reporting Misconduct**

**DC-141**
Rev. 6-84

**PART II B**

**DISCIPLINARY HEARING REPORT**

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

| DC Number | Name | Institution | Hearing Date | Hearing Time | No. from Part I |
|---|---|---|---|---|---|
| DD 3483 | Culver | SCIWAH | 4-17-00 | 1205 | A159045 |

| INMATE PLEA | ☐ Guilty    ☒ Not Guilty | ☐ No Plea    ☐ Other | Verdict | ☒ Guilty    ☐ Not Guilty |
|---|---|---|---|---|

**HEARING ACTION**

CHARGES   B#8 — not guilty
          D#28 — not guilty

**FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED**

Culver states in attilll verses that he is permitted to have the newspaper according to cell block rules. He was given the newspaper by DT 5265.

In checking the handbook, it is clear that pages are permitted to be passed from cell to cell, not to be carried around when they are out theirs out of the cell block.

DT 5265 stated under oath that he gave Culver his newspaper.

I dismiss #28.

I dispof for the officer's report over Culver's not guilty plea. By this & his written admission of Culver being in possession of Someone else's newspaper, he is guilty of possession of contraband, not of another.

Sanct: revoke contraband
refuse to class 2

| | | |
|---|---|---|
| ☒ YES  ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. | written & verbal reasons |
| ☒ YES  ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. | outside |
| ☐ YES  ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. | **SEE APPENDICES** N |
| ☒ YES  ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. | |

| NAME(S) OF HEARING EXAMINER/COMMITTEE (TYPED OR PRINTED) | Hearing Report and all appended information must be signed. Signature indicates finished report with appendices. |
|---|---|
| J.K KANE | SIGNATURE OF HEARING EXAMINER/COORDINATOR |

YELLOW—Inmate Clerk    PINK—Staff Member Reporting Misconduct    GOLDENROD—Deputy Superintendent

| DC- ▬▬ | PART II C | COMMONWEALTH OF PENNSYLVANIA | | |
|---|---|---|---|---|
| Rev. 6-84 | HEARING SUPPLEMENT | DEPARTMENT OF CORRECTIONS | | |
| INMATE VERSION AND WITNESS STATEMENTS | | | | |

| DC Number | Name | | Institution | No. from PART I |
|---|---|---|---|---|
| DD3483 | Culver, Brett | | SCIMAH | A159045 |

**INMATE'S VERSION**

4-13-00 I was on the Block waiting to go to Library at 2:30 PM. As I was going to the library, another inmate ~~walking going~~ with me asked me if I would put his News paper in my pocket (Coat), because he had no pockets or Coat to put or carry it in.

Went to Library for 15 min. Left was stoped by Desk C.O. who asked me if I was at Law Library. I said No. He asked me what I had. I gave him my Book that I signed-out ~~which~~ (which I never got ~~back~~ back), and my folder of Legal materials. He asked me what it was. I told him, "Legal Work". He then asked me to empty my pockets, and I then gave him the rolled-up news paper, my hat, a pen my address book, and I.D. (Oddly, The CO kept asking me about my VendaCard whereabouts)

The C.O. tried to say that I wasn't allowed to have Legal Work. He then said I was getting a Misconduct for having Legal Work. He said he was keeping my materials, and asked if I wanted a Confiscation slip. I said Yes.

Now that this C.O. has found he ~~was~~ is wrong, and has violated my rights, his contention is a fabricated story about the Legal Work being in the news paper, as if I was hiding it, or wasn't suppose to have it or something.

As to the insinuation of the News Paper being contraband, Inmate Handbook page 4 Cell Block Rules 5 says News Papers can be passed on to other inmates. This cancils Cat D #8 (Note that DT-5265 did not recieve DC Cat B #8 is also void. The Inmate Handbook, Inmate Handbook Supplement, and the Inmate Library Procedures has no restriction for News Papers or Legal Materials brought to Lib

Exb B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRETT CULVER,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 1:CV-01-0904** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA,** *et al.,* | : | **(JUDGE KANE)** |
| | : | |
| **Defendants** | : | |

## UNSWORN DECLARATION OF CAROL DOTTER

I, **CAROL DOTTER**, hereby declare under the penalty of perjury that the following statements are true and correct and based upon my personal knowledge.

1.    I was employed by the Pennsylvania Department of Corrections ("DOC") from August, 1987 until my retirement in November, 2002.

2.    From March 1993 until my retirement, I was employed as the Assistant to the Superintendent at the State Correctional Institution at Mahanoy, Pennsylvania ("SCI-Mahanoy"). In that capacity, I was familiar with the standard operating policies and procedures followed at SCI-Mahanoy and the DOC. As assistant to the Superintendent, I served as the Grievance Coordinator at SCI-Mahanoy.

3.    As Grievance Coordinator, I was responsible for maintaining records of all grievances filed by inmates at SCI-Mahanoy. In accordance with DOC-Administrative Directive 804 ("DC-ADM 804), the Consolidated Grievance System outlines the policies and procedures to be followed with respect to inmate grievances. This policy is found in the Inmate Handbook issued to all inmates.

4.    Upon receipt of a grievance, I reviewed the grievance, assigned a number to it and made an appropriate assignment to staff for written response. The

response would then be forwarded to the inmate informing him of the action taken concerning the grievance. Pursuant to DC-ADM 804, inmates may appeal the response of the grievance to the Superintendent and then to the Department of Corrections.

5. On April 13, 2000, Culver submitted a grievance alleging that on the same date, he was harassed by the Education Building Block Officer, Officer Miknich. He further alleged that his newspaper and legal documents were confiscated. (*See* Attachment "A").

6. I returned the Grievance to Culver on April 18, 2000 and explained that pursuant to DC-ADM 804, he needed to report the matter to the Zone Lieutenant in order to attempt an informal resolution of his complaint. (*See* Attachment "B").

7. Culver informed me on April 28, 2000 that he did not receive a response from the Zone Lieutenant and on May 1, 2000, I accepted Grievance No. MAH-0217-00. Lt William Banta was assigned to investigate Culver's complaint. (*See* Attachment "C").

8. Lt. Banta's investigation revealed that on April 13, 2000, Culver received Misconduct No. A 159045, charging him with Possession of Contraband and Loaning or Borrowing Property. Culver was found guilty of the misconduct and the hearing examiner order the contraband revoked. Lt. Banta forwarded a written response to Culver on May 10, 2000. (*See* Attachment "D").

9. Culver did not appeal Lt. Branto's decision to the Superintendent for review; rather, on June 8, 2000, Culver submitted another grievance, Grievance No. 0286-00. In this grievance, Culver once again alleged that he was continuously

2

harassed by Officer Miknich and that Miknich took his legal materials. This grievance was assigned to Lt. Brennan for investigation. (*See* Attachment "E").

10. On June 25, 2000, Culver notified me that he wished to withdraw Grievance No. 0286-00, as per his conversation with Lt. Brennan. (*See* Attachment "F").

11. On August 4, 2000, Culver submitted another grievance concerning the same issues as Grievance Nos. 0217-00. In accordance with DC-ADM 804, I returned the grievance to Culver on August 9, 2000, and informed him that this matter was addressed in a previous grievance. (*See* Attachment "G").

12. Culver re-submitted the August 4, 2000 grievance on August 11, 2000, stating that the matter surrounding both Grievance No. 0217-00 and 0286-00 have not been resolved. On August 16, 2000, I returned the Grievance No. 0217-00 to Culver explaining it was addressed and he failed to appeal the matter to the Superintendent. I also informed Culver that he withdrew Grievance No. 0286-00 and questioned whether he wanted to re-file the grievance and have it reinvestigated. (*See* Attachment "H").

13. On August 18, 2000, Culver informed me that it was acceptable to re-file Grievance No. 0286-00. I informed Culver that the grievance was filed and I informed him on August 24, 2000 that the grievance would be reinvestigated. (*See* Attachment "I").

14. Lt. Brennan investigated Grievance No. 0286-00 and found no evidence to support Culver's claims. Brennan further reported that Culver had, on occasion, disregarded the proper procedures for attending the Library and Education Building

and brought unauthorized materials into the library. Brennan informed Culver of his findings regarding Grievance No. 0286-00 on August 24, 2000. (*See* Attachment "J").

15.    On August 26, 2000, Culver appealed Grievance No. 0286-00 to Superintendent Shannon. Shannon advised Culver that his appeal was denied on August 29, 2000. In his response, Shannon noted that Culver demonstrated no genuine effort to resolve his concerns before utilizing the grievance system and that his use of the grievance system was not in good faith. Shannon further placed Culver on grievance restriction. (*See* Attachment "K").

16.    At all times relevant to Culver's institutional grievances, I acted in accordance with the Department of Corrections Administrative Directives, including DC-ADM 804 and processed his grievances in accordance with those directives.

5/9/03
_____
DATE

*Carol Dotter*
_____
**CAROL DOTTER**
**Assistant to the Superintendent**
**SCI-Mahanoy**

4

# ATTACHMENT A

# DC-804
**PART 1**

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**　　　　GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR _Carol M. Dotter_ | INSTITUTION _SCI Mahanoy_ | DATE _4-13-00_ |
|---|---|---|
| FROM: (Commitment Name & Number) _Brett Culver DD3483_ | INMATE'S SIGNATURE _Brett Culver_ | |
| WORK ASSIGNMENT — | QUARTERS ASSIGNMENT _D-B 39_ | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

**A. Brief, clear statement of grievance:**

On 4-13-00 I was leaving the Library when the Desk C.C. took my Legal Documents, and the Book I had just signed-out. He told me that he was keeping my Legal work, and asked if I wanted a Confiscation Slip. I said "Yes." I got a Confiscation Slip for a News Paper, and 31 Legal Documents (But there had to be more than that). The Library Book was not on the DC-154A and I never got it back ... I have not violated any rule or D.O.C. Procedure, but was issued a merit-less Misconduct. This is clearly an act of harrassment by Abuse of Authority, for any one employed by the D.O.C. knows the Misconduct written is base-less, and merit-less. I demand my legal materials be signed and dated by Admin official upon return (And I demand the return "Now"). And I am reporting

**B.** Actions taken and staff you have contacted before submitting this grievance:

the Reporting staff Members who signed the A-159045 DC-141 (I cant decipher the names) and the Co IV (Action Reviewed and Approved who signed A-159045) of; Incompetence in ~~performing~~ capacity of Duties. staff Members Version DC-141 A159045 does not support Class 1 Cat B #8 or Cat D #8. There is no Misconduct, charge, or Violation committed by me. There is however violation of my Constitutional Rights by the Reporting staff & those who support. — Reported to Counselor Parsh (Unit Manager Chismar, and letter sent to Attorney with DC-154A Receipt.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____　　　　_____
Signature of Grievance Coordinator　　　　Date

**WHITE**—Grievance Coordinator Copy　**CANARY**—File Copy　**PINK**—Action Return Copy　**GOLDENROD**—Inmate Copy

# ATTACHMENT B

Commonwealth of Pennsylvania
Department of Corrections
SCI Mahanoy
April 18, 2000

Subject:     Returned Grievance

To:          Brett Culver, DD3483
             D/B


From:        Carol M. Dotter
             Corrections Superintendent Assistant

The attached grievance is being returned for different reasons that I will explain one at a time.  You need to become familiar with the procedures outlined in the DC-ADM 804 so your grievances are submitted according to policy and won't be returned without action in the future.

First of all, your "demanding" attitude is not appreciated and will not be tolerated.  Let me refer to page 804-3 in your Inmate Handbook where Section VI.A. 4. states, "The text of the grievance must be legible and **presented in a courteous manner."**

Secondly, your complaint is with the Education Bldg. Desk Clerk.  That officer's supervisor is the Zone Lieutenant.  I told you when I returned your grievance that you need to report this problem to him/her before using the grievance system.  Let me refer to the grievance directive again, on page 804-3, Section B. in bold print.  **"It is required that a genuine effort be made to resolve the problem before the grievance system is used."**

Because the Zone Lieutenant supervises the Desk Officer, that is the chain of command you should follow if you really want the problem resolved.   Let me point out the first paragraph on the same page where it states, **"All inmates are expected to attempt to resolve problems or differences with staff on an informal basis through direct contact or by sending a request slip to appropriate staff."**

There is no question regarding whether I am going to perform my duty, the question is, <u>are you going to continue to waste my time and yours by filing grievances that do not comply with the DC-ADM 804 established procedures?</u>

I suggest you contact the Zone Lt. as soon as possible before you violate the timeframe of 15 days and your grievance will be returned again.  I believe the grievance system is a worthwhile tool the state of Pennsylvania has put in place but it is only successful when used properly.  Let's try it.

cc:     File

# ATTACHMENT C

**DC-135A**

## INMATE'S REQUEST TO STAFF MEMBER

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

1. TO: (NAME AND TITLE OF OFFICER) Carol Dotter G.C.

2. DATE 4-28-00

3. BY: (INSTITUTIONAL NAME AND NUMBER) Brett Culver DD3483

4. COUNSELOR'S NAME Barsh

5. WORK ASSIGNMENT

6. QUARTERS ASSIGNMENT D-B 50

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.   GIVE DETAILS.

I have received no reply from the Zone Lt.

As far as this goes, all I want is my Legal Work returned. I am now late on actions I need my documents to file on/or with.

The CO responsible for the Confiscation of my legal work has since lied against me several more times, so the Harassment issue will be re-processed.

(Time Delay due to being held in RHU on false allegations)

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

☐ TO DC-14 CAR ONLY

☐ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER

DATE

Case 1:01-cv-00904-YK-KH   Document 72-3   Filed 05/09/2003   Page 22 of 100

**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

*Put in Mail*
*4-15-00*

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. MAH-0217-00

| TO:  GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Carol Dotter | SCI Mahanoy | 4-15-00 |

| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE |
|---|---|
| Brett Culver  DD3483 | Brett Culver |

| WORK ASSIGNMENT | QUARTERS ASSIGNMENT |
|---|---|
| — | D-B |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

4-13-00  I was Harassed by the Education Bld. Desk officer. The officer took the Library Book I had just signed-out, a NewsPaper, and my Legal Work documents. He searched my person twice, ~~[struck through]~~ ~~[struck through]~~. He said he was keeping my Legal work, and asked if I wanted a Confiscation Slip. I said Yes. At that he became enraged, saying I was now going to get a Misconduct. The officer gave me a Confiscation Slip with a NewsPaper, and 31 Legal documents listed (But I had much more than 31). The Library Book was not listed on the Confiscation Slip, and I did not get it back from the C.O. who was jeering me as

B. Actions taken and staff you have contacted before submitting this grievance:

I left. I demand the Return of my Legal Work. And also the return of the Library Book to me, or the Library.

→ Reported incident to Counselor Barsh and Unit Manager Chismo. Submitted prior Grievance ~~[struck through]~~ rejected ~~[struck through]~~

Your grievance has been received and will be processed in accordance with DC-ADM 804.

C. Dotter

Signature of Grievance Coordinator

5/1/00

Date

**WHITE**—Grievance Coordinator Copy     **CANARY**—File Copy     **PINK**—Action Return Copy     **GOLDENROD**—Inmate Copy

# ATTACHMENT D

**DC-804**
PART II

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001**

**OFFICIAL INMATE GRIEVANCE**
**INITIAL REVIEW RESPONSE**

GRIEVANCE NO.  | MAH-0217-00

| TO: (Name & DC NO.) | INSTITUTION | QUARTERS | GRIEVANCE DATE |
|---|---|---|---|
| Brett Culver, DD-3483 | Mahanoy | D/B | 4/15/2000 |

The following is a summary of my findings regarding your grievance:

On 5/10/00 I met with you to discuss your Grievance #MAH-0217-00. At the meeting you informed me that you felt Officer Miknich was harassing you by issuing a misconduct for contraband. The misconduct issued was within the officer's scope of duty and consistent with departmental policy. This does not constitute harassment.

You also expressed that you wanted the items confiscated returned to you. At your hearing on 4/17/2000 the Hearing Examiner found you guilty of Possession of Contraband and ordered the contraband revoked. This means that the items do not return to your possession. This issue will be further discussed with appropriate staff as I explained to you.

WB:dy

cc:    Officer Miknich
       Carol Dotter
       DC 15
       file

| Refer to DC-ADM 804, Section VIII, for instructions on grievance system appeal procedures. | SIGNATURE OF GRIEVANCE COORDINATOR | DATE |
|---|---|---|
| | *Walter Grant* | 5-10-00 |

# ATTACHMENT E

**DC-804**
**PART 1**

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. MAH-0286-00

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Carol Dotter | SCI Mahanoy | 6-8-00 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| Brett Culver DD3483 | Brett Culver | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| | D-B | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:                    (upon leaving library at 2:00 P.M.)

On 6-7-00 C.O. Miknich tried to instigate a fight with me. This relates to the "continuous" Harassment by this C.O. on my person since 4-17-00 till present. This Harassment by this C.O. (who is stationed at Education Bldg. Desk) has hindered my efforts to pursue Legal Work and Remedies at Law Library I have been forced to avoid all contact with (exposure) this C.O. He has consistently lied against my person, filed false allegations of Misconducts against my person, issued threats, and instigated fights by Harassment and jeering. (Also taking Legal Work) To this date this Administration has refused to establish any means of relief from this Harassment I endure from this lying Corrupt individuals abuse of position and authority. As of this

B. Actions taken and staff you have contacted before submitting this grievance: Date this Administration has supported and promoted this C.O. (Miknich) Harassment

3 Prior Grievances, some ignored, one pending disposition. Letters to Camp Hill Administrators by myself & Family. Requests for personal escort from library day of incident (refused) Miss James Mary jane Hess

Your grievance has been received and will be processed in accordance with DC-ADM 804.

C Dotter
_____
Signature of Grievance Coordinator

I WISH TO WITH DRAW THIS GRIEVANCE AS PER MY CONVERSATION WITH LT. BRENNAN ON 6/25/00 X Brett Culver    6/20/00
_____
Date

**WHITE**—Grievance Coordinator Copy     **CANARY**—File Copy     **PINK**—Action Return Copy     **GOLDENROD**—Inmate Copy

**BRETT CULVER DD-3483**
**H/UNIT D-B**

June 13, 2000

SUBJECT:    Response of Requested Information 6/9/00
            and Re-Submitting of Grievance
            Dated 6-8-00, (with corrections).

TO:     Carol Dotter
        Grievance Coordinator

FROM:   Brett Culver DD-3483
        H/Unit D-B

Upon leaving the Library on 6-7-00, when I seen C.O.Miknich at the Desk, I went back inside the Library and asked Librarian James and Hess to call the Zone Lt. to give me escort out of the Building. They called, and the Zone Lt. denied me safe escort from the Building. Therefore I will have to say that this Zone Lt. promoted the exposure for Harassment and facilitated the incident of C.O.Miknich Harassing me upon trying to leave the Education Building 6-7-00.

I have sent Request to both Librarians to verify the incident of my request for escort, and the response given them by the Zone Lt., but they have refused acknowledgement in writing. And I am unable to get access to Copying Service to send you copies of these proofs.

The Librarians have also refused to permit me alternative appointment scheduling to avoid contact with this Corrupt Lying Harassing C.O.Miknich (who's actions and conduct are supported/promoted at this Facility).

At present I can no longer have access to the Education Building because of this Harassment from this C.O.Miknich. I can no longer risk taking Legal work to the library to pursue legal remedies, because C.O.Miknich is supported by this Administration in harassment and seizure of my Legal Documents, and in violations of my Constitutional Rights. Therefore all Legal pursuits and access to Law Library have been obstructed, hindered, and denied by this Harassing C.O.Miknich, this corruption supporting Administration, and affiliate Officials that continue to permit this element of Harassment and Administrative Corruption by C.O.Miknich against my person.

35 2.

Because of the constant  threat  of Harassment by C.O.Miknich all my legal pursuits have been obstructed and are delinquent in timeliness for response and filing.

All Legal Documents seized by C.O.Miknich in violation of my Constitutional Rights have not been returned,  and have caused Legal Remedies and Pursuits to expire due to these Legal Documents seized by C.O.Miknich that had to be submitted.

After review of the Grievance I submitted  6-8-00  that was returned (and is now being re-submitted), I have made a correction of a error in dates (see circled date 4-17-00 corrected to 4-14-00) and have resubmitted.

cc:   K.R.Stuber esquire

# ATTACHMENT F

Case 1:01-cv-00904-YK-KH   Document 72.5   Filed 05/09/2003   Page 30 of 100

**DC-804**
**PART 1**

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. | MAH-0286-00 |

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Carol Dotter | SCI Mahanoy | 6-8-00 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| Brett Culver DD3483 | Brett Culver | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| | D-B | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance: *(upon leaving library at 2:00 P.M.)*

On 6-7-00 C.O. Miknich tried to instigate a fight with me. This relates to the "continuous" Harassment by this C.C. on my person since 4-17-00 till present. This Harassment by this C.C. (who is stationed at Education Bldg. Desk) has hindered my efforts to pursue Legal Work and Remidies at Law Library I have been forced to avoid all contact with (exposure) this C.O. He has consistently lied against my person, filed false allegations of Misconducts against my person, issued threats, and instigated fights by Harassment and jeering. *(Also taking Legal Work)* To this date this Administration has refused to establish any means of relief from this Harassment I endure from this lying Corrupt individuals abuse of position and authority. As of this

B. Actions taken and staff you have contacted before submitting this grievance: Date this Administration has supported and promoted this C.O. (Miknich) Harassment

3 Prior Grievances, some ignored, one pending disposition. Letters to Camp Hill Administrators by myself & Family. Requests for personal escort from library day of incident (refused) Miss James Mary Jane Hess

Your grievance has been received and will be processed in accordance with DC-ADM 804.

*C. Dotter*
Signature of Grievance Coordinator

I wish to withdraw this Grievance As Per our conversation with it. Brennan on 6/25/00 ×   Brett Culver

6/20/00
Date

---

**WHITE**—Grievance Coordinator Copy    **CANARY**—File Copy    **PINK**—Action Return Copy    **GOLDENROD**—Inmate Copy

# ATTACHMENT G

**DC-804**
PART 1

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS
### P.O. BOX 598
### CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**                    GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR *Carol Dotter* | INSTITUTION *SCI Mahanoy* | DATE *8-4-00* |
|---|---|---|
| FROM: (Commitment Name & Number) *Brett Culver DD3483* | INMATE'S SIGNATURE *Brett Culver* | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT *D-B* | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

**A. Brief, clear statement of grievance:**

A. SCI Mahanoy Administrative Obstruction - Hinderence
of Legal Pursuits and/or Legal Remedies. Seizure of
Legal Work/Documents/Records. Obstruction of Library
Facilities and Services of Law Library and Copying Services.
The Administration at SCI Mahanoy has committed, conspired,
collaborated, and supported acts/actions/events to Obstruct,
Hinder, or Seize any efforts by my person to pursue Legal
relief and remedies. Legal Documents/Work/Record and Court
Transcripts related to my Conviction Case, and that of a Legal
Actions being pursued for Damages received from a Inmate attack
have been seized "and witheld" by this Administration since
4-13-00. Time Limitations on Legal Pursuits have been compromised

DC-154A No. A150818

**B. Actions taken and staff you have contacted before submitting this grievance:**
by this seizure. I'm now seeking the return of these documents, and damages.

B.
5 or 6 prior Grievances on these issues which have been subotaged,
manipulated, or abolished by this Administration, and supported by Complt.
Issue Reports to various Law Firms, Government Agencies for relief.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____                                    _____
Signature of Grievance Coordinator                                    Date

**WHITE**—Grievance Coordinator Copy    **CANARY**—File Copy    **PINK**—Action Return Copy    **GOLDENROD**—Inmate Copy

Commonwealth of Pennsylvania
Department of Corrections
SCI Mahanoy

August 9, 2000

Subject:     Returned Grievance

To:          Brett Culver, DD3483
             D/B


From:        Carol M. Dotter
             Corrections Superintendent Assistant


This grievance is being returned without action because Grievance No. MAH-0286-00 was
withdrawn as per your request on 6/25/00.  You cannot file a second grievance on the
same issue.


cc:     File.4

Commonwealth of Pennsylvania
Department of Corrections
SCI Mahanoy

August 9, 2000

Subject:     Returned Grievance

To:          Brett Culver, DD3483
             D/B

From:        Carol M. Dotter
             Corrections Superintendent Assistant

This grievance is being returned without action because these issues have already been addressed in Grievance Nos. MAH-0217-00 and MAH-0286-00.  If you are not satisfied with the responses received from the Grievance Officer, you should have used the appeal procedures outlined in the DC-ADM 804.  You cannot, however, file a second grievance on the same issues.

Your claims of duress by Lt. Brennan will be addressed.

cc:     File.5

# ATTACHMENT H

X. 36 + 37

BRETT CULVER DD-3483
301 MOREA ROAD
FRACKVILLE, PA.17932

August 11, 2000

SUBJECT:  Re-submit Initial Grievance (8-4-00)
          With Response to C.Dotter Return (8-9-00)


TO:   Grievance Coordinator
      Carol M. Dotter


FROM:  Brett Culver DD-3483
       H/Unit D-B

MAH-0217-00

In your Return (8-9-00) of Grievance (8-4-00) you submit that this Grievance was returned because the issue was addressed in Grievance No. MAH-0217-00. This however is inaccurate. Although the Administration at SCI Mahanoy has used every means of cunning and contriving deception to allude mention or responsibility for the seizure of my Legal Documents/Work/Records, the Initial Review Response by a William Banto (5-10-00) left the issue of my seized Legal Documents/Work/Records pending resolution. Also, my Legal Documents/Work/Records were never identified as Contraband. Legal Work, Documents, and Legal Records cannot be in any situation or circumstance considered Contraband, or be seized at any time.

After I received the inaccurate response of Initial Review Response (MAH-0217-00) William Banto 5-10-00 (that left the Decision on my Legal Documents/Work/Records pending), I then submitted a Correction Response to the William Banto (5-11-00). There was never any further Administrative response to these issues that were left pending, and I have been prevented from pursuing a resolution or relief on any of these issues.

At the Hearing 4-17-00 related to the seizure incident, Hearing Examiner Kain stated that he did not understand why C.O.Miknich confiscated the Legal Documents/Work/Records. He also said that I should contact the Property Office for their return. At no point, in the misconduct report, at the Hearing, or in the decision were these Legal Documents/Work/Records ever cited or identified as contraband, which would be impossible for them to be contraband.

There never was a decision entered on this issue in MAH-0217-00 as you contend.

**Of note** is the continued harassment by C.O.Miknich to my person, with the continued tolerance, justification, and support by the SCI Mahanoy Administration.

The Official Offices (chain of process) at SCI Mahanoy are non-compliant with proper procedures in processing these issues of Grievance. Therefore, Grievance No. MAH-0217-00 is still pending a decision at the Grievance Office level. And since there has been no Administrative response for a final decision on this issue, or Administrative relief from the continued harassment by C.O.Miknich, the Re-submitted Grievance 8-4-00 included is appropriate for process on these unresolved pending issues.

Also, there was never any decision entered into record on MAH-0286-00 as you contend (8-9-00). After submitting MAH-0286-00 to the Grievance Coordinator three times (6-8-00, 6-13-00, 6-20-00) I was then called to the Property Office at 8:40 PM (6-25-00), coerced into signing-off on MAH-0286-00, and directly afterwards submitted a declaration of: Condition to Signature Under Duress 6-25-00. There was never any Administrative response on these issues.

MAH-0286-00 also has no disposition, and has been obstructed from process by Administrative actions.

The situation of Administrative incompetence, or intentional non-compliance to process in regard to both MAH-0217-00 and MAH-0286-00 has been documented.

MAH-0286-00

cc:  C.Dotter
     Y.R. Stubon esquire

Commonwealth of Pennsylvania
Department of Corrections
SCI Mahanoy

August 11, 2000

Subject:    Returned Grievance

To:         Brett Culver, DD3483
            D/B

From:       *Dotter*
            Carol M. Dotter
            Corrections Superintendent Assistant

This grievance is being returned for further direction from you.  You claim you withdrew
Grievance No. MAH-0286-00 because you were threatened by SCI Mahanoy Officials.
You state you were coerced/intimidated to sign off on the grievance.  I need to know which
way you want to proceed.

If you prefer, you may re-file Grievance No. MAH-0286-00, and it will be re-investigated
and a response provided by the Grievance Officer.  This will be initial review according to
the DC-ADM 804.

**OR**

If you want the allegations of signing under duress investigated, you need to be more
specific.  Exactly who and how were you placed under duress?  Detailed information
identifying staff members and dates will be needed to complete a proper investigation.

Let me know how you want to proceed.


cc:    Supt. Shannon
       File.6

Commonwealth of Pennsylvania
Department of Corrections
SCI Mahanoy

August 16, 2000

Subject:      Returned Grievances

To:           Brett Culver, DD3483
              D/B

From:         Carol M. Dotter
              Corrections Superintendent Assistant


These grievances are being returned again.  You are not following proper procedures
according to the DC-ADM 804 and you aren't following my directions when I try to explain
them to you.

For the last time, the issues involving confiscated items were addressed in Grievance No.
MAH-0217-00.  If you were not satisfied with the decision of the Grievance Officer, you
should have appealed the matter to the Superintendent.  You did not.  Now it is too late
and these issues will not be addressed again.

Regarding Grievance No. MAH-0286-00, I wrote you asking whether you wanted to re-file
the grievance and have it reinvestigated?  Yes or no?  Just let me know.

Also, if you want the claims coercion investigated, please provide specifics, such as who
intimidated you?  How were you obstructed from the process by being forced under duress
to sign off on the grievance?  You didn't receive a response to these claims because they
couldn't be investigated without this information.  I await further information on this matter.


cc:      File.7

# ATTACHMENT I

37   E.

BRETT CULVER DD-3483
R/Unit D-B

August 18, 2000

*Mr. Culver,
as I told you in
my previous response,
MAH-0217-00 will
not be addressed as
initial review again.
MAH-0286-00 will be
re-filed.
C. Dotter
8/18/00*

*Sent to It. Brennan
8/18/00*

SUBJECT:    Response on Returned Grievances (*Personal File 36 + 37*)
            Carol Dotter August 16, 2000

TO:         Carol Dotter
            Grievance Coordinator

FROM:       Brett Culver DD-3483

If you would examine the record on the issues, you would notice that: <u>#1.</u> The Legal documents/work/records taken from me by C.O.Miknich were never implicated or cited as contraband, even in his fraudulent misconduct report #A159045. <u>#2.</u> At the Hearing on #A159045 Examiner Kain stated that he did not understand why C.O.Miknich took the Legal documents/work/records from me, and that I should contact the Property Office about getting them back. Also in Hearing Examiner Kain's decision DC-141 PART II B the decision was to revoke the newspaper that was cited as the contraband (in violation of DOC Directives). But again, this has nothing to do with the Legal documents/work/records seized by C.O.Miknich. <u>#3.</u> In William Banto response 5-10-00 on #MAH-0217-00 DC-804 PART II he implies that the items confiscated and determined contraband were to be revoked. The newspaper was the only item to be identified as contraband (in violation of DOC Directives), and my Legal documents/work/records were never mentioned in this William Banto Response. But we all know the deceptive means at play in this William Banto Response. Unfortunately, William Banto needed to be more concise, because he left the entire Grievance #MAH-0217-00 undetermined and open by his final statement: This issue will be further discussed with appropriate staff as I explained to you." I'm still waiting for him to discuss the issues with the appropriate staff and give me the initial decision on these <u>undetermined</u> issues. <u>#4.</u> After speaking with Unit Manager Chismar on the issue of the with-held Legal documents/work/records, she looked at the Hearing Examiner decision on #A159045 and said that even though the Legal documents/work/records were not identified as Contraband, the decision was to have the contraband revoked. She said that means it was to be returned to me. That is the compleat opposite of what William Banto stated. I tend to agree with Unit Manager Chismar, because all other misconducts of contraband I have ever received have stated that the contraband is to be destroyed (if not to be returned). The American Heritage Dictionary states: REVOKE. To void or annul by recalling, withdrawing, or reversing....to call back. I suppose this term is used to imply any changeable interpretation the Official wants to use to cover all bases as the need arises. Just as everyone who interprets it "now comes up with a totally different interpretation (because all Officials are not together to conspire the agreed implication). As the definition goes on it's own merit, the definition favors: "void, withdraw, reverse (the contraband). And all of this "only implies the newspaper!"

Where is there any mention of my Legal documents/work/records?

Where "are my Legal documents/work/records?!

I now resubmit my file number 36 and 37 Grievances.

Your Official response no longer matters. These issues are being entered into a Legal Action. Your actions and handling of these issues has been documented.

cc:  C.Dotter
     K.R.Stuber esquire

*Brett Culver*

BRETT CULVER DD-3483
H/Unit D-B


August 18, 2000


SUBJECT:   Response to Returned Grievance          Re: Grievance No. MAH-0286-00
           Carol Dotter 8-11-00



TO:        Carol Dotter
           Grievance Coordinator


FROM:      Brett Culver DD-3483



First of all, in fairness to Lt. Brennen, I want to clear-up any misconception to the facts.
Lt. Brennen was the Official that wanted me to sign-off on Grievance No. MAH-0286-00 on the June 25,
2000 incident. But I would like to call attention to the last entree made in my: Conditions to
Signature Under Duress MAH-0286-00 dated 6-25-00. This entree to the events refers to Lt. Brennen.


It would take extensive reports of prior and present events, conduct, circumstances, situations,
indifferent treatment, punishments, and dishonest actions committed to my person by the Administration
to explain the threatening elements, situation, and atmosphere that resulted in the sign-off under
duress 6-25-00 MAH-0286-00.


Therefore, it will be acceptable for MAH-0286-00 to be re-filed for process in hopes of establishing
relief from the harassment (and personal punishment abuse) by C.O.Miknich.


Also, I need to establish separation or restraint orders to avoid any contact with C.O.Miknich. Please
advise how I can secure this provision of protection from C.O.Miknich.


*Mr. Culver,*
*See your Counselor*
*about a separation.*
*Grievance # MAH-0286-00*
*is being re-investigated.*
*C/Dotter*
*8/24/00*

*Brett Culver*

cc:  C.Dotter
     K.R.Stuber esquire

# ATTACHMENT J

**DC-804**
PART II

### COMMONWEALTH OF PENNSYLVANIA
### DEPARTMENT OF CORRECTIONS
### P.O. BOX 598
### CAMP HILL, PA 17001

**OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE**

GRIEVANCE NO.  | MAH-0286-00

| TO: (Name & DC NO.) | INSTITUTION | QUARTERS | GRIEVANCE DATE |
|---|---|---|---|
| Brett Culver DD-3483 | SCI-Mahanoy | D/B | 6/20/00 |

The following is a summary of my findings regarding your grievance:

In response to your grievance #MAH-0286-00, I spoke with Officer Miknich as well as other staff members and inmates that work in the Education Building and have found no evidence whatsoever to support your claims of being harassed and lied to by this individual. I did, however, discover that you apparently have, on occasion, disregarded the proper procedures for attending the Library and the Education Building in general. For example, bringing in unauthorized materials, etc. I believe that your allegations are either fabricated or imaginary and will not pursue this matter any further.

JB:js

cc:    Deputy Petruccio
       Deputy Kneiss
       Mrs. Dotter
       DC-15
       COI Miknich
       file

| Refer to DC-ADM 804, Section VIII, for instructions on grievance system appeal procedures. | SIGNATURE OF GRIEVANCE COORDINATOR | DATE |
|---|---|---|
| | *Lt. J. Brennan* | 8/24/00 |

# ATTACHMENT K

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Mahanoy**
(570) 773-2158

29 August 2000

SUBJECT:    Response to Official Inmate Grievance
            #MAH-0286-00

TO:         B. Culver, DD-3483/RHU

FROM: R. Shannon, Superintendent

In preparing a response to this appeal, I have reviewed your initial grievance, the grievance response and this appeal.  The following comments are provided:

Your grievance is viewed as being in violation of Administrative Directive 804 on several counts as follows;

    a) No genuine effort has been displayed on your part to resolve this concern before utilizing the grievance system.
    b) Your use of the grievance system is not seen as being in good faith or good cause as required and as displayed by your constant attacks against staff.
    c) Your grievance is neither brief, nor does it stick to the issue(s) at hand as required.

You've been counseled on several previous occasions and as recent as 14 August by your Unit Manager (Chismar) that you are to refrain from your personal attacks against staff that you continue to include in your correspondence(s).

In fact, Ms. Chismar has quoted your response as; "I am flooding offices with paperwork to create a headache for staff in retaliation for the "headache" I received by being housed in RHU on two occasions."  You also, again, indicated that your aim is to gain transfer back to your home region.

As it appears obvious that you intend to abuse the purpose of Administrative Directive 804, then let this grievance response also serve as notice that you are hereby placed on a one grievance per month restriction, to continue until such time that your intentions fall within the required policy guidelines.  This will serve as your grievance for August.  Appropriate staff will be copied on this grievance restriction.

Also, please note that the real issue at hand here is your so-called denial of library access.  Several staff, including Ms. Chismar investigated your claims and found that you are being scheduled for the library.  That you choose not to go is your own doing.

Grievance appeal is, therefore, denied.

RS:sd

cc:    Deputy Kneiss
       Deputy Petruccio
       Mrs. Dotter
       U.M. Chismar
       DC 15
       file

5b N.

BRETT CULVER DD-3483
H/Unit D-B

August 26, 2000

RECEIVED

AUG 2 9 2000

SUPERINTENDENT'S OFFICE
SCI MAHANOY

SUBJECT:   Appeal of DC-804 PART II          Re: Grievance No. MAH-0286-00
           Initial Review Response
           Lt. Brennen Dated 8-24-00

TO:        R. Shannon
           Superintendent

FROM:      Brett Culver DD-3483

The statements made in Lt. Brennen's Initial Review Response on MAH-0286-00 are incredible.   Again,
Officials of this SCI Mahanoy Administration only put forth effort to utilize inaccurate unfounded
excuses to dismiss issues without resolution.

Lt. Brennen conveniently bases his investigation on statement's received from <u>Officer Miknich</u>, "his
<u>work buddies</u>, and inmates that could not have any idea who I might possibly be (Security Breaches by
Admin. has forced me to isolate from population since transferred here).   Also, the last time I had
been harassed by C.O. Miknich was June 7, 2000.  And that was the first time I went to the Library
since April 17, 2000 (during C.O. Miknich shifts).  There are two evident facts at this point: #1  No
inmates here know who I am, and/or were present during any of these incidents.   #2   Officer Miknich
(corrupt foul-mouthed liar that he is) would hardly give any honest statement to the facts or admit his
corrupt conduct when providing Lt. Brennen with biased evidence to dismiss the issues (as Lt. Brennen
identifies C.O. Miknich as the source of the evidence).   "How very convenient!"

In Lt. Brennens haste to find the fastest means to discredit  or  dismiss the pending issues, he
inadvertently entered into record solid evidence in support of the issues submitted in MAH-0286-00.

(A). A brief review of the Misconducts issued against me by C.O.Miknich will show that these Misconduct reports were issued consecutively, every time I went to the Library during C.O.Miknich's shift. A review of my prison record of 18 plus years will show that I've never had any repetitious misconducts from one Officer, as in this case. Also, in my 18 plus years in prison, I have "NEVER" received any Misconduct accusations like the ones made against me by C.O.Miknich. Neither have I ever had to report a Officer for harassment violations during this incarceration history.

To finalize the blatant proof of dishonesty, corrupt acts, and harassment by Officer Miknich is the fact that none of C.O.Miknich's extreme charges (allegations) held merit through Hearing Examinations. All the alleged charges were droped down to unsupported minimal offences (and sanctions). Of note, Hearing Examiner Kain acknowledged and stated that, quote: "You really got screwed." unquote. This quotation was Hearing Examiner Kain's reference to Misconduct No. A159048, and the re-write Misconduct No. A273976, of which both kept me held in RHU for 2 weeks prior to any Hearing. After the Hearing I was immediately released via findings of meritless misconduct allegations made by Officer Miknich (Hearing of 4-28-00).

I must point out that if Officer Miknich's allegations would have had any merit or credibility, I would be doing around 2 years in RHU. "What are the evident facts about the issues at this point?!" Were Officer Miknich's allegations "truthful?! Were they found credible or accurate? The Hearing Examiner certainly didn't think so! The Administration here at SCI Mahanoy can't have it both ways to fit any implication desired for any given situation. And yet this is what continues to be done by Officials of this Administration.

The evidence "and events show blatant misconduct by Officer Miknich's deliberate actions to manipulate the system, and committed acts of corruption by deliberate false allegations to inflict unjust punishments. This is abuse of authority by Officer Miknich and crimes of harassment against my person. These are also Eighth Amendment violations I have been subjected to and still suffer because this Administration refuses to address these issues of responsibility.

(B). Lt. Brennen goes on to enter more supporting evidence to the issues of MAH-0286-00 by confirming that "on occasion" I have disregarded appointments for attending the Library. A brief review of the record will show that I had to disregard those scheduled appointments, because they were appointment times scheduled during C.O.Miknich's shift. I also have documentation of requests sent to the Library Staff asking for appointment scheduling to avoid appointment scheduling during Officer Miknich's shift, explaining the problems involved. For some reason the Library Staff continued to schedule my appointments during C.O.Miknich's shift. If Lt. Brennen was competent and unbias in his endeavors (Job) to investigate the issues, he would have seen the evident undisputable evidence supporting the facts.

**(C).** Lt. Brennen goes on to insinuate that I was bringing unauthorized materials to the Education Building, and "ect." Without simply stating things that are not true, factual, according to DOC Directives, Policy, or Procedures, I would like "just once" to be shown cited DOC Directive, Policy, Supplement, or Procedure to verify or support one single thing the Dishonest, Corrupt, Officials infecting this system are insinuating is "unauthorized materials." I will also need to know what the "ect" implies in Lt. Brennen's response decision, so I can knowledgeably respond to that implication of record evidence and decision of 8-24-00.

**(D).** Lt. Brennen "then enters, that all these incidents are fabricated (lies) or imaginary (fictitious) on my part. ████████████████████████████████ ████████████

I don't find the documented fact of four consecutive Misconducts written by C.O.Miknich to be fabricated or imaginary.

I do not consider the fact that these Misconducts on record were found lacking in merit, credibility,and evidence "by the Hearing Examiner" to be fabrications on my part or illusions in my mind.

I don't see how being placed directly into RHU for 2 weeks without a Hearing on those false allegations by C.O.Miknich (deliberate action for that very objective) is something that didn't happen as it did, or was something I imagined.

I do not consider the seizure of all my Legal records (and Confiscation slip) of these "never returned" Legal documents something I made-up, or something imaginary.

The fact that several Officers have informed me to watch-out-for C.O.Miknich because he told them he was going to continue setting-me-up seems real since that is what they told me.

I'm not fabricating or imagining that the Unit Manager has interceded to arranged special Library appointments/clearance (8-24-00 8-26-00) to secure protection from harassment by Officer Miknich.

**(E).** Everyone realizes that there are some critical situations of serious concern here, "except for the highly questionable characters chosen by Lt. Brennen to give evidence for the highly questionable investigation and response of 8-24-00.

All situations and issues are still pending, and remain unresolved.

Exh C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRETT CULVER,                                  :

     Plaintiff                              :

     v.                                     :     NO. 1:CV-01-0904

COMMONWEALTH OF                                :
PENNSYLVANIA, <u>et al.</u>,                   :     (JUDGE KANE)

     Defendants                             :

## <u>UNSWORN DECLARATION J. KEVIN KANE</u>

I, **J. KEVIN KANE**, hereby declare under the penalty of perjury, that the following is true and correct and based upon by personal knowledge.

1.    I am currently employed by the Pennsylvania Department of Corrections ("DOC") as a Hearing Examiner. I have been employed as a hearing examiner for approximately eighteen years, conducting administrative hearings at SCI-Frackville, SCI-Mahanoy, SCI-Chester and occasionally at other facilities in the DOC's Eastern Region.

2.    As a hearing examiner, I conduct administrative fact-finding proceedings concerning misconduct reports issued to inmates. My duties and responsibilities are governed by the DOC Administrative Directive, 801. These duties include but are not limited to the review of the evidence presented at the misconduct hearing, the determination of relevant witnesses, the interview of the witnesses, the determination of the inmates guilty or innocence and the imposition of sanctions.

3.    On April 13, 2000, Officer Miknich issued Brett Culver, DD-3483 Misconduct No. A 159045, Possession of Contraband and Loaning or Borrowing Property. (*See* Attachment "A").

4.      I presided at Culver's misconduct hearing regarding Misconduct No. A 159045.   According to the misconduct report, Culver had a newspaper with law work in the inside of the newspaper.  The newspaper belonged to another inmate, Dana Gillingham.   Culver was permitted a witness, Dana Gillingham, and was permitted to present his version of the incident.  (*Id.*)

5.      At the hearing I considered officer Miknich's report, Culver's version as well as Gillingham's statement that he gave the newspaper to Culver.   After a review of the information, documentation and evidence presented, I found Culver guilty of possession of contraband,  reduced the charge to a Class II misconduct and revoked the contraband.  (*Id.*)

6.      The finding of guilt and sanction imposed on Misconduct A 159045 was not based upon  retaliatory reasons.  Rather, I found Culver guilty  based on the credibility evidence, testimony, and the reports presented.

7.      On September 18, 2000, Captain Mooney issued Culver Misconduct No. A 212770, Threatening an Employee or Their Family with Bodily Harm.  (*See* Attachment "B").

8.      I presided at Culver's misconduct hearing regarding Misconduct No. A 212770.  According to the misconduct report, Superintendent Shannon received a request slip from Culver on September 5, 2000.  Culver alleged that Miknich was harassing and stalking him and he "cannot be held accountable for my actions on my part that might occur related to these situations."  The misconduct report further stated that Captain Mooney attempted to interview Culver concerning the threatening statements and that Culver refused to cooperate.  (*Id.*)

-2-

9.    At the hearing I considered Captain Mooney's report, Culver's version concerning the incident and the statement found in Culver's request slip, which he stated he wrote.  After a review of the information, documentation and evidence presented, I found Culver guilty of the threat charge and sanctioned him to ninety days disciplinary custody.  (*Id.*)

10.    The finding of guilt and sanction imposed on Misconduct A 212770 was not based upon  retaliatory reasons.  Rather, I found Culver guilty based on the credibility evidence, testimony, and reports presented.

11.    At all times relevant to Culver's institutional misconducts, I acted in accordance with the Department of Corrections Administrative Directives, including DC-ADM 801 and conducted  his misconduct hearings in accordance with those directives.

5-6-03
**DATE**

J. KEVIN KANE
Hearing Examiner

-3-

Case 1:01-cv-00904-YK-KH   Document 72-3   Filed 05/09/2003   Page 52 of 100

FORM **841**   PART I   COMMONWEALTH OF PENNSYLVANIA
Rev. 6-84

☑ MISCONDUCT REPORT ☐ OTHER   DEPARTMENT OF CORRECTIONS

**A 159045**

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| DD3483 | Culver, Brett | SCIMAH | 1510 | 4-13-00 | 4-13-00 |

| Quarters | Place of Incident |
|---|---|
| D/B #39 | PROG/SVC CO's DESK |

### OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

### MISCONDUCT CHARGE OR OTHER ACTION

Class I Cat B #8 Possession of Contraband

Class I cat D #28 Loaning or borrowing Property

**STAFF MEMBER'S VERSION**   ON Above date & time Inmate Culver DD3483 came to the Desk for his PASS from the Recreation Library. Inmate Culver had A newspaper with the Law work on the Inside of newspaper. The newspaper was Inmate Gillingham, Dana DT5065 D/B#6. Confiscated Items Receipt No# A150818.

~~SSL~~

### IMMEDIATE ACTION TAKEN AND REASON

Continue Present Status Pending Further Action By the Hearing Examiner

| PRE-HEARING CONFINEMENT | | |
|---|---|---|
| | IF YES | |
| | TIME | DATE |
| ☐ YES | | |
| ☑ NO | N/A | N/A |

☑ REQUEST FOR WITNESSES AND REPRESENTATION   **FORMS GIVEN TO INMATE**   ☑ INMATE'S VERSION

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY   SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY | |
|---|---|---|---|
| | | DATE | TIME 24 HOUR BASE |
| CO'_____ - Mikovich | CO'_ R.Beyer | 4-13-00 | 1920 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | Misconduct Category | Signature of Person Serving Notice |
|---|---|---|---|
| DATE | TIME | ☑ CLASS I  ☐ CLASS 2 | K. Mayer / K.C. MAYER |
| 4-15-00 | 0800 | | |

### NOTICE TO INMATE

You are scheduled for a hearing on this allegation on the date and the time indicated or as soon thereafter as possible. You may remain silent, if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class I misconduct, any pre-release status you have will be revoked.

DC-154A

No. A 150818

**COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS**

## Confiscated Items Receipt (Inmate)

| DC Number | Name | | Cell | Institution | Date | Time |
|---|---|---|---|---|---|---|
| DD 3083 | Culver | | D/B #39 | SCImAH | 4-13-00 | 1510 |

| | Misconduct Report Prepared | Comment: |
|---|---|---|
| __Random Search | | Misconduct No # A159045 |
| __General Search | Yes X  No ___ | |
| __Investigative Search | | |

| Items Confiscated | Items Confiscated |
|---|---|
| 1 EA Newspaper (Times-News, Erie, PA) | |
| 31 pages Legal work & File | |
| | |
| | |
| | |
| | |
| | |

Signature and Title of Officer  CO' Mahon

1. DC-15          2. Deputy Superintendent for Operations          3. Inmate

**DC-1**
Rev. 6-8
**PART II A**
INMATE REQUEST FOR
REPRESENTATION AND WITNESSES

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

| DC Number | Name | Institution | Date | Number as on Part I |
|---|---|---|---|---|
| DD3483 | Culver, Brett | SCIMAH | 4-13-00 | A15 9045 |

You have been charged with a misconduct. You may request assistance and/or witnesses to appear at your hearing by completing the section(s) below.

In order to have assistance or witnesses at your hearing, you must complete this form and present all copies to one of your housing officers no later than 9:00 a.m. the first working day after you receive notice of the misconduct.

Assistance: ☐ I do not request assistance
☑ I request assistance by _Emory Smith #BH-9137 D/B_   no, not necessary, DC
(The person requested must be willing to assist you)   ADM 801 Sect E, 5-9

Witnesses: You may request witnesses in accord with DC-ADM 801. State the relevance and importance of the testimony the witness will give.

---

**1. Name of Witness:** No. Quarters (If Inmate)
Dana Gillingham   DT-5265   D/B
Why is this person's testimony relevant and important?
He gave me the News Paper to hold. He was with me at Library, and was there when the C.O. started the incident. (Eye and ear witness.)

**DO NOT WRITE IN THIS SECTION**
For Use by Hearing Examiner

Witness permitted? [checkmark] If not, why not?

---

I can't decipher Names
**2. Name of Witness:** No. Quarters (If Inmate)
Both Individuals who signed Reporting Staff. Member section of DC-141
Why is this person's testimony relevant and important?
Because Staff Members Version DC-141 is untrue, and verbal testimony is required for Record, as there has been Constitutional Rights violations.

Witness permitted? [checkmark] If not, why not?
neither staff refused - Report is sufficent as required staff test would be.

---

**3. Name of Witness:** No. Quarters (If Inmate)
Why is this person's testimony relevant and important?

Witness permitted? If not, why not?

---

_Brett Culver_
**Inmate's Signature**

This section to be completed by Housing Officer only
Received completed form _0730_ hours _4-14-00_
Time   Date

_[signature]_
**Housing Officer's Signature**

_[signature]_
**Hearing Examiner's Signature**

Case 1:01-cv-00904-YK-KH Document 72.5 Filed 05/09/2003 Page 55 of 100

**DC-141** Rev. 6-84     **PART II B**     **COMMONWEALTH OF PENNSYLVANIA**
DISCIPLINARY HEARING REPORT     **DEPARTMENT OF CORRECTIONS**

| DC Number | Name | Institution | Hearing Date | Hearing Time | No. from Part I |
|---|---|---|---|---|---|
| DD 3483 | CULVER | SCIMAH | 4-17-00 | 205 | A155045 |

| INMATE PLEA | ☐ Guilty  ☒ Not Guilty | ☐ No Plea  ☐ Other | Verdict | ☒ Guilty  ☐ Not Guilty |

**HEARING ACTION**

CHARGES  B#8 — not guilty
D#28 — not guilty

**FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED**

Culver states in attitude version that he is permitted to have the newspaper according to all block rules. He was given the newspaper by DT 5265.

On checking the handbook, it is clear that papers are permitted to be passed from cell to cell, not to be carried around when they are out theirs out of the cellblock.

DT 5265 stated under oath that he gave Culver his newspaper.

I admin # 28.

I depart for the officer's report over Culver's not guilty plea & his + his entire admission of Culver being in possession of someone else's newspaper, he is guilty of possession of contraband, not of entry.

Sanctions: revoke contraband
refuse to close 1

| | | |
|---|---|---|
| ☒ YES  ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. | untsay & newspaper  contraband |
| ☒ YES  ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. | **SEE APPENDICES** |
| ☐ YES  ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. | A |
| ☐ YES  ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. | |

| NAME(S) OF HEARING EXAMINER/COMMITTEE (TYPED OR PRINTED) | Hearing Report and all appended information must be signed. Signature indicates finished report with appendices. |
|---|---|
| J.K KANE | SIGNATURE OF HEARING EXAMINER/COORDINATOR |

YELLOW—Inmate Clerk     PINK—Staff Member Reporting Misconduct     GOLDENROD—Deputy Superintendent

Case 1:01-cv-00904-YK-KH   Document 72.3   Filed 05/09/2003   Page 56 of 100

| DC-. ▰ PART II C<br>Rev. 6-84    HEARING SUPPLEMENT<br>INMATE VERSION AND WITNESS STATEMENTS | COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF CORRECTIONS | | |
|---|---|---|---|
| DC Number<br>DD 3483 | Name<br>Culver, Brett | Institution<br>SCIMAH | No. from PART I<br>A159045 |

**INMATE'S VERSION**

4-13-00 I was on the Block waiting to go to Library at 2:30 PM. As I was going to the library, another inmate ~~with~~ 2:30 PM. with me asked me if I would put his News paper in my pocket (Coat), because he had no pockets or Coat to put or carry it in.

Went to Library for 15 min. Left Was stoped by Desk C.O. who asked me if I was at Law Library. I said No. He asked me what I had. I gave him my Book that I signed-out ~~to~~ (Which I never got ~~back~~ back), and my folder of Legal materials. He asked me what it was. I told him, "Legal Work". He then asked me to empty my pockets, and I then gave him the rolled-up news paper, my hat, a pen, my address book, and I.D. (Oddly, The CO Kept asking me about my VendaCard whereabouts,

The C.O. tried to say that I wasn't allowed to have Legal Work. He then said I was getting a Misconduct for having Legal Work. He said he was keeping my materials, and asked if I wanted a Confiscation slip. I said Yes.

Now that this C.O. has found he ~~this~~ is wrong, and has violated my rights, his contention is a fabricated story about the Legal Work being in the news paper, as if I was hiding it, or wasn't suppose to have it or something.

As to the insinuation of the News Paper being contraband; Inmate Handbook page 4 Cell Block Rules 5 says News Papers can be passed on to other inmates. This cancils Cat D #8 (Note that DT-5365 did not recieve DC Cat B #8 is also void. The Inmate Handbook, Inmate Handbook Supplement, and the Inmate Library Procedures has no restriction for News Papers or Legal Materials brought to Lib

# ATTACHMENT B

*RW*

| FORM **DC-141**   Rev. 6-84 | PART I | COMMONWEALTH OF PENNSYLVANIA | | **A** 212770 |

☒ MISCONDUCT REPORT  ☐ OTHER    **DEPARTMENT OF CORRECTIONS**

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| DD-3483 | Culver, Brett | SCI-MAH | 1515 | 9/5/00 | 9/18/00 |

| Quarters | Place of Incident |
|---|---|
| RHU | Security Office |

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| Staff | COI Brennan | | | Staff | Superintendent Shannon | | ✓ |
| Staff | COI Engle | | | | | | |
| Staff | COI Miknich | ✓ | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION**    A. Class # 15.  Threatening an Employee or their family with bodily harm.

**STAFF MEMBER'S VERSION**   On September 5, 2000 Superintendent Shannon received a Request Slip from DD-3483 Culver. In the Request slip inmate Culver alledged that Co Miknich was harrassing and stalking him. Culver further stated "I cannot be held accountable for my actions on my part that might occur related to these situations". On 9/11/00 I attempted to interview inmate Culver concerning his threatening statement, Culver refused to cooperate and explain his statement, therefore his statement is considered a threat to Co Miknich. The differance in the original date of incident and report date was due to this Reporter being out of the institution until 9/11/00. Misconduct A212769 was dismissed without prejudice resulting in a new date of Report of 9/18/00.

**IMMEDIATE ACTION TAKEN AND REASON**   Continue confinement in the L-5 Pending Further Action by the Hearing Examiner.

**PRE-HEARING CONFINEMENT**

| | IF YES | |
|---|---|---|
| | TIME | DATE |
| ☐ YES | N/A | N/A |
| ☒ NO | | |

☒ REQUEST FOR WITNESSES AND REPRESENTATION   ☐ INMATE'S VERSION
FORMS GIVEN TO INMATE

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY    SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY | |
|---|---|---|---|
| Mooney, Vincent F. Intelligence Captain | C.O. Bgn | DATE 9-18-00 | TIME 24 HOUR BASE 1915 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | Misconduct Category | Signature of Person Serving Notice |
|---|---|---|---|
| DATE 9-20-00 | TIME 0800 | ☒ CLASS 1  ☐ CLASS 2 | CO' Meshir |

**NOTICE TO INMATE**
You are scheduled for a hearing on this allegation on the date and the time indicated or as soon thereafter as possible. You may remain silent, if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class I misconduct, any pre-release status you have will be revoked.

9-11-00

| DC-141<br>Rev. 6-84<br>DISCIPLINARY HEARING REPORT | PART II B | COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF CORRECTIONS | | | | |
|---|---|---|---|---|---|---|
| DC Number<br>DD 3483 | Name<br>Culver | Institution<br>SCI-NAH | Hearing Date<br>9-22-00 | Hearing Time<br>10:40 | | No. from Part I<br>A212770 |

| INMATE<br>PLEA | ☐ Guilty<br>☑ Not Guilty | ☐ No Plea<br>☐ Other | Verdict | ☑ Guilty<br>☐ Not Guilty |
|---|---|---|---|---|

HEARING ACTION

CHARGES   A#15. THREAT — not gty

---

**FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED**

Culver submits a version stating essentially that he did author the attached copy of the request slip. He did make the statement that "I cannot be held responsible or accountable for any action on my part that might occur related to this situation..." But he does not see this as a threat.

I find for the staff's report over Culver's denial that the statement he authored in the attached request slip, that he could not be held responsible for any action on his part, as a threat to staff. I find he was liable this not meant it as a threat. I find him guilty of this threaty chgl.

Sancti. 90 to DC
eff. 9-11-00
12-9-00

| | | |
|---|---|---|
| ☑ YES | ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. |
| ☑ YES | ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. |
| ☑ YES | ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. |
| ☑ YES | ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. |

enters copy attached
+ seen detns

**SEE APPENDICES**

copy of request slip
attach + shared with
Culver

| NAME(S) OF HEARING EXAMINER/COMMITTEE<br>(TYPED OR PRINTED) | Hearing Report and all appended information must be signed. Signature indicates finished report with appendices. |
|---|---|
| J.K. KANE | SIGNATURE OF HEARING EXAMINER/COORDINATOR |

**DC-141**    **PART II A**      **COMMONWEALTH OF PENNSYLVANIA**
Rev. 6-84
INMATE REQUEST FOR          **DEPARTMENT OF CORRECTIONS**
    REPRESENTATION AND WITNESSES

| DC Number | Name | Institution | Date | Number as on Part I |
|---|---|---|---|---|
| DD3483 | *Culver, Brett* | SCI MAH | 9-18-00 | A212770 |

You have been charged with a misconduct. You may request assistance and/or witnesses to appear at your hearing by completing the section(s) below. *With Assistance by Attorney/Case involves Official criminal intent.*

In order to have assistance or witnesses at your hearing, you must complete this form and present all copies to one of your housing officers no later than 9:00 a.m. the first working day after you receive notice of the misconduct.

Assistance: ☐ I do not request assistance
         ☒ I request assistance by *Kelly P. Stuber Esquire*    *Pa. Institutional Law Project*
         (The person requested must be willing to assist you)    *924 Cherry St.*
                                           *Philadelphia PA.*

Witnesses:     You may request witnesses in accord with DC-ADM 801. State the relevance and *no. Culver appears* importance of the testimony the witness will give. *able + understand the proceed*

| If Inmate | DO NOT WRITE IN THIS SECTION |
|---|---|
| **1. Name of Witness:**   **No.**   **Quarters** | For Use by Hearing Examiner |

*Original Document (R. Shannon 95-00) Stamp Dated to V. Mooney Office recipt*

**Why is this person's testimony relevant and important?**     Witness permitted?     If not, why not?
*V. Mooney rendering of statement in #A212770 is altered and not correct to the original text. Also V. Mooney twists this partial statement out of the context present in the original Office Date Stamp for Evidence.*

*Institutions*

| If Inmate |  |
|---|---|
| **2. Name of Witness:**   **No.**   **Quarters** | Witness permitted?     If not, why not? |

*Work Attendence Trucking Record for V. Mooney*    *9-5-00 to 9-18-00*

**Why is this person's testimony relevant and important?**
*V. Mooney enters (implies) evidence by testimony in report that he had not been at this institution 9-5-00 to 9-11-00 for rational, that this charge could not be written-up (outside his authority and presence).*

*no, are no any requested specifically*

*Whomever was V. Mooney's replacement during absence.*

| If Inmate |  |
|---|---|
| **3. Name of Witness:**   **No.**   **Quarters** | Witness permitted?     If not, why not? |

*Whomever was in charge of V. Mooney's duties during his*

**Why is this person's testimony relevant and important?** *absence 9-5-00*
*To explain why nobody at this Prison to 9-11-00 could found any reason, or could not take action if this violation (alleged) existed. And why no violation was found by anyone for the 6 days (six days) V. Mooney alleges he was not at this institution.*

*Britt Culver*
**Inmate's Signature**

This section to be completed by Housing Officer only

Received completed form *0645* hours *9-19-00*
            Time           Date                          **Hearing Examiner's Signature**

*CO HENDERSON / Hend*
**Housing Officer's Signature**

PINK   Staff Member Reporting Misconduct

Shannon (Superintendent) did not find any violation in document 9-5-00. Mooney did not charge me with #15 Because Document 9-5-00 was in violation, I was charged with the alleged violation because I wouldn't speak about information V. Mooney wanted. I was charged because I would not do what V. Mooney wanted me to do. Document R. Shannon 9-5-00 is not in violation, and that is so documented Threat to Him.

| DC-141 | PART II C | COMMONWEALTH OF PENNSYLVANIA |
| Rev. 6-84 | HEARING SUPPLEMENT | DEPARTMENT OF CORRECTIONS |
| INMATE VERSION AND WITNESS STATEMENTS | | |

| DC Number | Name | Institution | No. from PART 1 |
| --- | --- | --- | --- |
| JD-3483 | CULVER, BRETT | SCI-MAH | A-212770 |

**INMATE'S VERSION**

Statement of allegation is a isolated partial of a statement being twisted out of context to which it was presented. Also, this isolated partial being twisted out of context has been ALTERED from its original text, as it is rendered in #A212770. Even out of context this isolated partial implies no threat to anyone. In context presented in the two form documentation sent to R. Shannon 9-5-00, this document was a Proclamation. Due to Administrative hostilities and refusal to address violations being committed against my person, I Proclaimed, as to the context, that I am not responsible for any of the issues or situations I have been forced to seek relief for or resolution to. And regardless of the Administrative Official threats to "stop pursuing these issues of complaint, I am not accountable (or responsible) for any actions on my part or efforts to secure relief. "I" am not responsible for these situations or violations being committed against "me". (I am not accountable.) XXX I also Proclaimed that because of Administrative Corruption, retaliation, and refusal to address/Process these issues, I would not be submitting anymore issues to the authority of this Administration. Superintendent R. Shannon received this documentation (for record) and sent a copy to (   ?   ) to have the ISSUES OF COMPLAINT investigated. There was no "alleged Threat" by Superintendent R. Shannon concerning the document. (to be investigated) Superintendent R. Shannon is in a position (d. of Authority) and knowledgable enough to know if a rule or regulation had been violated. And he would have had me charged immediately (had there been 9-5-00). But no action was taken because no rule or regulation had been violated, nor was there any Threat made. On 9-11-00 Vincent Mooney did not ask me anything about a Threatning Statement as he testifies in his report. V. Mooney was enraged because I immediately told him I had nothing to say to this Administration on these issues. As Proclaimed in the Document, reasons included) V. Mooney was asking about names of employees refered to in the Document "ONLY". I again told him I had nothing to say, all issues are being handled by outside agencies. In rage V. Mooney had me sent to RHU. V. Mooney's report implies that Mr. Shannon is not capable of reporting this alleged charge, nor is anyone else during his so called absence 9-5-00 to 9-11-00. The Proclamation Document itself was specifically

Exh D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRETT CULVER,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 1:CV-01-0904** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, et al.,** | : | **(JUDGE KANE)** |
| | : | |
| **Defendants** | : | |

## UNSWORN DECLARATION OF ROBERT D. SHANNON

I, **ROBERT D. SHANNON**, hereby declare under the penalty of perjury that the following is true and correct and based upon my personal knowledge:

1.      I am currently employed by the Pennsylvania Department of Corrections ("DOC") as the Superintendent of the State Correctional Institution at Frackville, Pennsylvania ("SCI-Frackville"). I have held this position since June 24, 2002.

2.      Prior to serving as Superintendent at SCI-Frackville, I served as the Superintendent at the State Correctional Mahanoy ("SCI-Mahanoy") in Frackville, Pennsylvania. I was the Superintendent at SCI-Mahanoy from January, 2000 until June, 2002. I have been employed by the DOC for twenty-eight years. At all times relevant to this complaint, I was Superintendent at SCI-Mahanoy.

3.      As Superintendent at SCI-Mahanoy, I functioned as the administrative head of the institution. In the course of such employment, I have and have had reason to be familiar with the standard policies and procedures followed at SCI- Mahanoy, as well as those of the DOC, including inmate disciplinary procedures and record keeping practices concerning misconduct reports and inmate grievances. I am also familiar with the various DOC Administrative Directives that impact inmates.

4.      Inmate disciplinary procedures are governed by DC-ADM 801.  DC-ADM 801 provides inmates with  notice of prohibited behavior, outlines the hearing process, establishes sanctions and outlines the available misconduct appeal process. In accordance with DC-ADM 801, inmates  may submit an appeal of an institutional Misconduct Report to me for review and decision.  DC-ADM 801 is the exclusive mechanism an inmate employs when appealing matters concerning misconducts, including procedures, hearings, and sanctions pertinent  to the misconduct.  Inmates may also appeal my decision to the DOC for final review.  (*See* Attachment "A").

5.      Pursuant to DC-ADM 804, inmates  are provided a mechanism in which to resolve any problem which may arise during the course of their confinement.  In accordance with DC-ADM 804, inmates are encouraged to work out any problem or differences with staff informally or by submitting a written request directly to the staff member involved.  If the matter is not resolved, an inmate may submit an official grievance to the grievance coordinator.  Subsequent to the grievance coordinators review and investigation, inmates will receive a written response to their grievance. Inmates dissatisfied with the response may appeal the matter to mu office and my decision to the DOC for final review.  If no appeal of the grievance is received, the response to the grievance is final.  (*See* Attachment "B").

6.      On April 13, 2000, Officer Miknich issued Brett Culver, DD-3483 Misconduct No. A 159045, Possession of Contraband and Loaning or Borrowing Property.  According to the misconduct  report, Culver had a newspaper belonging to another inmate and law work in the inside of the newspaper.  (*See* Attachment "C").

-2-

7.     On April 14, 2000, I received an Inmate Request from Culver concerning the documents confiscated regarding Misconduct No. A 159045 and I informed Culver to contact the property room. (*See* Attachment "C").

8.     Culver's hearing regarding Misconduct No. A 159045 was held on April 17, 2000. After a review of the information, documentation and evidence presented, the hearing examiner found Culver guilty of possession of contraband, reduced the charge to a Class II misconduct and revoked the contraband. (*See* Attachment "D").

9.     On April 24, 2000, I received another request slip from Culver regarding the documents confiscated in reference to Misconduct No. A 159045. I informed Culver that the issues in his request form may be matters to consider in his misconduct appeal. (*See* Attachment "C").

10.    On April 28, 2000, Culver appealed the hearing examiner's finding to the Program Review Committee ("PRC"). The PRC reviewed Culver's appeal and sustained the sanction of hearing examiner. Culver was notified in writing of the PRC finding. (*See* Attachment "D").

11.    Culver appealed the decision of the PRC to my office on May 11, 2000. In his appeal to the PRC and to my office, Culver questioned whether newspapers were considered contraband. Culver made no mention of any other documents. I reviewed the misconduct report, the hearing examiner's finding and sanction, the PRC's decision and Culver's appeal. Based upon my review, I denied Culver's appeal of Misconduct No. A 159045. (*Id.*)

12.    On May 12, 2000, I notified Culver in writing that his appeal was denied and that while newspapers are permitted to be exchanges cell to cell, they are not to

-3-

be taken off the block and that once the newspaper is off the block it is contraband/borrowed property of others. (*Id.*)

13.    On June 8, 2000, Culver submitted grievance, Grievance No. 0286-00, alleging that he was continuously harassed by Officer Miknich and that Miknich took his legal materials.   On June 25, 2000, Culver notified the Grievance Coordinator, Carol Dotter, that he wished to withdraw this grievance. (*See* Attachment "E").

14.    In August, 2000, Culver attempted to re-file Grievance No. 0286-00. This grievance was initially returned to him because he had withdrawn the grievance and it addressed a matter concerning a prior grievance, Grievance No. 0217-00, which had been reviewed and not appealed by Culver. (*Id.*)

15.    Culver was permitted to re-file Grievance No. 0286-00 and the matter was reinvestigated.  Lt. Brennan investigated the grievance and found no evidence to support Culver's claims.  Brennan further reported that Culver had, on occasion, disregarded the proper procedures for attending the Library and Education Building and brought unauthorized materials into the library.  Brennan informed Culver of his findings on August 24, 2000. (*Id.*)

16.    On August 26, 2000, Culver appealed Grievance No. 0286-00 to my office.  I reviewed Culver's grievance, Lt. Brennan's response and Culver's appeal. I advised Culver that his appeal was denied on August 29, 2000.  I informed him that he demonstrated no genuine effort to resolve his concerns before utilizing the grievance system and that his use of the grievance system was not in good faith.  I further placed Culver on grievance restriction. (*Id.*)

-4-

17.    On September 5, 2000, I received a request slip from Culver alleging that Officer Miknich was harassing and stalking him and that he "cannot be held accountable for my actions on my part that might occur related to these situations." (*See* Attachment "F").

18.    I responded to Culver on September 7, 2000, informing him that he should provide the information to the security office so his allegations could be formally investigated. I further informed him that he most certainly would be held accountable for his actions. (*Id.*)

19.    Subsequent to my receipt of the request slip, Captain Mooney investigated Culver's allegations. Mooney attempted to interview Culver concerning the threatening statements but Culver refused to cooperate. Based on his investigation and Culver's threatening statements in his request slip, Captain Mooney issued Culver Misconduct No. A 212770, Threatening an Employee or Their Family with Bodily Harm on September 18, 2000. (*Id.*)

20.    Culver's misconduct hearing regarding Misconduct No. A 212770 was held on September 22, 2000. After a review of the information, documentation and evidence presented, the hearing examiner found Culver guilty of the threat charge and sanctioned him to ninety days disciplinary custody. (*Id.*)

21.    Culver submitted several appeals regrading Misconduct No. A 212770, none of which followed DC-ADM 801, including an appeal to the DOC Chief Hearing Examiner. Culver was informed on several occasions of the proper procedures to follow regarding the appeal process, which he chose to ignore. On

November 2, 2000, I informed Culver that his appeal was denied due to inappropriate submission under DC-ADM 801. (*Id.*)

22.    At all times relevant to Culver's misconducts, I acted in accordance with the Department of Corrections Administrative Directives, including DC-ADM 801 and reviewed his appeals in accordance with those directives.

23.    At all times relevant to Culver's institutional grievances, I acted in accordance with the Department of Corrections Administrative Directives, including DC-ADM 804 and reviewed his grievances in accordance with those directives.


____8 May '03_____
**DATE**

**ROBERT D. SHANNON**
**Superintendent, SCI-Frackville**

-6-

# ATTACHMENT A



<table>
<tr><td colspan="2" align="center"><b>POLICY STATEMENT</b><br><b>Commonwealth of Pennsylvania - Department of Corrections</b></td></tr>
</table>

| Policy Subject: | Policy Number: |
|---|---|
| **INMATE DISCIPLINE** | **DC-ADM 801** |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| **March 8, 2000** | *Martin F. Horn*<br>**Martin F. Horn** | **April 17, 2000** |

## I.  AUTHORITY

The Authority of the Secretary of Corrections to direct the operations of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II.  PURPOSE

The purpose of this policy is to establish procedure for addressing inmate violations of Department of Corrections rules and regulations.

## III.  APPLICABILITY

This policy is applicable to all inmates and staff in all facilities under the jurisdiction of the Department of Corrections.[1]

## IV.  DEFINITIONS

### A. Administrative Custody (AC)

A status of confinement for non-disciplinary reasons, which provides closer supervision, control, and protection than provided in general population.

### B. Calendar Days

Any number of consecutive days, including weekends and holidays.

---

[1] 3-4217, 3-ACRS-3C-01

## C. Center Director

The person responsible for all areas of operation of a Community Corrections Center.

## D. Chief Hearing Examiner

An employee of the Department's Office of Chief Counsel, who conducts final reviews of inmate misconduct appeals.

## E. Community Corrections Hearing Committee

The persons designated by the Center Director to conduct misconduct hearings at a Community Corrections Center.

1. The committee shall be impartial and shall consist of at least one (1) but no more than three (3) staff members.

2. The committee shall perform the functions performed by hearing examiners as outlined in this policy.

## F. DC-14

Cumulative Adjustment Record form.

## G. DC-141

Misconduct Report form.

## H. Department

The Pennsylvania Department of Corrections.

## I. Director of the Bureau of Community Corrections

The person responsible for the overall direction of the Bureau of Community Corrections.

## J. Disciplinary Custody (DC)

The maximum restrictive status of confinement to which an inmate guilty of a Class I misconduct may be committed.  Inmates shall be placed in disciplinary custody status for periods no longer than ninety (90) days per misconduct charge.

## K. Hearing Examiner

An employee of the Department's Office of Chief Counsel, who conducts inmate misconduct hearings and who serves as an impartial party in the inmate disciplinary process for rule violations and misconducts.  The hearing examiner reviews evidence,

Case 1:01-cv-00904-YK-KH   Document 72.5   Filed 05/09/2003   Page 71 of 100

determines relevance of witnesses, interviews witnesses, determines guilt or innocence, and imposes sanctions consistent with this policy.

**L. Mental Health Cases**

Inmates who have a mental health stability score of "C" or "D" or in the opinion of mental health staff may be suffering from a serious mental illness.

**M. Mental Health Unit (MHU)**

An approved mental health unit housed within Department correctional facilities.

**N. Misconduct**

Any violation or alleged violation of Department rules, regulations or policies as outlined in **Section VI** of this policy.

**O. Pre-Hearing Confinement**

A temporary administrative confinement in the inmate's general population cell or RHU pending the outcome of a misconduct hearing.

**P. Program Review Committee (PRC)**

A committee consisting of three (3) staff members that conduct Administrative and Disciplinary Custody Hearings, periodic reviews, make decisions regarding continued confinement in the Restricted Housing Unit (RHU) and/or Special Management Unit (SMU), and hear all first level appeals of misconducts.  The committee shall consist of a Deputy Superintendent (who shall serve as the chairperson), a Commissioned Officer, and one staff member from the following classifications, Corrections Classification and Program Manager, Unit Manager, School Principal, Drug and Alcohol Treatment Specialist Supervisor or Inmate Records Officer Supervisor.  The Superintendent may designate other staff as committee members, however, if such designations are made, they must be in writing and the Superintendent must maintain a list of all designees. Whenever a PRC is convened, at least one (1) member of the committee must be a staff member who is not directly involved in the administration of the RHU/SMU in which the inmate is currently housed.

**Q. Restricted Housing Unit (RHU)**

An area or group of cells for inmates assigned to administrative or disciplinary custody status.

**R. Special Management Unit (SMU)**

Special units within designated Department facilities designated to safely and humanely handle inmates whose behavior presents a serious threat to him/herself, the safety and security of the facility, staff, or other inmates.

Case 1:01-cv-00904-YK-KH    Document 72.3    Filed 05/09/2003    Page 72 of 100

### S. Unit Management Team

The individuals assigned to operate a housing unit with the responsibility for security, risk management, and program delivery.

### T. Videoconference

A conference carried via television.

### U. Working Days

The normal work days of the Department, Monday through Friday, excluding holidays.

## V.  POLICY

It is the policy of the Department to operate a disciplinary process that provides clear notice of prohibited behavior, outlines a fundamentally fair hearing process, and establishes consistent sanctions for violations of Department rules and regulations.[2]  It is also the policy of the Department that information concerning an inmate's criminal acts will be forwarded to appropriate court or law enforcement officials for consideration for prosecution.[3]

## VI.  PROCEDURES

All inmates under the jurisdiction of the Department are expected to follow Department rules and regulations.  In the event that an inmate violates Department rules and regulations, the violation shall be reported and disposed of either by an informal or formal process.  The informal resolution process shall be used for those violations that are considered less serious in nature, while the formal resolution process shall be used for violations of a more serious nature.  This section provides a list of prohibited behavior that may result in the commencement of disciplinary procedures.  As explained in **Section VI (D)** of this policy, only Class I charges #35 through #46 and Class II charges are subject to informal resolution by the Unit Management Team.  Class I charges #1 through #34 must be disposed of formally by the Hearing Examiner.  **(See Attachment A for a list of misconduct charges)**[4]

### A.  Misconduct/Rule Violation Reports

All rule violations are to be reported via a **DC-141, "Misconduct Report," Part I (See Attachment B).**  Any inmate charged with any of the listed violations will receive a copy of the report.[5]

1.  The misconduct report is to be used to give notice to the inmate of the rule violations with which he/she has been charged and report the facts upon which the charges

[2] 3-4214, 3-ACRS-3C-01
[3] 3-4219, 3-ACRS-3C-03
[4] 3-4216, 3-ACRS-3C-02
[5] 3-4224, 3-ACRS-3C-06

are based. The report will be used as evidence against the inmate during the misconduct or informal resolution hearing.[6]

2. The misconduct report shall be written by either the charging staff member or contract personnel who has personal knowledge of the rule violation or by a staff member at the direction of a person who has personal knowledge of the misconduct.

3. The misconduct report will be written and submitted to the Shift Commander or Officer-in-Charge as appropriate, before tour of duty concludes the same day/shift that the charging staff member or contract personnel have knowledge of the violation. If not, the report must include a justification for the delay.

4. Prior to service of the misconduct report on the inmate, the report shall be investigated as required, reviewed and approved by the Shift Commander. The Shift Commander, as an alternative to approving the misconduct, may refer the matter for informal resolution under **Section D** of this policy. The Shift Commander will also enter all pertinent information regarding the misconduct into the Department misconduct tracking system in accordance with Department policy **6.3.29, "Automated Misconduct Tracking System."** [7]

## B. Service of Misconduct Report

1. The inmate shall be personally served with the misconduct report the same day the report is written.[8] If the misconduct report is not served the same day the report is written, the Shift Commander or designee must determine why the report was not served and supply justification on the **DC-141 Part I.**

2. The misconduct report will be served by someone other than the charging staff member. At Community Corrections Centers, the charging staff member may serve the misconduct report.

3. The staff member who serves the misconduct report shall record the date and time of service on the misconduct report immediately prior to giving the inmate a copy of the misconduct report.

4. The **DC-141 Part II(A), "Inmate Request for Representation and Witnesses"** form and the **DC-141 Part II(C), "Hearing Supplement, Inmate Version, and Witness Statement"** form shall be delivered to the charged inmate with the misconduct report. The inmate must fill out the **DC-141 Part II (A)** and submit it to the block officer or Community Corrections Center staff member no later than 9:00 a.m. the next day. The block officer shall sign the **DC-141 Part II (A)**, give a copy to the inmate, and forward the form to the hearing examiner. The inmate should bring the **DC-141 Part II (C)** to the hearing.

---

[6] 3-4220, 3-4221, 3-ACRS-3C-05
[7] 3-4222, 3-ACRS-3C-06
[8] 3-4224, 3-ACRS-3C-07

## C. Pre-Hearing Confinement

Pre-hearing confinement is not to be routine but used only upon approval of the Shift Commander. The Shift Commander will assess the incident and make the determination for pre-hearing confinement. Within 72 hours of placement in pre-hearing confinement[9], the Superintendent/designee will review the placement of the inmate.

## D. Informal Resolution of Rule Violations

1. The rule violation charges eligible for informal resolution are:

   a. all Class I charges #'s 35 through 46; and

   b. all Class II charges.

2. The Shift Commander will review all eligible misconduct reports for informal resolution. The staff member issuing the DC-141 Part I may recommend informal resolution for eligible charges, but the decision shall be made by the Shift Commander, who will base his/her choice on the relative seriousness of the misconduct and the inmate's previous misconduct history. The Shift Commander must justify under the immediate action section of the DC-141 the reason why an eligible charge was not referred for informal resolution. All misconducts selected for informal resolution will be logged on the informal resolution log and forwarded to the Unit Management Team for disposition. Misconducts that are recommended for informal resolution are not to be entered into the automated misconduct tracking system. The DC-141's selected for a hearing will be forwarded to the Hearing Examiner after being logged into the automated misconduct tracking system.

3. The Unit Manager/designee, and at least one (1) other member of the Unit Management Team will meet with the inmate for disposition of the charges within seven (7) working days. The reporting staff member is encouraged, but not required, to attend the meeting. No assistance or witnesses are permitted at these meetings. The inmate will not submit a **DC-141 Part II(C)**, but will be permitted to give his/her version of the events at the meeting.

4. The Unit Manager may take one of the following actions and note the action taken on the **DC-141 Part II (B)**.

   a. no action;

   b. reprimand and warning;

   c. refer back to the Hearing Examiner for a formal misconduct hearing if additional information indicates the situation is more serious than the Shift Commander thought. In this case, the **DC-141** will be returned to the Shift Commander, logged into the automated misconduct tracking system, and forwarded to the

---

[9] 4-4223, 3-ACRS-3C-07

Hearing Examiner for a hearing. The twenty-four (24) hour to seven (7) day hearing time limit starts when the Shift Commander receives the **DC-141** back from the Unit Management Team;

   d.   up to seven (7) days cell restriction as described in **Section J (4)(b)** of this policy;

   e.   up to seven (7) days loss of specified privileges (i.e. telephone, yard, day room, etc.);

   f.   one (1) week loss of commissary;

   g.   assignment of additional work duties for which the inmate shall not be compensated; and/or

   h.   restitution for damaged/destroyed state items/property, with the inmates agreement for payment. If the inmate refuses to agree to make restitution, the matter is to be referred to the Hearing Examiner for formal resolution.

   i.   The copy of the form designated for the inmate will be issued to the inmate at the conclusion of the meeting. All other copies of the form are to be disseminated as indicated on the form.

5. All informal resolutions of rule violations are to be recorded using an **Informal Resolution Log (Attachment C)** and the inmate's **DC-14, "Cumulative Adjustment Record."**

6. The inmate may appeal the informal resolution, in accordance with Section **L** of this policy, only in those cases that the sanction is disproportionate to the offense.

7. If the inmate refuses to attend the informal resolution meeting, the Unit Manager will return the **DC-141 Part I** to the Shift Commander to be logged into the automated misconduct tracking system, and forwarded to the Hearing Examiner for a hearing. The twenty-four (24) hour to seven (7) day hearing time limit starts when the Shift Commander receives the **DC-141** back from the Unit Management Team.

8. For the purpose of effect on parole, pre-release, and PACT, informal resolutions are not considered as misconducts, but should be reflected on applicable block and work reports.

## E. Misconduct Hearing[10]

1. A Hearing Examiner shall conduct the misconduct hearing.[11]

---

[10] 3-4230, 3-ACRS-3C-09
[11] 3-4228, 3-ACRS-3C-12

2. The misconduct hearing shall be scheduled no less than twenty-four (24) hours or no more than seven (7) working days, excluding weekends and state holidays, after notice of the charge is served.  The inmate shall be informed of the time of the hearing 24 hours in advance of the misconduct hearing.[12]

3. The inmate will be present during the misconduct hearing unless the inmate waives that right in writing or refuses to attend.[13]

4. If the charged inmate becomes disruptive at the hearing or refuses to follow the instructions given by the Hearing Examiner, he/she will be removed and the hearing conducted without the inmate being present.

5. Inmate Assistance

    a. An inmate charged with a rule violation does not have a right to assistance at a misconduct hearing.  In cases when it is apparent that an inmate is not capable of collecting and presenting evidence effectively on his/her own behalf,[14] assistance shall be permitted.  The criterion for capability is the inability of the inmate to understand the English language or the inability to read or understand the charges and/or the evidence.

    b. The Hearing Examiner will approve/disapprove requests for an inmate to have assistance at the hearing.

    c. If approved by the Hearing Examiner, the inmate shall be permitted assistance at the hearing from any staff member or any inmate in the same population status. The assistant must be willing to serve.

    d. The inmate shall be permitted to meet with the assistant for an appropriate period before the hearing.

6. Inmate Version - At the hearing, the charge(s) will be read to the inmate.  The hearing examiner will request the inmate's plea to each individual charge.  The inmate may submit a written version or may orally present his/her version that shall be summarized as part of the hearing record.

7. Witnesses

    a. The Hearing Examiner may approve the presence of any staff member or witness, only if the staff member or witness has knowledge of the incident, is present on facility grounds, and only if the testimony is needed to establish the guilt or innocence of the inmate.

---

[12] 3-4226, 3-ACRS-3C-06
[13] 3-4229, 3-ACRS-3C-08
[14] 3-4231, 3-ACRS-3C-02

    b. Up to three (3) relevant witnesses, who have been properly requested and approved, per **Section 7(a)** above shall be permitted. One (1) of the three (3) witnesses may be the staff member who witnessed the misconduct violation, or the charging staff member.

        (1) The inmate must state on the **DC-141 Part II (A)** why the witness is relevant to the hearing. The witness must be a staff member, official volunteer, contract employee, or an inmate, unless the hearing is conducted at a Community Corrections Center, where civilian witnesses may be permitted.

        (2) If the inmate properly requests a witness who is not available at the time of the hearing, the inmate may elect to either waive the seven (7) working days hearing requirement or to have the witness execute a written statement under oath which will be presented in lieu of live testimony (or subject to the penalties for unsworn falsification to authorities). If the inmate elects to have the witness present, the hearing will be rescheduled at the earliest time after the witness is available.

        (3) If an inmate witness or assistant becomes disruptive at the hearing or refuses to follow the instructions given by the Hearing Examiner, he/she will be removed and the hearing conducted without the witness or assistant being present.

    c. The Hearing Examiner may question any witness. The charged inmate shall be permitted a reasonable opportunity to pose relevant questions to any adverse witness. The Hearing Examiner shall control the extent of questioning.

    d. The Hearing Examiner shall make determinations of credibility.

    e. All testimony shall be under oath.

    f. If the inmate elects to plead guilty or waive his/her right to a hearing, no witnesses will be required.

8. When a misconduct charge is based upon information supplied by a confidential informant, the following procedure shall be followed:

    a. An in-camera hearing (without the charged inmate present) will be conducted to determine the reliability of the informant. The informant must be established as reliable by a preponderance of evidence showing:

        (1) how, where, and when the informant was in a position to observe the violation or gain personal knowledge of the violation;

        (2) what other witnesses have corroborated the informant's statement and how; or

        (3) how and when the informant gave reliable information in the past.

b. The information provided by the informant, but not the identity of the informant, will be disclosed to the charged inmate during the hearing. The charged inmate will have the opportunity to respond to the facts presented in the informant's statement.

c. In cases where the information provided by the informant could itself reveal the identity of the informant, the Hearing Examiner may withhold identifying information from the charged inmate.[15]

9. Videoconference equipment may be used to conduct misconduct hearings in accordance with Department policy, **3.8.4, "Videoconference."**

## F. Waivers[16]

1. An inmate may voluntarily waive the hearing process outlined in this policy at any time prior to the hearing's completion. The inmate may also waive any witness requests or time limitations relating to the hearing or notice of service.

2. All waivers shall be in writing and shall be signed by the charged inmate.

## G. Inmate Refusal to Attend the Hearing

1. Inmates who refuse to attend a hearing will be asked to sign a waiver advising them they have a right to a hearing but may waive that right.

2. If the inmate refuses to attend the hearing or sign a waiver, two (2) staff members who witness the refusal will sign the waiver form. The hearing will be conducted without the charged inmate present. The Hearing Examiner will determine guilt or innocence, and a sanction will be imposed if the inmate is found guilty.

3. The inmate may not appeal the results of a hearing he/she refused to attend.

## H. Inmate Unable to Attend[17]

If the inmate is physically or mentally unable to participate in a hearing, the Hearing Examiner shall postpone the hearing until the inmate is able to participate. The decision to postpone a hearing under this section shall be in writing and shall be made at the time the hearing would have been held.

## I. Disposition of Charges

1. As soon as possible after hearing all evidence, but no later than seven (7) calendar days thereafter, the Hearing Examiner shall determine based upon the evidence obtained in the hearing process, including staff reports, the statements of the inmate

---

[15] 3-4229
[16] 3-4225, 3-4218, 3-ACRS-3C-08
[17] 3-4227, 3-ACRS-3C-10

charged, and the evidence derived from witnesses and documents, whether the inmate is guilty of the misconduct charge based on some evidence that the inmate committed the misconduct charge or charges.[18]

2. After the Hearing Examiner reaches the decision, the inmate shall be called before the Hearing Examiner to hear the decision.

3. If the inmate is found not guilty, that fact shall be recorded in writing. The inmate shall be given a copy. No rationale for the decision is required. All record of the misconduct shall be removed from the inmate's facility file and retained in a separate facility file until the inmate is released or transferred.[19]

4. If the inmate is found guilty, a written summary of the hearing will be prepared that will include the facts relied upon by the Hearing Examiner to reach the decision, and the reasons for the decision. The summary shall also include findings of fact concerning the testimony of each witness presented. A copy of the written summary will be given to the inmate.[20] The inmate shall be advised that he/she has up to fifteen (15) calendar days to submit a written appeal to the PRC.[21]

5. In misconducts involving financial loss or cost because of the inmate's behavior, the Hearing Examiner may impose costs against the inmate in accordance with Department policy **1.7.5.**

6. The Hearing Examiner may dismiss any misconduct charge without prejudice, to permit recharge without determination of guilt or innocence.

7. If the inmate is found guilty of a drug-related misconduct, the Hearing Examiner will submit a **Drug-Related Misconduct Form** in accordance with Department policy **6.3.12, "Drug Interdiction Program Procedures Manual", Section 3, Appendix A,** to the Intelligence Captain. This form will also include a copy of the **DC-141, Part II(B).** A copy of the Drug-Related Misconduct Form also will be given to the inmate. This form will serve as notification to the inmate that any inmate who is found guilty of a misconduct for dealing, using (including by urinalysis), or possessing controlled substances, will be prohibited from having contact visits for the period specified below.

This time period and the special security precautions will commence on the date of the misconduct hearing, upon a finding of guilt.

|  |  |  |
|---|---|---|
| 1st offense | - | 180 days |
| 2nd offense | - | 360 days |
| 3rd offense | - | permanently |

---

[18] 3-4232, 3-ACRS-3C-11
[19] 3-4234
[20] 3-4233, 3-ACRS-3C-12
[21] 3-4236, 3-ACRS-3C-13

## J. Misconduct Sanctions

1.  The hearing examiner shall impose misconduct sanctions.

2.  Any inmate found guilty of a Class I misconduct (charges #1 through and including # 34) is to be removed from his/her job assignment.

3.  Inmates who are found guilty of a misconduct for #39 (refusing to work, attend school or attend mandatory programs or encouraging others to do the same) for a second time, including any informal resolution, will in addition to any other penalty imposed, not be allowed the privilege of telephone or television until they return to work, school, or the mandatory program. After a period of ninety (90) days, upon application by the inmate, PRC may terminate this restriction if the inmate's failure to return to the assignment is no fault of his/her own.

4.  In addition to being removed from his/her job assignment, one or more of the following sanctions may also be imposed for a Class I misconduct:

    a.  assignment to disciplinary custody status for a period not to exceed <u>ninety (90), days</u> per misconduct charge;

    b.  cell restriction for a period not to exceed thirty (30) days per misconduct charge. Cell restriction is total confinement to general population cell, dorm area or cubicle, except for meals, showers, one (1) formal religious service per week, commissary, law library and one (1) 1-hour specified daily exercise period. Participation in programs, school, and work are suspended;

    c.  loss of privileges for a prescribed period. Privileges lost must be specifically identified and should, where possible, be related to the misconduct violation. Privileges include television, radio, telephone, and commissary for up to thirty (30) days, visiting suspension or restriction for up to sixty (60) days, yard and blockout.

    d.  assessment of costs as a result of the inmate's behavior in accordance with Department policy **1.7.5, "Assessment of Costs Resulting From Inmate Misconduct."**

    e.  reprimand, warning, counseling;

    f.  final disposition of confiscated contraband;

    g.  revocation of pre-release status and/or outside program codes; and/or

    h.  limitation of commissary privileges to ten dollars ($10.00) a week for up to one (1) year following a finding of guilt for a misconduct involving gambling.

5.  The hearing examiner may reduce the classification of any Class I misconduct (except Class I charges #1 through #15) to a Class II misconduct.

6. Inmates found guilty of Class II misconduct charges are subject to one (1) or more of the above sanctions <u>except</u> placement in disciplinary status and loss of pre-release status.

7. Time given for misconduct charges #1 through #14 will be served in its entirety. For other misconducts, the PRC may consider a release to general population upon completion of half of the sanction imposed. The Superintendent or PRC may change an inmate from DC to AC status only upon expiration of the DC sanction and only if the proper notice and hearing procedures are provided as outlined in Department policy **DC-ADM 802, "Administrative Custody Procedures."**

8. At any time, the Superintendent or designee may reduce the disciplinary sanction imposed on any inmate other than those with misconduct charges #1 through #14 based on the security needs of the facility. The reduction of the sanction must be done in accordance with Department policy **6.5.1, "Administration of Restricted Housing Units."** When this occurs, the Superintendent shall notify the Regional Deputy Secretary via the Weekly Status Report.

9. Inmates with multiple misconduct sanctions whose disciplinary custody time exceeds one (1) year, may be released to general population by approval of PRC and the Superintendent after completion of one (1) year of misconduct free behavior as long as the reduction of time does not involve charges #1 through #14.

10. The PRC or the Superintendent has the discretion to reduce disciplinary sanctions for mental health cases in accordance with Department policy **6.5.1.**

11. The disciplinary sanctions imposed by the Hearing Examiner may be suspended in accordance with Department policy **6.5.7, "Special Management Unit".**

## K. Review of Misconduct Proceedings[22]

After the misconduct hearing has been concluded, the hearing record should be forwarded to the Superintendent or designee for review. This review should ensure that the hearing was conducted in accordance with stated procedures and that the action taken conformed to facility regulations[23].

## L. Appeals

1. First Level of Appeal - PRC

   a. Any inmate who has been found guilty of a misconduct charge or charges or an informal resolution may appeal to the PRC for initial review within fifteen (15) calendar days of the hearing. The three (3) valid bases for an appeal to the PRC are:

[22] 3-4215, 3-ACRS-3C-01
[23] 3-4235, 3-ACRS-3C-08

(1) the procedures employed were contrary to law, Department directives, or regulations;

(2) the punishment is disproportionate to the offense; and/or

(3) the findings of fact were insufficient to support the decision.

b. No appeals from a finding of not guilty are permitted.

c. All appeals shall be in writing. Only one (1) appeal to the PRC shall be permitted in the case of each misconduct report.

d. Any inmate may seek the assistance of a staff member or an inmate in the same population status in the preparation of an appeal. The inmate appellant must sign the appeal.

e. The appeal shall include a brief statement of the facts relevant to the appeal. The text must be legible and presented in a courteous manner. The inmate may state any claims concerning alleged violations of Department directives, regulations or other law.

f. The PRC will address each issue raised by the inmate, and may, at its discretion, consider any other matter relevant to the issues raised. The PRC is not required to address issues not raised or improperly raised by the appellant.

g. The PRC shall have the authority to:

(1) reject any appeal that does not conform to Section L(1)(a) through L(1)(f) above;

(2) uphold the Hearing Examiner's or Unit Management Team's decision;

(3) uphold the finding of guilt, but modify the punishment;

(4) vacate the decision and remand back to the Hearing Examiner for a rehearing;

(5) vacate the decision and charge to permit recharge and rehearing; or

(6) dismiss the charge and prohibit recharge.

h. The PRC may not impose a greater punishment than has been designated by the Hearing Examiner. The PRC will provide a brief written statement to the inmate of the reasons for its decision within seven (7) working days of receipt of an appeal.

2. Second Level of Appeal - Superintendent

   a. The inmate may appeal the decision of the PRC to the Superintendent within seven (7) calendar days of receipt of the written PRC decision. The appeal shall include a brief statement of the facts relevant to the appeal. The text must be legible and presented in a courteous manner. The inmate may state any claims concerning alleged violations of Department directives, regulations or other law.

   b. The Superintendent will address all issues raised by the inmate and may consider any other matter relevant to the issues raised. The Superintendent is not required to address issues not raised or improperly raised by the appellant.

   c. The Superintendent may make any decision permitted to the PRC. The decision of the Superintendent will be in writing and will be forwarded to the inmate within seven (7) working days of receipt of the appeal. Any day that the Superintendent is absent from the facility will not be included in the seven (7) working days. In the event of annual leave or an extended absence by the Superintendent, a designee who was not on the PRC that heard the inmate's first level of appeal shall respond to the second level of appeal in place of the Superintendent.

3. Final Appeal - Office of Chief Counsel

   It is the intent of the Department to provide inmates with a complete and timely review of all appeals properly raised to final review. The following steps have been established to ensure timeliness at final review while continuing to provide a thorough impartial review of the issues.

   a. All final appeals of misconducts should be addressed to the Chief Hearing Examiner, at the following address:

      Chief Hearing Examiner
      1451 N. Market Street
      Elizabethtown, Pa. 17022

      The inmate may appeal the decision of the Superintendent within seven (7) calendar days of the receipt of the Superintendent's decision. Appeals that are addressed to the Secretary, Chief Counsel, or to other Central Office Staff, are delivered to these individuals first, then referred to the Chief Hearing Examiner. Improperly addressed appeals may cause a delay in the response at final appeal.

   b. Inmates appealing for final review of their misconducts are responsible for providing the Chief Hearing Examiner with a brief statement relative to issues and any available paperwork or documentation relevant to the appeal. A proper appeal for final review should include photocopies of the Misconduct Report, Hearing Examiner's Report, the Inmate Version and Witness forms (if applicable), Appeal to PRC, PRC Response, Appeal to the Superintendent, and the Superintendent's response.

Case 1:01-cv-00904-YK-KH   Document 72.5   Filed 05/09/2003   Page 84 of 100

c. The Chief Hearing Examiner will review and respond to all misconduct appeals to final review within seven (7) working days of receipt of all necessary records for review. The Chief Hearing Examiner will review the misconduct, the hearing report, and all appeals therefrom, and the issue raised to final appeal.

d. Upon completion of final review, the Chief Hearing Examiner will respond directly to the inmate in all cases where the position taken by the facility is upheld.

e. In all cases where the action of the Hearing Examiner, PRC or the Superintendent is reversed or amended, or where a matter is remanded, the Chief Hearing Examiner will prepare a letter to the inmate and a memorandum to the Superintendent. The Chief Hearing Examiner will forward the letter and memorandum to the appropriate Regional Deputy Secretary for review and signature.

## M. Disciplinary Custody Status Inmates

1. DC status inmates are housed in separate cells from general population and AC status inmates.

2. Inmates in DC are prohibited from using, purchasing, or possessing any tobacco products while confined in the RHU.

3. Inmates in DC status will not have the privileges of radios, televisions, telephone calls, personal property or commissary (except toilet articles, legal/correspondence materials and prescribed medications).

4. Visits are limited to one (1) non-contact visit per month, which may be limited to weekdays only, with immediate family. Legal and religious advisor visits will be permitted, in accordance with Department policy **DC-ADM 812, "Inmate Visiting Privileges."** In case of a verified emergency, the Unit Manager or a Commissioned Officer may approve a telephone call. All approved emergency telephone calls must be logged in the RHU Log Book and in the inmate's **DC-17x, "Adjustment Record for Administrative and Disciplinary Custody Inmates."**

5. DC status inmates will be permitted to retain religious, as well as legal materials that may be contained in one (1) records center box. Any additional legal or religious materials will be stored and made available upon request on an even exchange basis not more than once every thirty (30) days unless approved by PRC.

6. Inmates will be provided access to the facility law library by requesting legal materials in accordance with Department policy **DC-ADM 007, "Access to Provided Legal Services."** Other library books may be requested on a weekly basis.

7. Inmates in DC status will be provided with an orange RHU jumpsuit and slip on canvas footwear. Basic issue toilet articles will be provided on request. Three (3)

pair of personal undergarments are permitted. No other personal property is permitted. Outerwear for exercise will be provided as needed.

8. DC status inmates will receive one (1) hour exercise per day, five (5) days per week, and shall be permitted a minimum of three (3) showers and three (3) shaves per week.

9. The PRC will interview all AC and DC cases every ninety (90) days unless recommended for earlier review by the inmate's Unit Management Team. Every inmate must be seen weekly by the counselor and his/her case reviewed monthly by the inmate's Unit Management Team. The counselor's weekly interview and the Unit Management's monthly review are to be documented in the **DC-14**. Any recommendation by the Unit Management Team for early release is to be forwarded to the PRC.[24]

## N. Community Corrections

### 1. Procedures

a. The Center Director can review for informal resolution and meet with the inmate for disposition of the charges using the same range of sanctions as in **Section VI (D)(4)**.

b. A Hearing Committee will hear misconduct hearings held at a Community Corrections Facility.

c. If a Community Corrections inmate is placed in pre-hearing confinement, the misconduct report shall be served within forty-eight (48) hours of the inmate's placement in pre-hearing confinement.

d. If a Community Corrections inmate is returned to a facility under pre-hearing confinement, a Hearing Examiner will conduct the hearing at the facility.

e. Misconduct reports will be processed and hearings conducted as outlined in **Section E** of this policy.

### 2. Appeals

a. If the inmate has been permanently returned to a facility, appeals may be filed in accordance with **Section L** of this directive.

b. Inmates remaining at a Community Corrections Facility may appeal misconduct hearing results to the Director, Bureau of Community Corrections, P.O. Box 598, Camp Hill, Pennsylvania 17001-0598.

---

[24] 3-4241

## VII. SUSPENSION DURING EMERGENCY

In an emergency or extended disruption of normal facility operations, the Secretary or his/her designee may suspend any provision or section of this policy for a specified period.

## VIII. RIGHTS UNDER THE POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purposes of the policies of the Department.

## IX. RELEASE OF INFORMATION AND DISSEMINATION OF POLICY

### A. Release of Information

#### 1. Policy

This policy document is public information and may be released to members of the public, staff, legislative, judicial, law enforcement and correctional agencies and/or inmates upon request.

#### 2. Procedure Manual (if applicable)

The procedure manual for this policy is <u>not public information</u> and shall not be released in its entirety or in part, without the prior approval of the Secretary of Corrections or designee. This manual or parts thereof, may be released to any Department employee on an as needed basis.

### B. Distribution of Policy

#### 1. General Distribution

The Department of Corrections' policy and procedure manuals (when applicable) shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis. Distribution to other individuals and/or agencies is subject to the approval of the Secretary of Corrections or designee.

#### 2. Distribution to Staff

It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures.

## X.   SUPERSEDED POLICY AND CROSS REFERENCE

### A. Superseded Policy

#### 1.  Department Policy

This policy supersedes the previous policy on this subject, by former Secretary Joseph D. Lehman issued May 20, 1994, and the following policy bulletins:

a.  DC-ADM 801-1 by former Executive Deputy Secretary Raymond E. Clymer, Jr. issued April 10, 1995
b.  DC-ADM 801-2 by former Executive Deputy Secretary Raymond E. Clymer, Jr. issued August 16, 1995
c.  DC-ADM 801-3 by Secretary Martin F. Horn issued February 12, 1997
d.  DC-ADM 801-4 by Secretary Martin F. Horn issued October 1, 1997
e.  DC-ADM 801-5 by Secretary Martin F. Horn issued October 10, 1997
f.  DC-ADM 801-6 by Secretary Martin F. Horn issued October 21, 1997
g.  DC-ADM 801-7 by Secretary Martin F. Horn issued August 27, 1998
h.  DC-ADM 801-8 by Secretary Martin F. Horn issued February 22, 1999
i.  DC-ADM 801-9 by Secretary Martin F. Horn issued September 1, 1999

#### 2.  Facility Policy and Procedures

This document supersedes all local facility policy and procedure on this subject.

### B. Cross References

#### 1.  Administrative Manuals Cross Reference(s):

a.  DC-ADM 007, Access to Provided Legal Services
b.  DC-ADM 812, Inmate Visiting Privileges
c.  DC-ADM 802, Administrative Custody Procedures
d.  3.8.4, Videoconference
e.  6.3.12, Drug Interdiction Program
f.  6.5.1, Administration of Restricted Housing Units
g.  6.5.7, Special Management Unit Policy

#### 2.  ACA Standards

a.  Administration of Correctional Agencies: None
b.  Adult Correctional Institutions: 3-4214 through 3-4236, 3-4241
c.  Adult Community Residential Services: 3-ACRS-3C-01 through 3-ACRS-3C-03 and 3-ACRS-3C-05, through 3-ACRS-3C-13
d.  Adult Correctional Boot Camp Programs: None
e.  Correctional Training Academies: None

**ATTACHMENT B**



| BULLETIN |
| --- |
| **Commonwealth of Pennsylvania • Department of Corrections** |

| TO: **Executive Staff** **Superintendents** **Boot Camp Commander** **Regional Directors** | Policy Subject: **Consolidated Inmate Grievance Review System** |
| --- | --- |
| | Policy Number: **DC-ADM 804-05** |
| | Policy Issue Date: **July 20, 1994** |

| Date of Issue: **October 30, 2000** | Authority: *Martin F. Horn* **Martin F. Horn** | Effective Date: **November 1, 2000** |
| --- | --- | --- |

Effective November 1, 2000, all final appeals of inmate grievances shall be handled by the Secretary's Office of Inmate Grievances and Appeals. Therefore, any final appeal to be submitted on or after November 1, 2000, should be sent to the following address:

> Chief, Secretary's Office of Inmate Grievances and Appeals
> Department of Corrections
> 2520 Lisburn Road, P.O. Box 598
> Camp Hill, PA 17001-0598

*Revised 1/1/01*



**POLICY STATEMENT**

**Commonwealth of Pennsylvania ● Department of Corrections**

| Policy Subject: | Policy Number: |
|---|---|
| **Consolidated Inmate Grievance Review System** | **DC-ADM 804** |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| July 20, 1994 | Joseph D. Lehman, Commissioner | Oct. 20, 1994 |

## I.  AUTHORITY

The Authority of the Commissioner of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II.  PURPOSE

It is the purpose of this Administrative Directive to establish policy regarding the Consolidated Inmate Grievance Review System and to ensure that inmates have an avenue through which resolution of specific problems can be sought.

This directive sets forth procedures for the review of Inmate Grievances not already covered by other Administrative Directives and policies.  It also provides the method through which review procedures established by other directives are to be integrated with the procedures outlined in this directive.

## III.  APPLICABILITY

This policy is applicable to all employees of the Department of Corrections and all inmates under the jurisdiction of the Department of Corrections and to those individuals and groups who have business with or use the resources of the Department of Corrections.

## IV.  DEFINITIONS

A.  Grievance -

The formal written expression of a complaint submitted by an inmate related to a problem encountered during the course of his/her confinement.

B.  Grievance Coordinator -

The Corrections Superintendent's Assistant in an institution or the Assistant to the Regional Director in Community Corrections who is responsible for the overall administration of the Inmate Grievance System in that facility\region.  This includes all data collection, tracking and statistical reporting.  At the direction of the Facility Manager or Community Corrections Regional Director, the Grievance Coordinator may be called upon to provide Initial Review of certain grievances.

DC-ADM 804

C. Grievance Officer -

An appropriate Department Head or Management Level staff person designated by the Facility Manager or CC Regional Director to provide Initial Review of an inmate grievance arising from his/her specific area of responsibility, e.g., a Unit Manager would be assigned to provide Initial Review of a grievance from the housing unit. If the grievance arises from the Food Services Area, the Grievance Officer designated by the Facility Manager shall be the Food Services Manager, likewise, the Corrections Health Care Administrator would be the Grievance Officer for a grievance related to a Health Care issue.

D. Central Office Review Committee **(CORC)** -

A committee of at least three (3) Central Office staff appointed by the Commissioner of Corrections to include the Commissioner, Executive Deputy Commissioner and Chief Counsel or their designees.

With the exception of appeals from disciplinary action under DC-ADM 801 and appeals arising from Health Care or medical treatment grievances, the CORC Shall have responsibility for direct review of all Inmate Appeals for Final Review.

E. Central Office Medical Review Committee **(COMRC)** -

A committee appointed by the Commissioner to include the Director of the Bureau of Health Services and relevant Bureau staff. The COMRC shall have responsibility for direct review of grievance appeals related to Health Care and medical treatment issues.

F. Initial Review -

The first step in the formal Inmate Grievance Process for all issues except those already governed by other specified procedures (see VI E). All reviews conducted below the level of Facility Manager or Regional Director are considered initial reviews.

G. Appeal from Initial Review -

The first level of appeal of a decision rendered at Initial Review. This appeal is directed to the Facility Manager or Community Corrections Regional Director.

**An appeal of the Initial Review decision on a grievance related to a Health Care or Medical issue shall be submitted directly to the COMRC at Central Office.**

**Only issues raised at Initial Review shall be appealed.**

H. Final Review -

Upon completion of Initial Review and appeal from Initial Review, an inmate may seek Final Review from the Central Office Review Committee **(CORC)**, for any issue involving continued non-compliance with Department of Corrections directives or policy, the ICU Consent Decree or other law.

## V. POLICY

A. It is the policy of the Pennsylvania Department of Corrections that every individual committed to its custody shall have access to a formal procedure - the Consolidated Inmate Grievance Review System - through which the resolution of problems or other issues of concern arising during the course of confinement may be sought. For every such issue there shall be a forum for review and an avenue of appeal, but only one.

DC-ADM 804

B. **Informal Resolution of Problems** - All inmates are expected to attempt to resolve problems or differences with staff on an informal basis through direct contact or by sending a request slip to appropriate staff. Action taken by the inmate to resolve the situation must be indicated on the grievance form, Section B.

The Grievance Form, DC 804, Part I, is available in each Housing Unit or upon request from Unit staff. This is the proper form to be used for submission of a grievance and it should be completed according to the directions provided.

**It is required that a genuine effort be made to resolve the problem before the grievance system is used. The inmate must document these efforts in Section B of the Grievance Form. Failure to do so may result in the grievance being returned to the inmate without action. The inmate may then refile the grievance with Section B properly completed.**

C. Any inmate using the grievance system shall do so in good faith and for good cause.

No one shall be punished, retaliated against or otherwise harmed for good faith use of this grievance system.

Deliberate misuse of the grievance system may result in restricted access or disciplinary action, at the discretion of the Facility Manager.

D. It is the intent of the Department of Corrections to provide for an accelerated review of appeals of grievances related to medical issues. For this reason, the inmate is permitted to appeal a medical grievance to the Central Office Medical Review Committee for Final Review directly from Initial Review. See VI., C. 1.

E. The Inmate Grievance Review System is intended to deal with a wide range of issues, procedures or events which may be of concern to inmates. It is not meant to address incidents of an urgent or emergency nature. When faced with such an event, the inmate should contact the nearest staff member for immediate assistance.

## VI. PROCEDURES

A. A Grievance shall be submitted to the Grievance Coordinator in the following manner.

1. All grievances shall be in writing and in the format provided on the forms supplied by the institution (DC-804 Part 1). See Section V., B.

2. All grievances shall be presented individually. Any grievance submitted by a group of inmates will not be processed, however, if the Grievance Coordinator believes that the issue being grieved is legitimate, it will be referred to appropriate Management Staff for review.

3. Only an inmate who has been personally affected by a Department or institution action or policy shall be permitted to seek review of a grievance or appeal. The inmate grievant must sign the grievance or appeal.

4. All grievances and appeals must be presented in good faith. They shall include a brief statement of the facts relevant to the claim. The text of the grievance must be legible and presented in a courteous manner. The inmate should identify any persons who may have information which could be helpful in resolving the grievance. The inmate may also specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, the ICU Consent Decree or other law. The inmate may request to be personally interviewed prior to the decision on Initial Review. Any inmate who submits a grievance containing false and malicious information may be subject to disciplinary action.

DC-ADM 804

5. Grievances and appeals based on different events should be presented separately, unless it is necessary to combine the issues to support the claim. The Grievance Officer may combine multiple grievances which relate to the same subject.

   NOTE:   At any point in the grievance process, the inmate has the right to withdraw the grievance.

B. Initial Review

1. Initial Review Procedures must be completed before Appeal from Initial Review or Final Appeal may be sought. Any claims of violation of the ICU Consent Decree must be raised through this grievance procedure before they may be addressed by any court.

2. Grievances must be submitted for initial review to the Facility/Regional Grievance Coordinator within fifteen (15) days after the events upon which the claims are based. Extensions of this time period may be granted by the Facility Manager/Regional Director for good cause.

3. The Grievance Coordinator will forward the grievance to the appropriate Grievance Officer for investigation and resolution. The inmate grievant and other persons having personal knowledge of the subject matter may be interviewed. A grievant who has requested a personal interview, shall be interviewed.

4. Within ten (10) working days of receipt of the grievance by the Grievance Officer, the grievant shall be provided a written response to the grievance to include a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance.

   The Grievance Coordinator may authorize an extension of up to an additional ten (10) working days if the investigation of the grievance is pending. If an extension is necessary, the grievant shall be so advised in writing.

C. Appeal from Initial Review

1. An Initial Review Decision of a grievance on a Health Care or medical treatment issue may be appealed directly to the Central Office Medical Review Committee for Final Review within five (5) days of receipt by the inmate of the Initial Review decision. A grievance for which the Corrections Health Care Administrator conducted the Initial Review will usually be considered a Medical Grievance.

   All other appeals will be submitted as follows.

2. An inmate may appeal an initial review decision to the Facility Manager or Community Corrections Regional Director in writing, within five (5) days from the date of receipt by the inmate of the Initial Review decision. **The inmate must appeal in this manner prior to seeking Final Review. Only issues which were raised for initial review may be appealed.**

3. All appeals must conform to the requirements specified in Section VI A of this directive. The appeal must clearly identify the decision appealed from and all reasons for appeal. Only one appeal from any initial review decision will be permitted.

4. The Facility Manager or Regional Director must notify the inmate of his/her decision within ten (10) working days after receiving the appeal. This decision may consist of approval, disapproval, modification, reversal, remand or reassignment for further fact finding, and must include a brief statement of the reasons for the decision.

DC-ADM 804

D. Final Review

1. Any inmate who is dissatisfied with the disposition of an Appeal from Initial Review decision, may, within seven (7) days of receiving the decision, appeal any issue related to non-compliance with the ICU Consent Decree, other law, Department directive or policy, for final review.  Only issues raised at the Initial Review and Appeal level may be referred for Final Review.

2. Final Review will not be permitted until the inmate has complied with all procedures established for Initial Review and Appeal from Initial Review. Exceptions may be made for good cause.

3. Final Review of all appeals will be sent directly to the CORC except the following:

   a. Medical Grievances which will be reviewed by COMRC.

   b. Requests for Final Review of appeals from disciplinary actions which were processed through DC-ADM 801.  These will be reviewed by the Office of the Chief Counsel which may respond directly to the inmate or refer the appeal to the Central Office Review Committee **(CORC)** for further reviews.

The address of the **CORC/COMRC** is:

> **PA DEPARTMENT OF CORRECTIONS**
> **CENTRAL OFFICE REVIEW COMMITTEE**
> **PO BOX 598/2520 LISBURN ROAD**
> **CAMP HILL, PA  17001-0598**

4. Requests for Final Review must clearly identify the decision appealed from and all reasons for appeal. Only one appeal from any second level (Appeal from Initial Review) decision will be permitted.

5. The CORC\COMRC, or any member thereof, may require additional investigation to be made prior to a decision on a Final Review appeal.

6. The CORC\COMRC will review all issues properly raised according to the above procedures. It may also review and consider any other related matter.

7. For all Appeals receiving Final Review,  the CORC/COMRC will issue its decision within twenty-one (21) days after receipt of an appeal.  The decision may consist of approval, disapproval, modification, reversal, remand or reassignment for further fact finding,  and must include a brief statement of the reasons for the decision.   The committee shall notify the grievant and Facility Manager/Regional Director of its decision and rationale.

8. The Chief Counsel will notify counsel for the ICU class of  disposition by the CORC/COMRC of any matter raised on Final Review alleging a violation of the ICU Consent Decree.

E. Exceptions

Initial Review and Appeal  from Initial Review of  issues related to the following Administrative Directives shall be in accordance with procedures outlined therein, and will not be reviewed by the Grievance Officer or Grievance Coordinator.

1. DC ADM 805 - Policy & Procedures for Obtaining Pre-Release Transfer.
2. DC ADM 801 - Inmate Disciplinary and Restricted Housing Unit Procedures. See DC-ADM 801 VI., G & I
3. DC ADM 802 - Administrative Custody Procedures. See DC-ADM 802, VI, B, 1,2.  Appeal from Initial Review, see DC-ADM 802, VI, B, 4, a.

DC-ADM 804

4.  DC-ADM 814 - Incoming Publications

See 814-IIIB, Appeal from Initial Review, see 814-IIID.

Additionally, there may be other kinds of issues for which Initial Review Procedures have been previously established by Administrative Memorandum or Policy Statement.

F.  Admissions and Review

1.  All proceedings pursuant to this directive are in the nature of settlement negotiations and will, therefore, be inadmissible before any court or other tribunal in support of any claim made against the Commonwealth or any employee. No resolution of any grievance offered as a result of this procedure shall be admissible before any court or other tribunal as an admission of violation of the ICU Consent Decree or any State or federal law.

2.  No decision rendered as a result of the processing of a grievance shall be reviewable by any court unless it establishes a system or institution-wide violation of the decree.

G.  Completion of Review After Transfer

Any inmate who is transferred after the filing of a grievance or appeal, but prior to the completion of the appeal process, may continue to pursue the grievance or appeal by notifying the Facility Manager or Regional Director of the facility in which confined when the grievance was filed. Adjustments in the various time limitations may be made to facilitate review.

## VII.  SUSPENSION DURING EMERGENCY

In an emergency situation or extended disruption of normal institutional operation, any provision or section of this policy may be suspended by the Commissioner or his/her designee for a specific period of time.

## VIII.  RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility so as to be consistent with law and to permit the accomplishment of the purpose of the policies of the Department of Corrections.

## IX.  SUPERSEDED POLICY AND CROSS-REFERENCE

This directive revises the Inmate Grievance System (DC-ADM 804, MAY 1, 1984), and supersedes the pilot grievance system in effect at selected DOC institutions. It does not supersede or repeal any portion of any other directive or policy statement. Where this directive is inconsistent with any other directive or policy, both shall be interpreted so as to provide full review of all issues raised, consistent with the scope and purpose of this directive. Conflicts will most frequently occur at the Initial Review level, where other directives establish committees to review specific issues.

Cross References:  DC-ADM 801, DC-ADM 802

ACA Cross-References:  3-4271

cc:  Executive Deputy Commissioner Reid
     Deputy Commissioner Clymer
     Deputy Commissioner Fulcomer
     Acting Deputy Commissioner Beard
     All Superintendents
     CCC Directors (4)
     File

Joseph D. Lehman,
Commissioner



| | |
|---|---|
| | **Bulletin**<br>**Commonwealth of Pennsylvania ● Department of Corrections** |

| To: | Policy Subject: |
|---|---|
| **Superintendents**<br>**Regional Deputies**<br>**Boot Camp Commander**<br>**Executive Staff** | **DC-ADM 804**<br>**CONSOLIDATED INMATE GRIEVANCE**<br>**REVIEW SYSTEM** |
| | **Policy Number:**    DC-ADM 804-1 |
| | **Policy Issue Date:  July 20, 1994** |

| Date of Issue:<br>April 2, 1996 | Authority: | Effective Date:<br>May 20, 1996 |
|---|---|---|

The purpose of this Bulletin is to include medical grievances in the regular grievance process and to **discontinue** the Central Office Medical Review Committee (COMRC). .

It is important that the Superintendent be aware of all functions within the institution. Similarly, it is essential that the Bureau of Health Care Services be included in the CORC process, to include review by the Chief Counsel's office with respect to medical grievances. Therefore, all grievances, including those relating to medical issues, are to be processed in the same manner. The grievance coordinator will continue to forward medical grievances to the CHCA for initial review. Then, the Superintendent will be responsible for the Appeal from Initial Review, as for all other grievances.

Final Appeal of medical grievances will no longer be forwarded to the COMRC. The Central Office Review Committee (CORC) will process the appeals. The Director of the Bureau of Health Care Services, or designee, will participate as a member of CORC for all medical grievance appeals.

The following sections of DC-ADM 804 are to be **discontinued:**

IV.E.:    Definition of COMRC

IV.G.:    "An appeal of the Initial Review decision on a grievance related to a Health Care or Medical issue shall be submitted directly to the COMRC at Central Office.

V.D.:    "It is the intent of the Department of Corrections to provide for an accelerated review of appeals of grievances related to medical issues. For this reason, the inmate is permitted to appeal a medical grievance to the Central Office Medical Review Committee for Final Review directly from Initial Review."

VI.C.1.:    "An Initial Review decision of a grievance on a Health Care or Medical treatment issue may be appealed directly to the Central Office Medical Review Committee for Final Review within five days of receipt by the inmate of the Initial Review decision. A grievance for which the Corrections Health Care Administrator conducted the Initial Review will usually be considered a Medical Grievance."

VI.D.3.a: a. "Medical Grievances which will be reviewed by COMRC."

The following sections of DC-ADM 804 are **modified** as follows:

VI.D.3.:    Delete "except the following."
VI.D.5.:    Delete,"COMRC"
VI.D.6.:    Delete, "COMRC"
VI.D.7.:    Delete,"COMRC"
VI.D.8.:    Delete, "COMRC"



**Bulletin**
**Commonwealth of Pennsylvania• Department of Corrections**

| | | | |
|---|---|---|---|
| **To:** Executive Staff<br>Superintendents<br>Regional Directors | **Policy Subject:** | Consolidated Inmate<br>Grievance Review System | |
| | **Policy Number:** | DC-ADM 804-2 | |
| | **Policy Issue Date:** | July 20, 1994 | |

| | | |
|---|---|---|
| **Date of Issue:**<br>October 1, 1997 | **Authority:** | **Effective Date:**<br>November 1, 1997 |

The procedures for appeal to final review under DC-ADM 804, VI, D, 5-7, are amended as follows:

(1)　The Chief Hearing Examiner will replace the Central Office Review Committee (CORC) at final review of all grievance appeals. The Chief Hearing Examiner will perform all functions previously preformed by CORC.

(2)　In reviewing grievances submitted for final review, the Chief Hearing Examiner will review the initial grievance and response, any appeals therefrom and the responses thereto and the issues appealed to final review.

(3)　The Chief Hearing Examiner will review health care related grievances with the Bureau of Heath Care. Appeals raising legitimate legal issues, including but not limited to access to courts and sentencing issues, will be reviewed with an attorney prior to response.

(4)　Upon completion of final review, the Chief Hearing Examiner will respond directly to the inmate in all cases where the position taken by the institution is upheld.

(5)　In all cases where the action of the Grievance Coordinator, PRC, Incoming Publication Review Committee, or Superintendent is reversed or amended, or where a matter is remanded, the Chief Hearing Examiner will prepare a letter to the inmate and a memorandum to the Superintendent. The Chief Hearing Examiner will forward the letter and memorandum to the appropriate Regional Deputy Commissioner for review and signature.

(6)　The Chief Hearing Examiner will be responsible for assuring that:

　　(a)　appeals to final review are responded to in a timely fashion;
　　(b)　records pertaining to such appeals are maintained properly; and
　　(c)　counsel for the ICU class is notified of the disposition at final review of any matter raised to final review alleging a violation of the ICU vs Shapp Consent Decree.

It is the intent of the Department of Corrections to provide inmates with a complete and timely review of all appeals properly raised to final review. These amendments have been established to ensure timeliness at final review while continuing to provide a thorough, impartial review of the issues.

Case 1:01-cv-00904-YK-KH   Document 72.5   Filed 05/09/2003   Page 98 of 100

## BULLETIN
## Commonwealth of Pennsylvania • Department of Corrections

| TO: | Policy Subject: |
|---|---|
| Executive Staff<br>Superintendents<br>Regional Directors<br>Boot Camp Commander | Consolidated Inmate Grievance Review System |

| | Policy Number:   DC-ADM 804-3 |
|---|---|
| | Policy Issue Date:   July 20, 1994 |

| Date of Issue:<br>October 21, 1997 | Authority: | Effective Date:<br>November 1, 1997 |
|---|---|---|

The purpose of this bulletin is to facilitate timely responses from the Chief Hearing Examiner's Office to all appeals to final review.

(1) All appeals to final review should be addressed to the Chief Hearing Examiner,

> Chief Hearing Examiner
> 1451 S. Market Street
> Elizabethtown, Pa, 17022

Appeals which are addressed to the Commissioner, Chief Counsel, to other Central Office staff, are of course, delivered to these individuals first, then have to be referred to the Chief Hearing Examiner. Improperly addressed appeals may cause a delay in the response to final appeal.

(2) Inmates appealing to final review are responsible for providing the reviewing body with any available paperwork relevant to the appeal. A proper appeal to final review should include photocopies of the initial grievance, initial grievance response, and the Superintendent's response. Appeals without the proper records will reviewed, but the review will be delayed until the appropriate paperwork can be obtained.

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
October 28, 1997

**SUBJECT:**   Revision to DC ADM 804

**TO:**          Superintendents
                 Executive Staff
                 Boot Commander
                 Regional Director

**FROM:**        Thomas A. Fulcomer
                 Acting Executive Deputy Commissioner

We inadvertently issued two bulletins to the Consolidated Inmate Grievance Review System numbered 804-2. Attached is a revision to the bulletin issued on October 21, 1997. As you can see, the only change is the number 804-3. Kindly replace the old copy with the revised version. We apologize for the error.

KAG/jlm

Attachment

# ATTACHMENT C