Case 1:01-cv-00904-YK-KH   Document 72-4   Filed 05/09/2003   Page 1 of 100

| FORM **DC-141**   PART I | | COMMONWEALTH OF PENNSYLVANIA | | | | **A** 159045 |
|---|---|---|---|---|---|---|
| Rev. 6-84 | | | | | | |

☑ MISCONDUCT REPORT ☐ OTHER     DEPARTMENT OF CORRECTIONS

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| DD3483 | Culver, Brett | SCIMAH | 1510 | 4-13-00 | 4-13-00 |

| Quarters | Place of Incident |
|---|---|
| D/B #39 | PROG/SUC CO's Desk |

### OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION**

Class I cat B #8 Possession of Contraband

Class I cat D #28 Loaning or borrowing Property

**STAFF MEMBER'S VERSION**     ON Above date & time Inmate Culver DD3483 came to the Desk for his PASS from the Recreation Library. Inmate Culver had a newspaper with law work on the inside of newspaper. The newspaper was Inmate Gillingham, Dana DT5065 D/B #6. Confiscated Items Receipt No# A150818.

SSI

**IMMEDIATE ACTION TAKEN AND REASON**     Continue Present Status Pending Further Action By the Hearing Examiner.

| PRE-HEARING CONFINEMENT | | | REQUEST FOR WITNESSES AND REPRESENTATION | INMATE'S VERSION |
|---|---|---|---|---|
| | IF YES | | FORMS GIVEN TO INMATE | |
| | TIME | DATE | ☑ REQUEST FOR WITNESSES AND REPRESENTATION | ☑ INMATE'S VERSION |
| ☐ YES  ☑ NO | N/A | N/A | | |

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY     SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY | |
|---|---|---|---|
| | | DATE | TIME 24 HOUR BASE |
| CO'___ _Mitrich | CO__ Beyer | 4-13-00 | 1920 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | Misconduct Category | Signature of Person Serving Notice |
|---|---|---|---|
| DATE | TIME | ☑ CLASS 1   ☐ CLASS 2 | K.C.Mayer / K.C. MAYER |
| 4-15-00 | 0800 | | |

### NOTICE TO INMATE

You are scheduled for a hearing on this allegation on the date and the time indicated or as soon thereafter as possible. You may remain silent, if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class I misconduct, any pre-release status you have will be revoked.

DC-154A

No. A 150818

**COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS**

## Confiscated Items Receipt (Inmate)

| DC Number | Name | Cell | Institution | Date | Time |
|---|---|---|---|---|---|
| DD 3803 | Culver | D/B #39 | SCImAH | 4-13-00 | 1510 |

| | Misconduct Report Prepared | Comment: |
|---|---|---|
| __Random Search | | Misconduct No #A15904 S |
| __General Search | Yes _X_ No ___ | |
| __Investigative Search | | |

| Items Confiscated | Items Confiscated |
|---|---|
| 1 ea Newspaper (Times-News, Erie PA) | |
| 31 pages Leaglework & File | |
| | |
| | |
| | |
| | |
| | |

Signature and Title of Officer CO' Nok____

Case 1:01-cv-00904-YK-KH   Document 72-4   Filed 05/09/2003   Page 3 of 100

DC-141      PART II A          COMMONWEALTH OF PENNSYLVANIA
Rev. 6-84                      DEPARTMENT OF CORRECTIONS
INMATE REQUEST FOR
REPRESENTATION AND WITNESSES

| DC Number | Name | Institution | Date | Number as on Part I |
|---|---|---|---|---|
| DD3483 | Culver, Brett | SCIMAH | 4-13-00 | A15 9045 |

You have been charged with a misconduct. You may request assistance and/or witnesses to appear at your hearing by completing the section(s) below.

In order to have assistance or witnesses at your hearing, you must complete this form and present all copies to one of your housing officers no later than 9:00 a.m. the first working day after you receive notice of the misconduct.

Assistance:  ☐ I do not request assistance
             ☑ I request assistance by _Emory Smith #BH-9137 D/B_  No, not necessary, DC
             (The person requested must be willing to assist you)    ADM 801 Sect E, 5-9

Witnesses:   You may request witnesses in accord with DC-ADM 801. State the relevance and importance of the testimony the witness will give.

---

1. Name of Witness:  No.    If Inmate    Quarters

Dana Gillingham  DT-5265  D/B
Why is this person's testimony relevant and important?

He gave me the News Paper to hold.
He was with me at Library, and
was there when the C.O. started the
incident. (Eye and ear witness.)

**DO NOT WRITE IN THIS SECTION**
For Use by Hearing Examiner

Witness permitted? _yes_  If not, why not?

---

I can't decipher Names

2. Name of Witness:  No.   If Inmate   Quarters
Both Individuals who signed; Reporting Staff.
Member section of DC-141
Why is this person's testimony relevant and important?

Because Staff Members
Version DC-141 is untrue,
and verbal testimony is required for Record,
as there has been Constitutional Rights violations.

Witness permitted? _no_  If not, why not?

neither staff refused - Report is
sufficient as required staff test would
be.

---

3. Name of Witness:   No.    If Inmate    Quarters

Why is this person's testimony relevant and important?

Witness permitted?    If not, why not?

---

_Brett Culver_
Inmate's Signature

This section to be completed by Housing Officer only
Received completed form _0730_ hours _4-14-00_
                         Time           Date

_[signature]_
Housing Officer's Signature

_[signature]_
Hearing Examiner's Signature

| DC-141 | PART II B | COMMONWEALTH OF PENNSYLVANIA |
| Rev. 6-84 | | |
| DISCIPLINARY HEARING REPORT | | DEPARTMENT OF CORRECTIONS |

| DC Number | Name | Institution | Hearing Date | Hearing Time | No. from Part I |
|---|---|---|---|---|---|
| DD 3483 | Culver | SCIWAH | 4-17-00 | 1205 | A159045 |

| INMATE PLEA | ☐ Guilty  ☒ Not Guilty | ☐ No Plea  ☐ Other | Verdict | ☒ Guilty  ☐ Not Guilty |
|---|---|---|---|---|

**HEARING ACTION**

CHARGES  B#8 — not guilty
         B#28 — not guilty

**FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED**

Culver states in attached version that he is permitted to have the
newspaper according to all block rules. He was given the newspaper by DT 5265.

On check the handbook, it is clear that papers are permitted to be
passed from cell to cell, not to be carried around when they are out
their out of the cell block.

DT 5265 stated under oath that he gave Culver his newspaper.

Admin # 28

I reject for this officers report over Culver's not guilty plea. &
this & his entire admission of Culver his in possession of Someone else's newspaper, he
is guilty possession of contraband, guilty of entry.

Sancti: revoke Contraband
       (return to class)

| | | | |
|---|---|---|---|
| ☒ YES | ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. | when & when guilty / actual |
| ☒ YES | ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. | SEE APPENDICES |
| ☐ YES | ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. | A. |
| ☐ YES | ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. | |

| NAME(S) OF HEARING EXAMINER/COMMITTEE (TYPED OR PRINTED) | Hearing Report and all appended information must be signed. Signature indicates finished report with appendices. |
|---|---|
| J.K. KANE | SIGNATURE OF HEARING EXAMINER/COORDINATOR |

| DC-141 | PART II C | COMMONWEALTH OF PENNSYLVANIA | | |
|---|---|---|---|---|

Rev. 6-84     HEARING SUPPLEMENT
INMATE VERSION AND WITNESS STATEMENTS          DEPARTMENT OF CORRECTIONS

| DC Number | Name | | Institution | No. from PART I |
|---|---|---|---|---|
| DD3483 | Culver, Brett | | SCI-MAH | A159045 |

**INMATE'S VERSION**

4-13-00 I was on the Block waiting to go to Library at 2:30 PM. As I was going to the library, another inmate ~~walking~~ going with me asked me if I would put his News paper in my pocket (Coat), because he had no pockets or Coat to put or carry it in.

Went to Library for 15 min. Left. Was stoped by Desk C.O. who asked me if I was at Law Library. I said No. He asked me what I had. I gave him my Book that I signed-out ~~which~~ (which I never got ~~back~~ back), and my folder of Legal material. He asked me what it was. I told him "Legal Work". He then asked me to empty my pockets, and I then gave him the rolled-up news paper, my hat, a pen, my address book, and I.D. (Cell). The C.O. Kept asking me about my VendorCard whereabouts. The C.O. tried to say that I wasn't allowed to have Legal Work. He then said I was getting a Misconduct for having Legal Work. He said he was keeping my materials, and asked if I wanted a Confiscation slip. I said Yes.

Now that this C.O. has found he ~~was~~ is wrong, and has violated my rights, his contention is a fabricated story about the Legal Work being in the news paper, as if I was hiding it, or wasn't suppose to have it or something.

As to the insinuation of the News Paper being contraband. Inmate Handbook page 4 Cell Block Rules 5 says News Papers can be passed on to other inmates. This cancils Cat D #8 (Note that DT-5265 did not recieve DC Cat B #8 is also void. The Inmate Handbook, Inmate Handbook Suppliment, and the Inmate Library Procedures has no restriction for News Papers or Legal Materials brought to Lib

*Submitted 4-28-00*

| DC-141    PART II E | COMMONWEALTH OF PENNSYLVANIA | | |
|---|---|---|---|
| MISCONDUCT HEARING APPEAL | DEPARTMENT OF CORRECTIONS | | |
| DC Number | Name | Institution | No. from PART I |
| DD3483 | Brett Culver | SCI Mahanoy | #A159045 |

I was found guilty of misconduct # _A159045_ on _4-17-00_ (date) by the Hearing Committee/Examiner, and I wish to appeal that decision on the following grounds:

Check Area(s) Involved

a. The procedures employed were contrary to law, Administrative Directive 801, or to the ICU Consent Decree;                      ☑

b. The punishment is disproportionate to the offense;                      ☐

c. The evidence was insufficient to support the decision.                      ☐

Below is a brief statement of the facts relevant to my claim(s). It includes the identity of all persons who may have information which may be helpful in resolving this matter.

The charge being Class 1 cat B #5 Possession of Contraband must be Dismissed, as for DOC Handbook page 4 Cell Block Rules 5. states clearly that; Passing of items other than newspapers or magazines between cells is forbidden'. This clear directive states that newspapers or magazines may be passed between inmates, therefore can not be considered contraband (unless stolen I suppose).

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS

DC-141 Part III
Program Review Committee
  _X_ Misconduct Appeal          _____ Periodic Review          _____ Other

| DC Number<br>DD-3483 | Name<br>Culver, Brett | Institution<br>SCI Mahanoy | Date of Review<br>5/4/00 | Misconduct #<br>A159045 |
|---|---|---|---|---|

**PROGRAM REVIEW COMMITTEE'S DECISION AND ITS RATIONALE**

Inmate Culver appeals based on:

a.     The procedures employed were contrary to law, Administrative Directive 801, or to the
       ICU Consent Decree.

The PRC has reviewed the available information concerning this misconduct including the
report of CO Miknich, the findings of the Hearing Examiner, and inmate Culver's appeal.

Inmate Culver's appeal is based on the premise it is contrary to ADM-801 or law.  The PRC
could find no violation of ADM-801 or law.  Inmate Culver is correct in citing the inmate
handbook, page 4, Cell Block Rules.  It does state "Passing of items other then newspapers
or magazines between cells is forbidden."  The key words in that sentence are "between
cells."  Inmate Culver was passing a newspaper in the Program Services building, not on a
cell block.  It should also be noted that the Hearing Examiner offered leniency to inmate
Culver by simply reducing it to a Class II misconduct, whereas under the old ADM-801, he
could have received 15 days DC time.  The sanction of the Hearing Examiner is sustained.

## DECISION RELATIVE TO HEARING EXAMINER'S VERDICT
___ Not Applicable   _X_ Sustain ___ Amend ___ Refer Back for Further Study __ Exonerate

| Names of Program Review Committee | Signatures | Date |
|---|---|---|
| John Corbacio, Activities Manager | | 5-5-00 |
| Brenda Wildenstein, Unit Manager | | 5-4-00 |
| Thomas Hornung, Unit Manager | | 5/5/00 |

RECEIVED

MAY 1 1 2000

PART I.E
SUPERINTENDENT'S OFFICE
HEARING APPEAL

| DC-141 MISCONDUCT | | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS | | |

| DC Number | Name | | Institution | No. from PART I |
|---|---|---|---|---|
| DD 348-3 | Brett Culver | | SCI Mahanoy | A159045 |

I was found guilty of misconduct # ___A159045___ on ___4-17-00___ ___5-4-00___ (date) by the Hearing Committee/Examiner, and I wish to appeal that decision on the following grounds:

Check Area(s) Involved

a. The procedures employed were contrary to law, Administrative Directive 801, or to the ICU Consent Decree;  ☑

*Hearing Examiner Disregarded DOC pg 4 CBR's. And Based his verdict on DOC 801-2 (A).M.C 8. (which has already been over-ruled by DOC pg CBR 5. as established)*

b. The punishment is disproportionate to the offense;  ☐

c. The evidence was insufficient to support the decision.  ☐

Below is a brief statement of the facts relevant to my claim(s). It includes the identity of all persons who may have information which may be helpful in resolving this matter.

As always, the information and accusations used by Administrative Officials to manipulate and corrupt DC Directives and facts are again false and in error.

#1. DOC Handbook establishes that inmates are permitted to pass Newspapers and Magazines. "Therefore" the Newspaper in question is not Contraband.

#2 PRC Officials Falsely accuse that I was passing newspapers in the Program Service Building. This is an out-right lie! The Newspaper was in my ø coat pocket, as it was given to me earlier that day on D-B Block. (See also that I and Gillingham we Both on D-B)

#3 The Misconduct was for the Charge of Contraband. In fact, the Misconducts were written on the premis that the Newspaper was Contraband because it had Dana Gillinghams name on it. "That is the contention in question in this Appeal." "That is the Charge of the Misconduct. The lying allegations by CO Miknich and PRC Officials are void. The fact that a Newspaper was in my coat pocket has no berring whitsoever, nor was this the 'offence' cited. There

Case 1:01-cv-00904-YK-KH   Document 72-4   Filed 05/09/2003   Page 9 of 100

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Mahanoy**
**(570) 773-2158**

Date: __12 May 00__

SUBJECT:     Superintendent's Response
             Appeal of Misconduct #A159045

TO:          Brett Culver, DD-3483

FROM:        R. Shannon
             Superintendent

You were found guilty of the above misconduct.  You appealed on the following grounds that:

a.     The procedures employed were contrary to law, Administrative Directive 801, or to the ICU Consent Decree;

b.     The punishment is disproportionate to the offense;

c.     The evidence was insufficient to support the decision.

---

I have reviewed this misconduct and the **Program Review Committee's decision** and your appeal with the following results:

☒     **APPEAL DENIED**

☐     **APPEAL SUSTAINED**

☐     **APPEAL IS BEING RETURNED FOR INSUFFICIENT INFORMATION**

RATIONALE:

In support of your claims you quote only a portion of the handbook.  The bottom line is that newspapers are permitted to be exchanged cell to cell, **not** to be taken off the block.  Once off the block, it becomes contraband/borrowed property of others.

No one has **accused** you of anything.  Staff reported the facts, facts that you do not dispute. The Hearing Examiner found you guilty, then issued the lenient sanction befitting such a minor infraction.  I concur with those findings.

RDS:ms

cc:    DSFM              Ms. Bosavage        Mr. Hornung           file
       DSCS              Mr. Corbacio        Control
LOCATION:7173618165      Ms. Wildenstein  RX TIME   05/06 '03 09:47

Case 1:01-cv-00904-YK-KH   Document 72-4   Filed 05/09/2003   Page 10 of 100

*H-1*

BRETT CULVER DD-3483
SCI MAHANOY
301 MOREA ROAD
FRACKVILLE, PA. 17932

May 27th, 2000

SUBJECT:   Appeal of Misconduct #A159045
           For Final Review, From Response
           Dated: 12 May 00, **(Received 5-23-00)**

TO:        Robert S. Bitner                    OFFICE
           Chief Hearing Examiner              OF THE
           1451 N. Market Street
           Elizabethtown, PA. 17022            MAY 3 1 2000

                                               CHIEF
                                               HEARING EXAMINER

FROM:      Brett Culver DD-3483
           H/Unit D-B   Cell 50

Superintendent R. Shannon responds to the appeal in support of the Misconduct, that is not only based on false allegations, but is contrary to DOC directives. This Administrations soul argument is that; I only quote a portion of the handbook (DOC pg.4 Cell Block Rules): This also is untrue. I submitted the DOC pg.4 Cell Block Rules quotation because it is <u>the only</u> reference to newspapers and magazines. DOC Handbook submits these articles as not being considered contraband, and permitted to be passed on to other inmates. As to the insistent statement of argument by this Administration; "permitted to be exchanged cell to cell:", this is a generalized statement made in reference to newspapers and magazines being <u>non-contraband items for exchange between</u> "<u>inmates</u>." To support this evident fact, nowhere in the DOC Handbook does it state that newspapers, magazines, or whatever "<u>must</u> be exchanged <u>from one cell to another cell</u>, **as the only procedure** for exchange exempt from making a **article contraband**, as this Administration tries to insinuate by manipulation of words. If this Administration demands this contention of words, then I will need to see DOC Directives that state what this Administrations contends in support of the alleged misconduct for my acknowledgement.

Because this Administration <u>practices</u> Deliberate Indifference against me in this matter as well as others, I appeal that all SCI Mahanoy Administrative contentions related to these issues be outlined and cited by DOC Directives.

30H-2

In reference to Mr. Shannon's quote; The bottom line is that newspapers are permitted to be exchanged cell to cell, not to be taken off the block.  Once off the block, it becomes contraband/borrowed property of others:.  "I know this to be a false assertion, and not supported by any DOC Directive, Inmate Handbook Supplement, SCI Mahanoy D Unit Handbook, or Inmate Library Procedures pamphlet.  There is no reference made anywhere that newspapers become contraband if taken off the Block.  Or that newspapers cannot be taken to the library.  The situation of issue is that I had a folded-up portion of newspaper in my coat pocket.  The newspaper was not passed-off to me at the Education Building, nor was it a implement of a crime.  Because officer Miknich was harassing me, and violated my constitutional rights by confiscating my Legal Documents (and latter finding out that he would be liable to legal action for taking the Legal Documents), he then Lied and made-up this Misconduct about contraband and the Legal documents being in the contraband (a library book was also taken from me by Miknich).  But instead of this Administration correcting the incident and meritless lies made against me by this corrupt officer, all the lies and corruption has been supported and defended by all the official offices at SCI Mahanoy, with fabricated rules and stories that are being made-up as these issues progress.

The responses by the Hearing Examiner,  PRC, and the Superintendent at SCI Mahanoy for Misconduct #A159045 are incorrect, falsified, and unsupported by DOC Directives and/or Procedures.  If any further support is to be given to any of this Administration's contentions, then DOC Directives will have to be cited for any-and-all arguments for my acknowledgement.

The SCI Mahanoy Administration has consistently lied, accused, manipulated, and changed "its own version" of events concerning these contentions of misconduct.  And I have emphatically disputed all these lies, accusations, and manipulated contentions made (and/or supported), by officer Miknich, the Hearing Examiner, the PRC, and now Mr. Shannon.

If this Misconduct #A159045 is to be upheld, DOC Directives will have to be cited to support the allegations and contentions submitted (as they are) by the SCI Mahanoy Administration.  If such citations cannot be submitted for acknowledgement and verification, then this Misconduct #A159045 cannot be upheld!

BTC:lt

cc:  K.R.Stuber Esquire
     LOCATION:7173618165              RX TIME   05/06 '03 09:47

Case 1:01-cv-00904-YK-KH   Document 72-4   Filed 05/09/2003   Page 12 of 100

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**1451 N. MARKET STREET**
**ELIZABETHTOWN, PA  17022**

OFFICE OF THE
CHIEF HEARING EXAMINER

June 7, 2000

Brett Culver, DD-3483
SCI Mahanoy

Re:    DC-ADM 801 - Final Review
       Misconduct No. A159045

Dear Mr. Culver:

This is in response to your appeal to final review of the above numbered misconduct.

In accordance with DC-ADM 801, VI, L, 3, I have reviewed the entire record of this misconduct; including the misconduct report, the hearing report and related documents, your appeal to the Program Review Committee and their response, your appeal to the Superintendent and his response.  I have also thoroughly reviewed the issues you raise to final review.

The issues you raise to final review have already been addressed by the Program Review Committee and the Superintendent.  On review of the record, this office concurs with their responses. I find no persuasive basis from which to conclude that the Examiner erred in conducting the hearing. The Examiner specifically documented findings of fact based on evidence presented at the hearing to support the decision.    The procedures followed were in complete accordance with DC-ADM 801, §VI.  The sanction imposed is not viewed to be disproportionate to the offense, and therefore will not be amended at this level.  While you argue that the institution practices "deliberate indifference" towards you, the record establishes that you were guilty of possession of contraband and property of another inmate.  The reduction of the misconduct to Class II and lack of disciplinary sanction is an obvious result of the examiner considering the mitigating circumstances.

For the above-stated reasons, the responses provided by the Program Review Committee and the Superintendent are upheld in full.  Your appeal must, therefore, be denied.

Sincerely,

Robert S. Bitner
Chief Hearing Examiner

RSB:bjk
pc:    Superintendent Shannon

# ATTACHMENT D

**RECEIVED**

**APR 1 7 2000**

SUPERINTENDENT'S OFFICE
SCI MAHANOY

DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

1. TO: (NAME AND TITLE OF OFFICER) Mr Shannon ~~TRURUL~~. Superintendent

2. DATE 4-14-00

3. BY: (INSTITUTIONAL NAME AND NUMBER) BreTT Culver DD 3483

4. COUNSELOR'S NAME Bursh

5. WORK ASSIGNMENT

6. QUARTERS ASSIGNMENT D - 13

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.   GIVE DETAILS.

My Legal documents were Illegally taken from me 4-13-00
#1 This is a Illegal Confiscation of Legal documents which violates my Constitutional Rights.
#2. This violation has and is; Obstructing and Hindering Legal pursuits, and my Constitutional Rights to pursue Legal remidies.
  I demand the return of my Legal Documents. Violaters include the Confiscating C.O.'s who conspired to Confiscate the Legal Documents with the issuance of the DC-141 #A159045, also the Approving C.O. of #A159045, The supervisor on Duty 4-13-00 1510 PM., The Supervising staff of the Property Office where the Legal Documents are being held.

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

#3. This is also a violation of Harassment as proven by the Administrative Personels support of the merit-less Misconduct issued, and the continued Confiscation of personal Legal papers.
#4. Abuse of Authority, as demonstrated by SCI Mahanoy Admin Officials. If not intentional, then #5. Incompetence in Capacity of Duties

Try contacting the Property Room directly with your complaints. That would be more appropriate if seeking resolvement to your concerns.

cc: Unit Mgr Chismar
    Lt. Mahally

G. Shannon, Supt
17 Apr 00

☒ TO DC-14 CAR ONLY

☐ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER

DATE

Case 1:01-cv-00904-YK-KH   Document 72-4   Filed 05/09/2003   Page 15 of 100

DC-135A

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

INMATE'S REQUEST TO STAFF MEMBER

RECEIVED

APR 2 5 2000

SUPERINTENDENT'S OFFICE
SCI MAHANOY

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

| 1. TO: (NAME AND TITLE OF OFFICER) Mr. Shannon Superintendent | 2. DATE 4-24-00 |
|---|---|
| 3. BY: (INSTITUTIONAL NAME AND NUMBER) Brett Culver  DD.3483 | 4. COUNSELOR'S NAME Barsh |
| 5. WORK ASSIGNMENT | 6. QUARTERS ASSIGNMENT RHU   A-12 |

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.  GIVE DETAILS.

I suppose your aware of this now, but I'll need your re-
sponse anyways. This is yet another spin-off of the request I
sent to you 4-14-00 about a CO taking my legal work, then filing a
false report (Misconduct) to cover-up his violation of taking my
Legal work. The next time I seen him I ~~tried to quietly~~
confronted him for lying on me by saying "Quote: Whats the matter,
cant tell the Truth? Unquote. (Those are the only words I said.) Later that night I'm taken to RHU
and get a Misconduct stating; I threatened him and his family.
It seems to be nothing to this CO to manipulate this entire Administration
with lies against inmates he wants to "personally" persecute, knowing
the Administration will support and promote his "personal" corruption
of the System. Anyways, even as this Administration supports and promotes

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

such acts of corruption, I was held in RHU for 7 days before I finally
received a Hearing. (4-17-00  to  4-24-00.) This violates DC-ADM 6.1
of a 6 Calendar day time limit. When I asked about this I was told it was
7 working days. "But that is untrue." The Misconduct was dismissed at the
Hearing, but Examiner Kane said he wanted time for the Misconduct to
be rewritten. After I got the Verdict Recipt (DC-141 Part II B) I seen that
Kane had Back Dated the Hearing Date on it to 4-21-00, "But it was the
24th." This was done to keep the Misconduct valid on Time frame. Did Kane not
also lie? Is this not collaborating corruption? In any event, going by the
Back Dated 4-21-00 (Now) the new rewritten Misconduct 4-24-00 is 3 days over
the reissuement time Period. Either way these Misconducts (False allegations)
must be thrown out. What is your position since these offices and officials
are in violation? I'm still being punished in RHU for doing no wrong or comitting
any error, awaiting farther action by Hearing Exam.

☐ TO DC-14 CAR ONLY          ☐ TO DC-14 CAR AND DC-15 IRS

| STAFF MEMBER | DATE |
|---|---|

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Mahanoy**
**(570) 773-2158**

25 April 00

**SUBJECT:** Response to Correspondence

**TO:** Brett Culver, DD-3483, RHU

**FROM:** R. Shannon, *R. Shannon, Supt.*
Superintendent

You are incorrect in your assumption that I should be aware of your situation. There being 1,960 other inmates here besides you, I am not aware of your most recent plight.

The issues included in your request slip may be matters to be considered as part of any misconduct appeal. If you wish to process an appeal, then do so. It would be inappropriate for me to address your concerns otherwise. You also have a chain of command in which to pursue your concerns. That process does not begin at my doorstep. I will take no further action until you follow proper procedures as required.

I also note that you have sought to gain transfer return to Western Region. It will not happen if you cannot resolve your conflicts here.

RDS:dy

cc:    DSFM Petruccio
       Lt. Henrickson
       U.M. Chismar
       DC-14
       file

*(Federal Offence)*

**DC-135A**

*Even though I am 1 of 1,962 inmates that thought it worth bringing to your attention that one of your employee is falsifying record within your administration. This is not only a Federal Offence, but a violation of institutional official corruption within this administration. Administration officials here make me accept a hope for their Transfer does not Criminal...*

RECEIVED
APR 2 7 2000
SUPERINTENDENT'S OFFICE
SCI MAHANOY

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

**INMATE'S REQUEST TO STAFF MEMBER**

**INSTRUCTIONS**

Complete items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.

1. TO: (NAME AND TITLE OF OFFICER) Mr. Shannon Superintendent
2. DATE 4-26-00
3. BY: (INSTITUTIONAL NAME AND NUMBER) Brett Culver DD 3483
4. COUNSELOR'S NAME Bush
5. WORK ASSIGNMENT
6. QUARTERS ASSIGNMENT RHU

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

As to your letter dated 25 April 00. The issue here is; one of your employees is falsifying Record Documents by Back Dating events on Record that time limitations had expired on. Any appeal would only show the falsified Back Date on Records, and not the actual date of Event. Also, I can not appeal this issue through the Appeal system, because the Misconduct was dismissed (See DC Handbook). These Documents were subject to dismissal "without Prejudice" then Back Dated 3 days because the time limitations for the Hearing had expired prior to the Hearing. These Falsifying of Dates on these Proceedings done By Kane were done

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

so he could have another Misconduct rewritten with a fresh time limitations so he could prosecute a expire issue.
Not one of your Administrative offices will address this issue. I kinda thought you were in charge of these Administrative Offices. By your letter, I take it that you fully support corruption within your Administration, and these actions by Kane of Falsifying Institutional Documented Records. That these acts of corruption in which you have been informed of, and demonstrate support of within this Administration has been noted.

I have addressed this matter as have other staff. Your claims cannot be substantiated.

CC:
☒ TO DC-14 CAR ONLY
☐ TO DC-14 CAR AND DC-15 IRS
CC: Unit Mgr Chismar

STAFF MEMBER   R. Shannon Supt

DATE 27 APR '00

# ATTACHMENT E

**DC-804**
**PART 1**

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. | MAH-0286-00

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Carol Dotter | SCI Mahanoy | 6-8-00 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| Brett Culver DD3483 | Brett Culver | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| | D-B | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:    (upon leaving library at 2:00 P.M.)

On 6-7-00 C.O. Miknich tried to instigate a fight with me. This relates to the "continuous" Harassment by this C.O. on my person since 4-17-00 till present. This Harassment by this C.O. (who is stationed at Education Bldg. Desk) has hindered my efforts to pursue Legal Work and Remidies at Law Library. I have been forced to avoid all contact with (exposure) this C.O. He has consistently lied against my person, filed false allegations of Misconducts against my person, issued threats, and instigated fights by Harassment and jeering. (Also taking Legal Work) To this date this Administration has refused to establish any means of relief from this Harassment I endure from this lying Corrupt individuals abuse of possition and authority. As of this

B. Actions taken and staff you have contacted before submitting this grievance: Date this Administration has supported and promoted this C.O. (Miknich) Harassment

3 Prior Grievances, some ignored, one pending disposition. Letters to Camp Hill Administrators by myself & Family. Requests for personal escort from library day of incident (refused) Miss Jane Mary Jane Hess

Your grievance has been received and will be processed in accordance with DC-ADM 804.

I WISH TO WITHDRAW THIS GRIEVANCE AS PER OUR CONVERSATION WITH LT. BRENNAN ON 6/25/00    6/20/00    Brett Culver

C Dotter
Signature of Grievance Coordinator                                      Date

**WHITE**—Grievance Coordinator Copy    **CANARY**—File Copy    **PINK**—Action Return Copy    **GOLDENROD**—Inmate Copy

# DC-804
**PART 1**

## COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**          GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| *Carol Dotter* | *SCI Mahanoy* | *8-4-00* |

| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE |
|---|---|
| *Brett Culver DD3483* | *Brett Culver* |

| WORK ASSIGNMENT | QUARTERS ASSIGNMENT |
|---|---|
| | *D-B* |

### INSTRUCTIONS:
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

**A. Brief, clear statement of grievance:**

A SCI Mahanoy Administrative Obstruction - Hinderence of Legal Pursuits and/or Legal Remedies. Seizure of Legal Work/Documents/Records. Obstruction of Library Facilities and Services of Law Library and Copying Service. The Administration at SCI Mahanoy has committed, conspired, collaborated, and supported acts/actions/events to Obstruct, Hinder, or Seize any efforts by my person to pursue Legal relief and remedies. Legal Documents/Work/Record and Court Transcripts related to my Conviction Case, and that of a Legal Actions being pursued for Damages received from a Inmate attack have been seized "and witheld" by this Administration since 4-13-00. Time Limitations on Legal Pursuits have been compromised

DC-154 A No. A J50818

**B. Actions taken and staff you have contacted before submitting this grievance:**

by this seizure. Im now seeking the return of these documents, and damages.

B.
5 or 6 prior Grievances on these issues which have been subotoged, manipulated, or abolished by this Administration, and supported by Compt. Issue Reports to various Law Firms, Government Agencies for relief.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____          _____
Signature of Grievance Coordinator          Date

**WHITE**—Grievance Coordinator Copy   **CANARY**—File Copy   **PINK**—Action Return Copy   **GOLDENROD**—Inmate Copy

Commonwealth of Pennsylvania
Department of Corrections
SCI Mahanoy

August 9, 2000

Subject:     Returned Grievance

To:          Brett Culver, DD3483
             D/B

From:        Carol M. Dotter
             Corrections Superintendent Assistant

This grievance is being returned without action because Grievance No. MAH-0286-00 was withdrawn as per your request on 6/25/00.  You cannot file a second grievance on the same issue.

cc:     File.4

Commonwealth of Pennsylvania
Department of Corrections
SCI Mahanoy

August 9, 2000

Subject:      Returned Grievance

To:           Brett Culver, DD3483
              D/B


From:         Carol M. Dotter
              Corrections Superintendent Assistant


This grievance is being returned without action because these issues have already been addressed in Grievance Nos. MAH-0217-00 and MAH-0286-00.  If you are not satisfied with the responses received from the Grievance Officer, you should have used the appeal procedures outlined in the DC-ADM 804.  You cannot, however, file a second grievance on the same issues.

Your claims of duress by Lt. Brennan will be addressed.


cc:      File.5

X. 36 737

BRETT CULVER DD-3483
301 MOREA ROAD
FRACKVILLE, PA.17932

August 11, 2000

SUBJECT:   Re-submit Initial Grievance (8-4-00)
           With Response to C.Dotter Return (8-9-00)

TO:        Grievance Coordinator
           Carol M. Dotter

FROM:      Brett Culver DD-3483
           H/Unit D-B

In your Return (8-9-00) of Grievance (8-4-00) you submit that this Grievance was returned because the issue was addressed in Grievance No. MAH-0217-00.  This however is inaccurate.  Although the Administration at SCI Mahanoy has used every means of cunning and contriving deception to allude mention or responsibility for the seizure of my Legal Documents/Work/Records, the Initial Review Response by a William Banto (5-10-00) left the issue of my seized Legal Documents/Work/Records pending resolution.  Also, my Legal Documents/Work/Records were never identified as Contraband.  Legal Work, Documents, and Legal Records cannot be in any situation or circumstance considered Contraband, or be seized at any time.

After I received the inaccurate response of Initial Review Response (MAH-0217-00) William Banto 5-10-00 (that left the Decision on my Legal Documents/Work/Records pending), I then submitted a Correction Response to the William Banto (5-11-00).  There was never any further Administrative response to these issues that were left pending, and I have been prevented from pursuing a resolution or relief on any of these issues.

At the Hearing 4-17-00 related to the seizure incident, Hearing Examiner Kain stated that he did not understand why C.O.Miknich confiscated the Legal Documents/Work/Records.  He also said that I should contact the Property Office for their return.  At no point, in the misconduct report, at the Hearing, or in the decision were these Legal Documents/Work/Records ever cited or identified as contraband, which would be impossible for them to be contraband.

There never was a decision entered on this issue in MAH-0217-00 as you contend.

**Of note is** the continued harassment by C.O.Miknich to my person, with the continued tolerance, justification, and support by the SCI Mahanoy Administration.

The Official Offices (chain of process) at SCI Mahanoy are non-compliant with proper procedures in processing these issues of Grievance.  Therefore, Grievance No. MAH-0217-00 is still pending a decision at the Grievance Office level.  And since there has been no Administrative response for a final decision on this issue, or Administrative relief from the continued harassment by C.O.Miknich, the Re-submitted Grievance 8-4-00 included is appropriate for process on these unresolved pending issues.

Also, there was never any decision entered into record on MAH-0286-00 as you contend (8-9-00).  After submitting MAH-0286-00 to the Grievance Coordinator three times (6-8-00, 6-13-00, 6-20-00) I was then called to the Property Office at 8:40 PM (6-25-00), coerced into signing-off on MAH-0286-00, and directly afterwards submitted a declaration of: Condition to Signature Under Duress 6-25-00.  There was never any Administrative response on these issues.

MAH-0286-00 also has no disposition, and has been obstructed from process by Administrative actions.

The situation of Administrative incompetence, or intentional non-compliance to process in regard to both MAH-0217-00 and MAH-0286-00 has been documented.

cc:   C.Dotter

Commonwealth of Pennsylvania
Department of Corrections
SCI Mahanoy

August 11, 2000

Subject:    Returned Grievance

To:    Brett Culver, DD3483
       D/B

From:    Carol M. Dotter
         Corrections Superintendent Assistant

This grievance is being returned for further direction from you.  You claim you withdrew Grievance No. MAH-0286-00 because you were threatened by SCI Mahanoy Officials. You state you were coerced/intimidated to sign off on the grievance.  I need to know which way you want to proceed.

If you prefer, you may re-file Grievance No. MAH-0286-00, and it will be re-investigated and a response provided by the Grievance Officer.  This will be initial review according to the DC-ADM 804.

**OR**

If you want the allegations of signing under duress investigated, you need to be more specific.  Exactly who and how were you placed under duress?  Detailed information identifying staff members and dates will be needed to complete a proper investigation.

Let me know how you want to proceed.

cc:    Supt. Shannon
       File.6

Commonwealth of Pennsylvania
Department of Corrections
SCI Mahanoy

August 16, 2000

Subject:     Returned Grievances

To:          Brett Culver, DD3483
             D/B

From:        Carol M. Dotter
             Corrections Superintendent Assistant

These grievances are being returned again.   You are not following proper procedures according to the DC-ADM 804 and you aren't following my directions when I try to explain them to you.

For the last time, the issues involving confiscated items were addressed in Grievance No. MAH-0217-00.  If you were not satisfied with the decision of the Grievance Officer, you should have appealed the matter to the Superintendent.  You did not.  Now it is too late and these issues will not be addressed again.

Regarding Grievance No. MAH-0286-00, I wrote you asking whether you wanted to re-file the grievance and have it reinvestigated?  Yes or no?  Just let me know.

Also, if you want the claims coercion investigated, please provide specifics, such as who intimidated you?  How were you obstructed from the process by being forced under duress to sign off on the grievance?  You didn't receive a response to these claims because they couldn't be investigated without this information.  I await further information on this matter.

cc:     File.7

'7  E.

BRETT CULVER DD-3483
H/Unit D-B

*Mr Culver,*
*as I told you in*
*my previous response,*
*MAH-0217-00 will*
*not be addressed as*
*initial review again.*
*MAH-0286-00 will be*
*re-filed.*
*CDotter*
*8/18/00*
*Sent to Lt Brennan*
*8/18/00*

August 18, 2000

SUBJECT:   Response on Returned Grievances *(Personal File 36 & 37)*
           Carol Dotter August 16, 2000

TO:        Carol Dotter
           Grievance Coordinator

FROM:      Brett Culver DD-3483

If you would examine the record on the issues, you would notice that: **#1.** The Legal documents/work/records taken from me by C.O.Miknich were never implicated or cited as contraband, even in his fraudulent misconduct report #A159045. **#2.** At the Hearing on #A159045 Examiner Kain stated that he did not understand why C.O.Miknich took the Legal documents/work/records from me, and that I should contact the Property Office about getting them back. Also in Hearing Examiner Kain's decision DC-141 PART II B the decision was to revoke the newspaper that was cited as the contraband (in violation of DOC Directives). But again, this has nothing to do with the Legal documents/work/records seized by C.O.Miknich. **#3.** In William Banto response 5-10-00 on #MAH-0217-00 DC-804 PART II he implies that the items confiscated and determined contraband were to be revoked. The newspaper was the only item to be identified as contraband (in violation of DOC Directives), and my Legal documents/work/records were never mentioned in this William Banto Response. But we all know the deceptive means at play in this William Banto Response. Unfortunately, William Banto needed to be more concise, because he left the entire Grievance #MAH-0217-00 undetermined and open by his final statement: This issue will be further discussed with appropriate staff as I explained to you." I'm still waiting for him to discuss the issues with the appropriate staff and give me the initial decision on these undetermined issues. **#4.** After speaking with Unit Manager Chismar on the issue of the with-held Legal documents/work/records, she looked at the Hearing Examiner decision on #A159045 and said that even though the Legal documents/work/records were not identified as Contraband, the decision was to have the contraband revoked. She said that means it was to be returned to me. That is the compleat opposite of what William Banto stated. I tend to agree with Unit Manager Chismar, because all other misconducts of contraband I have ever received have stated that the contraband is to be destroyed (if not to be returned). The American Heritage Dictionary states: REVOKE. To void or annul by recalling, withdrawing, or reversing....to call back. I suppose this term is used to imply any changeable interpretation the Official wants to use to cover all bases as the need arises. Just as everyone who interprets it "now comes up with a totally different interpretation (because all Officials are not together to conspire the agreed implication). As the definition goes on it's own merit, the definition favors: "void, withdraw, reverse (the contraband). And all of this "only implies the newspaper!"

Where is there any mention of my Legal documents/work/records?

Where "are my Legal documents/work/records?!

I now resubmit my file number 36 and 37 Grievances.

Your Official response no longer matters. These issues are being entered into a Legal Action. Your actions and handling of these issues has been documented.

cc:   C.Dotter
      K.R.Stuber esquire

Brett Culver

Case 1:01-cv-00904-YK-KH   Document 72-4   Filed 05/09/2003   Page 27 of 100

BRETT CULVER DD-3483
H/Unit D-B

August 18, 2000

SUBJECT:   Response to Returned Grievance                    Re: Grievance No. MAH-0286-00
           Carol Dotter 8-11-00


TO:        Carol Dotter
           Grievance Coordinator


FROM:      Brett Culver DD-3483


First of all, in fairness to Lt. Brennen, I want to clear-up any misconception to the facts. Lt. Brennen was the Official that wanted me to sign-off on Grievance No. MAH-0286-00 on the June 25, 2000 incident. But I would like to call attention to the last entree made in my: Conditions to Signature Under Duress MAH-0286-00 dated 6-25-00. This entree to the events refers to Lt. Brennen.

It would take extensive reports of prior and present events, conduct, circumstances, situations, indifferent treatment, punishments, and dishonest actions committed to my person by the Administration to explain the threatening elements, situation, and atmosphere that resulted in the sign-off under duress 6-25-00 MAH-0286-00.

Therefore, it will be acceptable for MAH-0286-00 to be re-filed for process in hopes of establishing relief from the harassment (and personal punishment abuse) by C.O.Miknich.

Also, I need to establish separation or restraint orders to avoid any contact with C.O.Miknich. Please advise how I can secure this provision of protection from C.O.Miknich.

*Mr. Culver,*
*See your Counselor*
*about a separation.*
*Grievance #MAH-0286-00*
*is being re-investigated.*
*C. Dotter*
*8/24/00*

cc:   C.Dotter
      K.R.Stuber esquire

*Brett Culver*

**DC-804**
PART II

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001**

**OFFICIAL INMATE GRIEVANCE**
**INITIAL REVIEW RESPONSE**

GRIEVANCE NO.  | MAH-0286-00

| TO: (Name & DC No.)<br>Brett Culver DD-3483 | INSTITUTION<br>SCI-Mahanoy | QUARTERS<br>D/B | GRIEVANCE DATE<br>6/20/00 |
|---|---|---|---|

The following is a summary of my findings regarding your grievance:

In response to your grievance #MAH-0286-00, I spoke with Officer Miknich as well as other staff members and inmates that work in the Education Building and have found no evidence whatsoever to support your claims of being harassed and lied to by this individual. I did, however, discover that you apparently have, on occasion, disregarded the proper procedures for attending the Library and the Education Building in general.  For example, bringing in unauthorized materials, etc.  I believe that your allegations are either fabricated or imaginary and will not pursue this matter any further.

JB:js

cc:   Deputy Petruccio
Deputy Kneiss
Mrs. Dotter
DC-15
COI Miknich
file

Refer to DC-ADM 804, Section VIII, for instructions on grievance system appeal procedures.

SIGNATURE OF GRIEVANCE COORDINATOR

DATE  8/24/00

5 N.

BRETT CULVER DD-3483
H/Unit D-B

August 26, 2000

RECEIVED

AUG 2 9 2000

SUPERINTENDENT'S OFFICE
SCI MAHANOY

SUBJECT:    Appeal of DC-804 PART II              Re: Grievance No. MAH-0286-00
            Initial Review Response
            Lt. Brennen Dated 8-24-00


TO:     R. Shannon
        Superintendent


FROM:   Brett Culver DD-3483


The statements made in Lt. Brennen's Initial Review Response on MAH-0286-00 are incredible.  Again, Officials of this SCI Mahanoy Administration only put forth effort to utilize inaccurate unfounded excuses to dismiss issues without resolution.

Lt. Brennen conveniently bases his investigation on statement's received from Officer Miknich, "his work buddies, and inmates that could not have any idea who I might possibly be (Security Breaches by Admin. has forced me to isolate from population since transferred here).  Also, the last time I had been harassed by C.O. Miknich was June 7, 2000.  And that was the first time I went to the Library since April 17, 2000 (during C.O. Miknich shifts).  There are two evident facts at this point: #1  No inmates here know who I am, and/or were present during any of these incidents.  #2  Officer Miknich (corrupt foul-mouthed lier that he is) would hardly give any honest statement to the facts or admit his corrupt conduct when providing Lt. Brennen with biased evidence to dismiss the issues (as Lt. Brennen identifies C.O. Miknich as the source of the evidence).  "How very convenient!"

In Lt. Brennens haste to find the fastest means to discredit or dismiss the pending issues, he inadvertently entered into record solid evidence in support of the issues submitted in MAH-0286-00.

**(A).** A brief review of the Misconducts issued against me by C.O.Miknich will show that these Misconduct reports were issued <u>consecutively</u>, <u>every time</u> I went to the Library during C.O.Miknich's shift. A review of my prison record of 18 plus years will show that I've never had any repetitious misconducts from one Officer, as in this case. Also, <u>in my 18 plus years in prison</u>, I have "NEVER" received any Misconduct accusations like the ones made against me by C.O.Miknich. Neither have I ever had to report a Officer for harassment violations during this incarceration history.

To finalize the <u>blatant</u> proof of dishonesty, corrupt acts, and harassment by Officer Miknich is the <u>fact</u> that <u>none</u> of C.O.Miknich's extreme charges (allegations) held merit through Hearing Examinations. All the alleged charges were droped down to <u>unsupported minimal offences</u> (and sanctions). Of note, Hearing Examiner Kain acknowledged and stated that, quote: "You really got screwed." unquote. This quotation was Hearing Examiner Kain's reference to Misconduct No. A159048, and the re-write Misconduct No. A273976, of which both kept me held in RHU for 2 weeks <u>prior</u> to any Hearing. After the Hearing I was immediately released via findings of meritless misconduct allegations made by Officer Miknich (Hearing of 4-28-00).

I must point out that if Officer Miknich's allegations would have had any merit or credibility, I would be doing around 2 years in RHU. "What are the evident <u>facts</u> about the issues at this point?!" Were Officer Miknich's allegations "truthful?! Were they found credible or accurate? The Hearing Examiner certainly didn't think so! The Administration here at SCI Mahanoy can't have it both ways to fit any implication desired for any given situation. And yet this is what continues to be done by Officials of this Administration.

The evidence "and events show blatant misconduct by Officer Miknich's deliberate actions to manipulate the system, and committed acts of corruption by deliberate false allegations to inflict unjust punishments. This is abuse of authority by Officer Miknich and crimes of harassment against my person. These are also Eighth Amendment violations I have been subjected to and still suffer because this Administration refuses to address these issues of responsibility.

**(B).** Lt. Brennen goes on to enter more supporting evidence to the issues of MAH-0286-00 by <u>confirming</u> that "on occasion" I have disregarded appointments for attending the Library. A brief review of the record will show that I <u>had</u> to disregard those scheduled appointments, because they were appointment times scheduled during C.O.Miknich's shift. I also have documentation of requests sent to the Library Staff asking for appointment scheduling to avoid appointment scheduling during Officer Miknich's shift, explaining the problems involved. For some reason the Library Staff continued to schedule my appointments during C.O.Miknich's shift. If Lt. Brennen was competent and unbias in his endeavors (Job) to investigate the issues, he would have seen the evident undisputable evidence supporting the facts.

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Mahanoy**
**(570) 773-2158**

29 August 2000

SUBJECT:   Response to Official Inmate Grievance
#MAH-0286-00

TO:   B. Culver, DD-3483/RHU

FROM: R. Shannon, Superintendent

In preparing a response to this appeal, I have reviewed your initial grievance, the grievance response and this appeal. The following comments are provided:

Your grievance is viewed as being in violation of Administrative Directive 804 on several counts as follows;

   a)  No genuine effort has been displayed on your part to resolve this concern before utilizing the grievance system.
   b)  Your use of the grievance system is not seen as being in good faith or good cause as required and as displayed by your constant attacks against staff.
   c)  Your grievance is neither brief, nor does it stick to the issue(s) at hand as required.

You've been counseled on several previous occasions and as recent as 14 August by your Unit Manager (Chismar) that you are to refrain from your personal attacks against staff that you continue to include in your correspondence(s).

In fact, Ms. Chismar has quoted your response as; "I am flooding offices with paperwork to create a headache for staff in retaliation for the "headache" I received by being housed in RHU on two occasions." You also, again, indicated that your aim is to gain transfer back to your home region.

As it appears obvious that you intend to abuse the purpose of Administrative Directive 804, then let this grievance response also serve as notice that you are hereby placed on a one grievance per month restriction, to continue until such time that your intentions fall within the required policy guidelines. This will serve as your grievance for August. Appropriate staff will be copied on this grievance restriction.

Also, please note that the real issue at hand here is your so-called denial of library access. Several staff, including Ms. Chismar investigated your claims and found that you are being scheduled for the library. That you choose not to go is your own doing.

Grievance appeal is, therefore, denied.

RS:sd

cc:   Deputy Kneiss
      Deputy Petruccio
      Mrs. Dotter
      U.M. Chismar
      DC 15
      file

# ATTACHMENT F

Case 1:01-cv-00064-YK-KH   Document 72-4   Filed 05/09/2003   Page 33 of 100

DC-135A

**COMMONWEALTH OF PENNSYLVANIA**

DEPARTMENT OF CORRECTIONS

**INMATE'S REQUEST TO STAFF MEMBER**

RECEIVED
SEP 0 7 2000

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

| 1. TO: (NAME AND TITLE OF OFFICER) R. Shannon    Superintendent | 2. DATE 9-5-00 |
|---|---|

| 3. BY: (INSTITUTIONAL NAME AND NUMBER) — Brett Culver   DD-3483 | 4. COUNSELOR'S NAME Barsh |
|---|---|

| 5. WORK ASSIGNMENT | 6. QUARTERS ASSIGNMENT D-I B   22 |
|---|---|

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

The Harassment by Officer Miknich against me is well known among other employees at this facility. There are certain employees that inform me about conversations they have had, or heard about me from C.O. Miknich. *Today (9-5-00) I was told by one of these employees that Officer Miknich is actively seeking information concerning me from other employees on D-B. And this employee informed me that Officer Miknich was making improper statements in reference to me. This involves conspiracies and stalking. *All measures of security and protection have been denied by this Administration. I desperately tried to secure relief on these issues which has been denied. I tried to secure separation protection which has also been denied to this date. Everything I have tried to do to secure relief (protection from abuse) has been denied by this Administration "and your authority." This Administration has supported, facilitated, promoted, and endorsed all facets of harassment and hostilities against my person. I cannot be held responsible or accountable for any actions on my part that might occur related to these situations being deliberately forced on my person.

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

Provide names to the Security Office. Give them something to work with and your accusations will be formally investigated as they have been previously.

Also - you most certainly will be held accountable for your actions.

*R. Shannon Supt*

7 Sep '00

Dep. Petruccio

cc: Major McGrady - have his latest complaints investigated.

Unit Mgr Chismar

Adm Asst Dotter

☐ TO DC-14 CAR ONLY      ☒ TO DC-14 CAR AND DC-15 IRS

| STAFF MEMBER | DATE |
|---|---|

Case 1:01-cv-00904-YK-KH Document 72-4 Filed 05/09/2003 Page 34 of 100

FORM **DC-141** PART I **COMMONWEALTH OF PENNSYLVANIA**
Rev. 6-84

**A 212770**

☒ MISCONDUCT REPORT ☐ OTHER **DEPARTMENT OF CORRECTIONS**

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| DD-3483 | Culver, Brett | SCI-MAH | 1515 | 9/5/00 | 9/18/00 |

| Quarters | Place of Incident |
|---|---|
| RHU | Security Office |

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| Staff | CO1 Brennan | | ✓ | Staff | Superintendent Shannon | ✓ | |
| Staff | CO1 Engle | | ✓ | | | | |
| Staff | CO1 Miknich | ✓ | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION** A. Class # 15. Threatening an Employee or their family with bodily harm.

**STAFF MEMBER'S VERSION** On September 5, 2000 Superintendent Shannon received a Request Slip From DD-3483 Culver. In the Request Slip inmate Culver alledged that CO Miknich was harrassing and stalking him. Culver Further Stated "I cannot be held accountable for my actions on my part that might occur related to these situations". On 9/11/00 I attempted to interview inmate Culver concerning his threatening statement, Culver refused to cooperate and explain his statement, therefore his statement is considered a threat to CO Miknich. The difference in the original date of Incident and Report date was due to this Reporter being out of the institution. until 9/11/00. Misconduct A 212769 was dismissed without prejudice Resulting in a new date of Report of 9/18/00.

**IMMEDIATE ACTION TAKEN AND REASON** Continue Confinement in the L.5 pending Further Action By the Hearing Examiner.

**PRE-HEARING CONFINEMENT**

| | IF YES | |
|---|---|---|
| | TIME | DATE |
| ☐ YES | | |
| ☒ NO | N/A | N/A |

☑ REQUEST FOR WITNESSES AND REPRESENTATION
FORMS GIVEN TO INMATE
☐ INMATE'S VERSION

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY |
|---|---|---|
| Mooney, Vincent F. Intelligence Captain | CO W Bjen | DATE 9-18-00  TIME 24 HOUR BASE 1915 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | Misconduct Category | Signature of Person Serving Notice |
|---|---|---|---|
| DATE | TIME | ☑ CLASS 1 ☐ CLASS 2 | CO' Meshie |
| 9-20-00 | 0800 | | |

**NOTICE TO INMATE**
You are scheduled for a hearing on this allegation on the date and the time indicated or as soon thereafter as possible. You may remain silent, if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class I misconduct, any pre-release status you have will be revoked.

WHITE - LOCATION: 7173618165 Cited PINK - Staff Mer RX TIME 05/06 '03 09:47 NROD - Deputy Superintendents

DC-141          PART II A          COMMONWEALTH OF PENNSYLVANIA
Rev. 6-84                          DEPARTMENT OF CORRECTIONS
INMATE REQUEST FOR
REPRESENTATION AND WITNESSES

| DC Number | Name | Institution | Date | Number as on Part I |
|---|---|---|---|---|
| DD3483 | Culver, Brett | SCI MAH | 9-18-00 | A212770 |

You have been charged with a misconduct. You may request assistance and/or witnesses to appear at your hearing by completing the section(s) below. *With Assistance by Attorney/Case involves Official Crimminal intent.*

In order to have assistance or witnesses at your hearing, you must complete this form and present all copies to one of your housing officers no later than 9:00 a.m. the first working day after you receive notice of the misconduct.

Assistance:   ☐ I do not request assistance
              ☒ I request assistance by _Kathy R. Stuber, Esquire_     PA. Institutional Law Project
                 (The person requested must be willing to assist you)   924 Cherry St.
                                                                        Philadelphia PA.

Witnesses:    You may request witnesses in accord with DC-ADM 801. State the relevance and   No _Culver appears_
              importance of the testimony the witness will give.                             _what understand the process_

---

| If Inmate | | DO NOT WRITE IN THIS SECTION |
|---|---|---|
| | | For Use by Hearing Examiner |

1. Name of Witness:     No.     Quarters
Original Document (R. Shannon 9-5-00) Stamp Dated to      Witness permitted?     If not, why not?
V. Mooney Office receipt

Why is this person's testimony relevant and important?

V. Mooney rendering of statement in #A212770
is altered and not correct to the
original text. Also V. Mooney twists this
partial statement out of the context present
in the original. Office Date Stamp is Evidence.

_Institutions_

2. Name of Witness:     No.     Quarters
Work Attendence Tracking Record for V. Mooney   9-5-00   Witness permitted?   If not, why not?
                                                 to
Why is this person's testimony relevant and important? 9-18-00
V. Mooney enters (implies) evidence by                    No, 0.0 No on
testimony in report that he had not been                  request repeatedly
at this Institution 9-5-00 to 9-11-00 for reason,
that this charge could not be written-up (outside his authority
                                           and presence)
Whomever was V. Mooney's replacement during absence.

3. Name of Witness:     No.     Quarters     Witness permitted?   If not, why not?
Whomever was in charge of V. Mooney's duties
Why is this person's testimony relevant and important? during his
To explain why nobody at this Prison    absence 9-5-00
state found any reason, or could not    to 9-11-00
take action if this violation (alleged existed. And
why no violation was found by anyone for the 6 days (six days)
V. Mooney alleges he was not at this Institution.

_Brett Culver_
Inmate's Signature

---

This section to be completed by Housing Officer only
Received completed form _0645_ hours _9-9-00_
                         Time        Date                    Hearing Examiner's Signature

_CO Henderson_ / _Hend_
Housing Officer's Signature

---

WHITE—DC-15     YELLOW—Inmate's Copy To Be Given After Action By Hearing Examiner     PINK—Staff Member Reporting Misconduct

REV: **17 April 2000**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**SCI Mahanoy**
**(570) 773-2158**

19 September 2000

SUBJECT:   Superintendent's Response
           Appeal of Misconduct #A212770

TO:        B. Culver, DD-3483/RHU

FROM:      R. Shannon
           Superintendent

You were found guilty of the above misconduct.  You appealed on the following grounds that:

a.   The procedures employed were contrary to law, Department Directives,
     or regulations;

b.   The punishment is disproportionate to the offense;

c.   The findings of fact were insufficient to support the decision.

---

I have reviewed the misconduct, the Program Review Committee's decision and your appeal with the
following results:

□   APPEAL DENIED

□   APPEAL SUSTAINED

☒   APPEAL IS BEING RETURNED FOR INSUFFICIENT INFORMATION

□   APPEAL REMANDED

RATIONALE:   Appeal is inappropriately filed to my office, as it has yet to be heard by PRC.

RS:sd

cc:    DSFM          DC-15
       DSCS          file
       CCPM Unell
       Ms. Bosavage

Case 1:01-cv-00904-YK-KH   Document 72-4   Filed 05/09/2003   Page 37 of 100

TO: P. R. C.

RECEIVED

SEP 21 2000

DEPUTY SUPERINTENDENT
CENTRALIZED SERV. SCI MAHANLY

*Notification of Procedural Violations of DOC Directives/Procedu__*

9-21-00                              Brett Culver DD348:
                                     RHU  D-22

On 9-11-00 I was placed in RHU AC Pre-Hearing Confinement per DC ADM 801 iv.
pending misconduct hearing #A212769.

The reporting staff U. Mooney filed allegations of report per DC ADM 801 VI A (2), (3.
On 9-11-00 1515 hrs. I was placed in RHU (for not cooperating) by order of V.
Mooney. Pursuant to DC ADM 801 vi C the Shift Commander co-signed this action.
The report of DC-141 Part 1 #A212769 thus refered my status (at that time)t
Pre-Hearing Confinement pending Misconduct Hearing per DC ADM 801 VI E2.

The Hearing for #A212769 was held 9-14-00 at which said charge was Dismisse_
Without Prejudice. At that time and date (9-14-00 1100 hrs) my status refered
from AC Pre-Hearing Confinement per DC ADM 801 VI E2 to a subsequent DC ADM 8_
VI C. (which allows reasonable time for any re-write to the alleged charge dismissed
Pursuant to DC ADM 801 VI C  with the charge #A212769 being Dismissed 9-14-0
.1100 hrs, the time expenditure offered to the charging staff member EXPIRE_
9-17-00 1100 hrs.

X  In Accordance with DOC Directives/Procedures, Misconduct re-write #A2127_
filed on 9-18-00 is untimely and VOID on expired time expenditure.

X  "Also, the DC-141 Part 1 #A224179 ☒ Other "Notification of Confinement" prepar_
and filed by Lt R. Henrickson 9-14-00 is non applicable and in violation of
D.O.C. Directives/Procedure. Upon Dismissal of charge #A212769 9-14-00 the
extended detention confinement was pending a possible re-write of char_
and I was not detained on AC Investigation. DC ADM 802 VI A1F as enter_
#A224179 is non-applicable and is not in accordance with DOC Directives/
Procedures. On 9-14-00 I was not detained on any charge, nor was I AC Investigatio_

The afore out-lined status procedure in accordance with DOC Directiv_
/Procedures is True and Correct.

Pursuant to the Procedural Violations of D.O.C. Directives and
Procedures, my present detainment in RHU must be annulled

| DC-141 | PART II B | COMMONWEALTH OF PENNSYLVANIA | | | | |
|---|---|---|---|---|---|---|
| Rev. 6-84 DISCIPLINARY HEARING REPORT | | DEPARTMENT OF CORRECTIONS | | | | |

| DC Number | Name | Institution | Hearing Date | Hearing Time | No. from Part I |
|---|---|---|---|---|---|
| DD 3483 | Culver | SCIMAH | 9-22-00 | 1040 | A212770 |

| INMATE PLEA | ☐ Guilty  ☑ Not Guilty | ☐ No Plea  ☐ Other | Verdict | ☑ Guilty  ☐ Not Guilty |
|---|---|---|---|---|

CHARGES  A#15. THROAT — not guilty

**HEARING ACTION**

**FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED**

Culver Submits a version stating essentially that he did authen the attached copy of the report only. He did make the statement that "I cannot be held responsibility accountable for any action on my part that might occur related to this situation..." But he does not see this as a threat.

I find for the staff report over Culver's denial that the statement he authored in the attached report only, that he could not be held responsible for another any action on his part, as a threat to staff. I find he many long this not meet it as a threat. I find him guilty of this threaty chage.

Santi: 90 to DC
to 9-11-00
to
12-9-00

| | | | |
|---|---|---|---|
| ☑ YES | ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. | inters/copy attached |
| ☑ YES | ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. | reinstated  SEE APPENDICES |
| ☑ YES | ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. | copy of request only |
| ☑ YES | ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. | attched & statmnt of Culver |

| NAME(S) OF HEARING EXAMINER/COMMITTEE (TYPED OR PRINTED) | Hearing Report and all appended information must be signed. Signature indicates finished report with appendices. |
|---|---|
| J.K. KANE | SIGNATURE OF HEARING EXAMINER/COORDINATOR |

WHITE—DC-15        YELLOW—Inmate Cited        PINK—Staff Member Reporting Misconduct        GOLDENROD—Deputy Superintendent

05/06/03 10:04 FAX 7173618165 MDP ☑025

*V. Mooney did not charge [illegible] with #15 Because [document] 9-5-00 was in violation. I was charged with the alleg[ed] violation because I [illegible] wouldn't speak about information V. Mooney wanted. I was charged because I would not do what V. Mooney wanted me to d[o]. Document R. Shannon 9-5-00 is not in violation, it had no is no documented threat to his*

| DC-141 | PART II C | COMMONWEALTH OF PENNSYLVANIA |
|---|---|---|
| Rev. 8-84 | HEARING SUPPLEMENT | DEPARTMENT OF CORRECTIONS |
| | INMATE VERSION AND WITNESS STATEMENTS | |

| DC Number | Name | Institution | No. from PART I |
|---|---|---|---|
| DD-3483 | CULVER BRETT | SCI-MAH | A-212770 |

**INMATE'S VERSION**

*written for Court Actions being pursued or being issued pursued. This is the basis in which no violation exists. This is not a threat by any issue. A written document which states no violation exists*

Statement of allegation is a isolated partial of a statement being twisted out of context to which it was presented. Also, this isolated partial being twisted out of context has been ALTERED from its original text, as it is rendered in #A212770. Even out of context this isolated partial implies no threat to anyone. In context presented in the two form documentation sent to R. Shannon 9-5-00, this document was a Proclamation. Due to Administrative hostilities and refusal to address violations being committed against my person, I Proclaimed, as to the context, that I am not responsible for any of the issues or situations I have been forced to seek relief for or resolution to. And regardless of the Administrative Official threats to "stop pursuing these issues of complaint, I am not accountable (or responsible) for any actions on my part or efforts to secure relief. "I" am not responsible for these situations or violations being committed against "me". (I am not accountable.) XXX I also Proclaimed that because of Administrative Corruption, retaliation, and refusal to address/process these issues; I would not be submitting anymore issues to the authority of this Administration. Superintendent R. Shannon received this documentation (for record) and sent a copy to ( ? ) to have the ISSUES OF COMPLAINT investigated. There was no "alleged Threat" by Superintendent R. Shannon concerning the document. (to be investigated) Superintendent R. Shannon is in a position and knowledgable enough to know if a rule or regulation had been violated (And he would have had me charged immediately 9-5-00.) (had there been a violation) But no action was taken because no rule or regulation had been violated, nor was there any Threat made. On 9-11-00 Vincent Mooney did not ask me anything about a Threatening Statement as he testifies in his report. V. Mooney was enraged because I immediatly told him I had nothing to say to this Administration on these issues. (As Proclaimed in the Document, reasons included.) V. Mooney was asking about names of employees referred to in the Document "ONLY". I again told him I had nothing to say, all issues are being handled by outside agencies. In rage V. Mooney had me sent to RHU. ● V. Mooney's report [illegible] implies that Mr. Shannon is not capable of reporting this alleged charge, nor is anyone else during his so called absence 9-5-00 to 9-11-00. The Proclamation Document itself was specifically

WHITE — DC | LOCATION: 7173618165 | PINK — Staff Mem RX TIME 05/06 '03 09:47 ENROD | Deputy, Superintendent

Case 1:01-cv-00904-YK-KH   Document 72-4   Filed 05/09/2003   Page 40 of 100

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Mahanoy**

September 22, 2000

**Subject:**    Misconducts A212769 – A212770
            Notification of Confinement A224179

**To:**       DD3483 Culver, Brett  —  RHU D-22

**From:**     Edgar M. Kneiss
            Deputy Superintendent
            for Centralized Services


I feel you are wrong in that the misconduct was dismissed without prejudice to be re-written.  You were given a notification the same day.

Captain Mooney was out of the institution, and upon his return and when finding out it was dismissed, he rewrote it.  All legitimate.

This all may have been avoided if you cooperated in the first place.

EMK:hb

Attachment

Cc:    Supt. Shannon
       Deputy Petruccio
       Major McGrady
       Major Michaels
       Captain Mooney
       Lt. Henrickson
       DC-15
       File

Case 1:01-cv-00904-YK-KH Document 72-4 Filed 05/09/2003 Page 41 of 100 @015

Brett Culver DD3483
301 Morea Rd
Frackville, PA. 17932

MDP

9-25-00

SEP 2 8 2000

I am presently detained in RHU at SCI Mahanoy under punishments incurred by Administrative retaliation. The retaliatory punishments are directly related to my efforts to report, and seek relief on Official violations being made against my person.

I am forced to seek (and prior) relief on these violations through Court Actions. But at present, the SCI Mahanoy Administration has obstructed this pursuit by witholding all my Legal Records, Materials, and Documents. I have not been permitted access to these Materials from 9-11-00 till present.

Also, because I have been sanctioned with punishment by the Intelligence Captain at this facility, I cannot obtain a fair or impartial hearing, or Appeal on the false allegations Im sanctioned on at this Institution. I request a Impartial committee for Appeal relief on the present unjust sanction I suffer. I will also have to request that the Impartial Committee (Chief Hearing Examiner) be aside any influence or involvement of R. Bitner. R. Bitner is actively involved in D.O.C. violations related to the incidents I have reported on, and am suffering retaliation for.

#A212770

Brett Culver

Case 1:01-cv-00904-YK-KH   Document 72-4   Filed 05/09/2003   Page 42 of 100



*Notice for Hearing/Appeal — Continuance via Impartial Procedural Hearing, and access of Record Documentatio*

TO: PRC                        9-28-00

**RECEIVED**
**SEP 2 8 2000**
DEPUTY SUPERINTENDENT
CENTRALIZED SERVICES/SCI/MAH

Brett Culver DD348
RHU D-22
Brett Culver

The SCI Mahanoy Administration is in violation of D.O.C Policy Procedures by denial of a fair and impatial hearing 9-18-00 on Misconduct #A212770

All requested "witness documents to challenge charging staffs implied evidence and allegations, as requested per DC-141 Part II A form, was Denied by Hearing Examiner Kain.

[ I, being falsely charged on fraudulent testimony and implied evidence, have the right to request the documents I'm being charged from, and those documents necessary to support or disprove allegations being made against me. ]

Hearing Examiner Kain refused to allow witness documents for review of evidence at Misconduct Hearing #A212770 on 9-18-00, ~~Notwithstanding previous allowance in the RHU~~ (Decision based only entirely on Mooney's version)

Also, because all personal Legal Records and Materials are presently being witheld by the SCI Mahanoy Administration, record documentation directly relevent to these issues of evidence, and necessary for presenting a Appeal are being Denied by the SCI Mahanoy Administration. (Obstruction/Hinders)

Therefore, this Administration at SCI Mahanoy is in violation of D.O.C. Policy and Procedure. These are also Civil Rights violations. Misconduct Hearing #A212770 conducted by Hearing Examiner Kain on 9-18-00 is in violation.
DC ADM 801 VI K ( Misconduct #A212770 is also in violation of time limitations expiration)

No fair or impartial Hearing or Appeal procedures can be ~~secure~~ secured at this Institution. ~~within~~ Documentation on evidence and related issue has been denied, and continues to be witheld by the SCI Mahanoy Administration.

I formally request a Impartial Hearing on Misconduct #A212770 and the right to have witness documentation and ~~evidence~~ evidence examined

Case 1:01-cv-00904-YK-KH   Document 72-4   Filed 05/09/2003   Page 43 of 100

301 Morea Rd
Frackville, PA. 17932

9-25-00

OFFICE
OF THE

SEP 2 8 2000

CHIEF
HEARING EXAMINER

I am presently detained in RHU at SCI Mahanoy under punishments incurred by Administrative retaliation. The retaliatory punishments are directly related to my efforts to report, and seek relief on Official violations being made against my person.

I am forced to seek relief (and prior) on these violations through Court Actions. But at present, the SCI Mahanoy Administration has obstructed this pursuit by witholding all my Legal Records, Materials, and Documents. I have not been permitted access to these Materials from 9-11-00 till present.

Also, because I have been sanctioned with punishment by the Intelligence Captain at this facility, I cannot obtain a fair or impartial hearing, or Appeal on the false allegations Im sanctioned on at this Institution. I request a Impartial committee for Appeal relief #A212770 on the present unjust sanction I suffer. I will also have to request that the Impartial Committee be aside (Chief Hearing Examiner) any influence or involvement of R. Bitner. R. Bitner is actively involved in D.O.C. violations related to the incidents I have reported on, and am suffering retaliation for.

Britt Lubin

Case 1:01-cv-00904-YK-KH   Document 72-4   Filed 05/09/2003   Page 44 of 100

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI Mahanoy**

September 28, 2000

**Subject:**      Misconduct Appeal #A212770

**To:**      DD3483 Culver, Brett  —  RHU D-22

**From:**      Edgar M. Kneiss
             Deputy Superintendent
             for Centralized Services

Your attached appeal must be properly filled out on a DC-141 Part II E Misconduct Hearing Appeal form with the correct misconduct number and hearing date and submitted to the Program Review Committee in a timely fashion (within 15 days from the date of your hearing, which was 9/22/00).

Please resubmit your appeal on the proper form.

EMK:hb

Attachment

cc:    Deputy Petruccio
       Mr. Unell
       DC-15
       File

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
1451 N. MARKET STREET
ELIZABETHTOWN, PA 17022

OFFICE OF THE
CHIEF HEARING EXAMINER

October 17, 2000

Brett Culver, DD-3483
SCI Mahanoy

Re:     DC-ADM 801 - Final Review
        Misconduct No. A212770

Dear Mr. Culver:

This is in response to your appeal to final review of the above numbered misconduct.

In accordance with DC-ADM 801, VI, L, 3, I have reviewed the entire record of this misconduct; including the misconduct report, the hearing report and related documents, your appeal to the Program Review Committee and their response, your appeal to the Superintendent and his response. I have also thoroughly reviewed the issues you raise to final review.

The issues you raise to final review have already been addressed by the Program Review Committee and the Superintendent. On review of the record, this office concurs with their responses. I find no persuasive basis from which to conclude that the Examiner erred in conducting the hearing. The Examiner specifically documented findings of fact based on evidence presented at the hearing to support the decision. The procedures followed were in complete accordance with DC-ADM 801, §VI. The sanction imposed is not viewed to be disproportionate to the offense, and therefore will not be amended at this level.

For the above-stated reasons, the responses provided by the Program Review Committee and the Superintendent are upheld in full. Your appeal must, therefore, be denied.

Sincerely,

Robert S. Bitner
Chief Hearing Examiner

RSB:bjk

pc:     Superintendent Shannon

Case 1:01-cv-00904-YK-KH   Document 72-4   Filed 05/09/2003   Page 46 of 100

SUBJECT:   APPEAL of #A2127●                          10-18-00

Now Resubmitted
10-25-00

TO:   Superintendent R. Shannon

FROM:   Brett Culver   DD3483
        RHU   D-22

Document R. Shannon 9-5-00 (Contents of both Documents submitted R.Shannon 9-5-00) stands as evidence on its own merit. Documentation submitted R. Shannon 9-5-00 contains NO THREAT, nor is said documentation in violation of any rule or regulation. Documentation R. Shannon 9-5-00 of record contains NO CONTEXT OF PHYSICAL AGGR-ESSION, OFFENSIVE INTENT, NATURE OR ATTRIBUTE DIRECTED OR CONTRIBUTED towards or against Officer Miknich (or anyone anything else). There is absolutely no Threat contained in context or word in said documen-tation R.Shannon 9-5-00.

Documentation R. Shannon 9-5-00 (Both documents submitted 9-5-00) were drafted and submitted as a only means and/or alternative means of witness ability to the suffered situations of Official and Administrative Harrassment, Retaliation, Unjust Violations. These documents were entered for record as an only means of protection measures and evidence to the ongoing Official and Administrative attacks against my person, as all efforts to secure relief and/or protection from such abuses has been denied by the SCI Mahanoy Administration.

Documentation R. Shannon 9-5-00 (Both documents) were submitted to your authority for record on or about 9-5-00. Your personal review found nor identified any Threat or threatening statement towards Officer Miknich, or anyone else for that matter, as NO Threat exists in said documentation of record. As evidence of your personal review testimony, you entered that THE ISSUES OF MY COMPLAINT BE INVESTIGATED, As directed to Major McGrady 9-7-00. A week after document R.Shannon 9-5-00 was subm-itted to your authority for record, a Captain Mooney has me sent to RHU for refusing to give him the names of employee informants refered to in docume-nt R. Shannon 9-5-00. Captain Vincent Mooney then entered a false report #A2127●, saying he questioned me about threatening statements to Officer Miknich; and I refused to explain these non existant Threats he falsely alleges he asked me about. I was placed in RHU by Vincent Mooney for witholding the names of informants that he demanded, and his actions nor retaliatory (See E. Kneiss response 9-22-0

10-25-00

SUBJECT: Status of Fraudulent
#A212770

TO: R. Shannon
Superintendent

FROM: Brett Culver DD3483
RHU D-22

RECEIVED

OCT 2 6 2000

SUPERINTENDENT'S OFFICE
SCI MAHANOY

* So called incident date: 9-5-00
* Fraudulent allegations in act of retaliation by Vincent Mooney 9-11-00 #A212769
* On 9-14-00 #A212769 Dismissed Without Prejudice
* 9-18-00 Vincent Mooney re-writes fraudulent allegations with added lying rational #A212770.
* 9-11-00 to 9-22-00 all evidence documentation and relevent record evidence was denied and witheld from me to deny a fair or impartial hearing, and the biased hearing was imposed 9-22-00.
* On or about 9-24-00 a letter of complaint and request for a fair and impartial hearing free of SCI Mahanoy staff and Chief Hearing Examiner R. Bitner influence be secured via Camp Hill. (No reply)
* Continued efforts to secure evidence documentation and personal records relevent to issues alleged in #A212770 denied and witheld by SCI Mahanoy Administration. SCI Mahanoy Officials also refused to produce requested evidence for record.
* 9-28-00 Notice of Appeal Continuance was submitted to PRC via the access of evidence documentation, personal records relevent to issues of allegations; and production of documentation to verify implied evidence/testimony by Vincent Mooney #A212770. And Request for Fair and Impartial Hearing.
* 9-29-00 Notice of Continuance for Appeal and reasons submitted to R. Shannon.
* 10-2-00 Notification to PRC that Appeal Process had been Obstructed by SCI Mahanoy Administration and could not continue untill access to all relevent Documentation, evidence records, and personal records needed for appeal be granted.
* 10-6-00 PRC responds with irrelevent response.
* 10-6-00 SCI Mahanoy Administration allows access to partial personal records and evidence documentation.
* 10-12-00 I submit Appeal of #A212770 to R. Shannon Superintedent level. Response: "Returned w/o action. Inappropriately Filed C.S. 16 OCT '00."
* 10-16-00 Refiled Appeal of #A212770 to R. Shannon. Response: "Inappropriately Filed. Returned without response C. Doter 10-17-00."
* 10-18-00 Re-filed Appeal of #A212770 with DC ADM 801 VI 2 clarification of pocedure to R. Shannon. Response: "You have already exhausted all levels of appeal on this Appeal—A212770. Please refer to response from Chief Bitner dated 17 Oct 00. C. Shannon 20 Oct 00."
* This

#A212770 has never been Appealed to Chief Hearing Examiner R. Bitner. I am only interested in the Appeal Decision of R. Shannon at the SCI Mahanoy Superintendent level. ~~xxxxxxxxxxxxxxxxxxxxxxx~~ ~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~ ~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~ ~~xxxxxxxxxxxxxxxxxxxxxxxxxxx~~ I'm only interested in Your decision on this matter, because, "You reviewed the so-called violation document (R. Shannon 9-5-00) a week prior to Vincent Mooney's fraudulent report, and You found no violation of rules or regulations in that said document of record. Therefore, "your decision in this matter is relevent to the ~~xxxx~~ Actions being prepared on this and other Administrative violations. You are either going to compromise your position to support the actions and allegations of ~~xxxx~~ record by Vincent Mooney, or you will stand on your own two feet and justify the situation in a professional manor as your position of authority requires. (In other words, You will either collaborate with the actions of Vincent Mooney, or you will preform your duty ~~in~~ honestly and justly). "What you do is your decision". All I'm asking is that you suck-it-up and ~~do~~ whats right!

I understand you don't want to be involved in this matter. You seem like a individual that wants to be "on the level" and do your job in a professional manor. Unfortunately you inherited a very corrupt and dishonest batch of Administrative Officials when you came here. I think your wise enough to see that this ship you command is heading for rough waters (I don't mean that in reference to my issues against this Admin alone). ~~xx~~ Take some warning by what you see developing around you. It bewilders me why you would compromise (your) personal dignity and honor to support lies and acts of cowardly sadistic abuses of authority ommitted 'by ~~xxxxxxxxx~~ others. Especially by individuals (under) your authority.

I know that the motivating factor against me is my abrasively blunt forewarn manor in ~~xxxxxxxxx~~ condemnation of your staff. But what I say is 100%, ~~xx~~

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Mahanoy**
**(570) 773-2158**
**02 November 2000**

SUBJECT:      Superintendent's Response
                     Appeal of Misconduct #A212770

TO:              Brett Culver, DD-3483/RHU

FROM:         R. Shannon
                     Superintendent

You were found guilty of the above misconduct.  You appealed on the following grounds that:

a.       The procedures employed were contrary to law, Department Directives, or regulations;

b.       The punishment is disproportionate to the offense;

c.       The evidence was insufficient to support the decision.

---

**I have reviewed this misconduct and the Program Review Committee's decision and your appeal with the following results:**

☒      **APPEAL DENIED**

☐      **APPEAL SUSTAINED**

☐      **APPEAL IS BEING RETURNED FOR INSUFFICIENT INFORMATION**

☐      **APPEAL REMANDED**

**RATIONALE:**
Your misconduct hearing was conducted on 22 Sep yet you appealed this to my office on **19 Sep** prior to any hearing.  That appeal had to be returned to you without action.

You then submitted an inappropriate appeal to PRC on 28 Sep that had to be returned to you by PRC because you failed to provide the proper format.  At the same approximate time (25 Sep), you also submitted an appeal for final review, to Chief Bitner's office without appeal response from either PRC or my office.  Chief Bitner, appropriately, could take no action until he received further information from the Institution.

On 03 Oct, PRC then received an appeal form from you on which you wrote "Not an Appeal. A212770 cannot be appealed to the authority of SCI Mahanoy Administration.  No fair or impartial process can be secured."  PRC had little choice but to return that appeal form to you

Case 1:01-cv-00904-YK-KH    Document 72-4    Filed 05/09/2003    Page 50 of 100

**B. Culver, DD-3483**                  **-2-**                  **02 November 2000**

On 17 Oct, the Institution received a copy of Chief Bitner's Final Review of Appeal addressed to you.

On 20 Oct, I then received what can be construed as an appeal from you on this same misconduct.  My response reflected this appeal process was closed as per receipt of Final Review.

A few days later, while making my rounds through the RHU, you indicated to me that, not only did you not receive anything from Chief Bitner, you also claimed that you **never sent** any appeal to his office.  Either you were flat-out lying or just plain forgot.  Choose **one** because, attached you will find a) Chief Bitner's Final Review response and b) a copy of your appeal that you wrote, signed then sent to Chief Bitner dated 25 Sep.

Your actions in this matter are reviewed as a deliberate intent to abuse the Adm Dir 801 process as it pertains to appeals.  Your deliberate actions resulted in several hours of staff time to attempt to ensure that your appeal rights were not infringed upon and that you be given fair opportunity for review.  You were given several opportunities to follow proper procedures and you failed to do so.

Your appeal process on this matter has been completed.  As a result, this additional appeal is denied due to it being inappropriately submitted.


RS:plr

cc:     Chief Bitner                    Control
        DSFM                           DC-15
        DSCS                           file
        Ms. Bosavage
        CCPM Unell

*Exh E*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRETT CULVER,                    :

     Plaintiff                    :

     v.                           :     NO. 1:CV-01-0904

                                  :

COMMONWEALTH OF                  :

PENNSYLVANIA, *et al.*,          :     (JUDGE KANE)

                                  :

     Defendants                   :

## UNSWORN DECLARATION OF VINCENT MOONEY

I, **VINCENT F. MOONEY**, hereby declare under the penalty of perjury that the following is true and correct and based upon my personal knowledge:

1.    I am currently employed by the Pennsylvania Department of Corrections ("DOC") as the Intelligence Captain at State Correctional Institution at Mahanoy. Pennsylvania ("SCI-Mahanoy"). I have been employed by the DOC for approximately eighteen years.

2.    At all times relevant to this complaint, I was Intelligence Captain, at SCI-Mahanoy. As Intelligence Captain, my duties and responsibilities include, but are not limited to monitoring, reviewing and addressing security issues concerning SCI-Mahanoy. I investigate all internal security issues within SCI- Mahanoy, including allegations involving staff and inmates. I am also familiar with the standard policies and procedures followed at SCI- Mahanoy, as well as those of the DOC, including inmate disciplinary procedures and record keeping practices concerning misconduct reports and inmate grievances. I am also familiar with the various DOC Administrative Directives that impact inmates.

3. On September 5, 2000, Superintendent Shannon received a request slip from inmate Brett Culver, DD-3483, alleging that Officer Miknich was harassing and stalking him and he "cannot be held accountable for my actions on my part that might occur related to these situations." (*See* Attachment "A").

4. I was assigned to investigate Culver's allegations. On September 11, 2000, I attempted to interview Culver concerning his threatening statement. Culver refused to cooperate and explain his statement, therefore, I considered his statement to be a threat. In accordance with DOC policy I issued Culver Misconduct No. A 212770, Threatening an Employee or Their Family with Bodily Harm on September 18, 2000. (*Id.*)

5. Culver's misconduct hearing regarding Misconduct No. A 212770 was held on September 22, 2000. After a review of the information, documentation and evidence presented, the hearing examiner found Culver guilty of the threat charge and sanctioned him to ninety days disciplinary custody. (*Id.*)

6. I did not have any conversations with the hearing examiner, the Superintendent, or anyone regarding the sanction imposed regarding Culver's misconduct.

7. At no time did I make any threatening or inflammatory statements to or about Culver, attempt to endanger his safety, threaten him with bodily harm or incite inmate aggression and violence against him.

8. At all times relevant to Culver's misconduct, as well as the allegations contained in the complaint, I acted in accordance with the Department of Corrections Administrative Directives, including DC-ADM 801 and acted in accordance with those directives.

DATE  *May 7, 2003*

*Capt. V. Mooney*
**VINCENT F. MOONEY,**
**Intelligence Captain, SCI-Mahanoy**

**-3-**

# ATTACHMENT A

DC-135A

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

RECEIVED

SEP 0 7 2000

**INMATE'S REQUEST TO STAFF MEMBER**

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

| 1. TO: (NAME AND TITLE OF OFFICER) | | 2. DATE |
|---|---|---|
| R. Shannon     Superintendent | | 9-5-00 |

| 3. BY: (INSTITUTIONAL NAME AND NUMBER) | 4. COUNSELOR'S NAME |
|---|---|
| — Brett Culver   DD-3483 | Barsh |

| 5. WORK ASSIGNMENT | 6. QUARTERS ASSIGNMENT   D-B  22 |
|---|---|

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.   GIVE DETAILS.

The Harassment by Officer Miknich against me is well known among other employees at this facility. There are certain employees that inform me about conversations they have had, or heard about me from C.O. Miknich.    *Today (9-5-00) I was told by one of these employees that Officer Miknich is actively seeking information concerning me from other employees on D-B.  And this employee informed me that Officer Miknich was making improper statements in reference to me.  This involves conspiracies and stalking.    *All measures of security and protection have been denied by this Administration.  I desperately tried to secure relief on these issues which has been denied.  I tried to secure separation protection which has also been denied to this date.  Everything I have tried to do to secure relief (protection from abuse) has been denied by this Administration "and your authority."  This Administration has supported, facilitated, promoted, and endorsed all facets of harassment and hostilities against my person.  I cannot be held responsible or accountable for any actions on my part that might occur related to these situations being deliberately forced on my person.

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

Provide names to the Security Office. Give them something to work with and your accusations will be formally investigated as they have been previously.

Also – you most certainly will be held accountable for your actions.

R. Shannon Supt

7 Sep '00

cc: Dep. Petruccio
Major McGrardyJ have his latest  complaints investigated.
Unit Mgr Chismar
Adm Asst Dotter

☐ TO DC-14 CAR ONLY

☒ TO DC-14 CAR AND DC-15 IRS

| STAFF MEMBER | DATE |
|---|---|

| DC-141 | PART I | COMMONWEALTH OF PENNSYLVANIA | | | A 212770 |
|---|---|---|---|---|---|

MISCONDUCT REPORT ☐ OTHER   DEPARTMENT OF CORRECTIONS

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| D-3483 | Culver, Brett | SCI-MAH | 1515 | 9/5/00 | 9/18/00 |

| Quarters | Place of Incident |
|---|---|
| HU | Security Office |

OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| Staff | COI Brennan | | ✓ | Staff | Superintendent Shannon | | ✓ |
| Staff | COI Engle | | ✓ | | | | |
| Staff | COI Miknich | | ✓ | | | | |

MISCONDUCT CHARGE OR OTHER ACTION   A. Class # 15. Threatening an Employee or their family with bodily harm.

STAFF MEMBER'S VERSION   On September 5, 2000 Superintendent Shannon received a Request slip from DD-3483 Culver. In the Request slip inmate Culver alledged that Co Miknich was harrassing and stalking him. Culver Further stated "I cannot be held accountable for my actions on my part that might occur related to these situations". On 9/11/00 I attempted to interview inmate Culver concerning his threatening statement, Culver refused to cooperate and explain his statement, therefore his statement is considered a threat to Co Miknich. The difference in the original date of incident and Report date was due to this Reporter being out of the institution until 9/11/00. Misconduct A212769 was dismissed without prejudice Resulting in a new date of Report of 9/18/00.

IMMEDIATE ACTION TAKEN AND REASON   Continue Confinement in the L-5 Pending Further Action By the Hearing Examiner.

PRE-HEARING CONFINEMENT

|  | IF YES | |  | |
|---|---|---|---|---|
|  | TIME | DATE | | |
| ☐ YES | N/A | N/A | FORMS GIVEN TO INMATE | ☐ INMATE'S VERSION |
| ☑ NO | | | ☑ REQUEST FOR WITNESSES AND REPRESENTATION | |

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY   SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY | |
|---|---|---|---|
| Mooney, Vincent F. Intelligence Captain | CO ? B? | DATE 9-18-00 | TIME 24 HOUR BASE 1915 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | Misconduct Category | Signature of Person Serving Notice |
|---|---|---|---|
| DATE 9-20-00 | TIME 0800 | ☑ CLASS I   ☐ CLASS 2 | CO Miknich |

NOTICE TO INMATE

You are scheduled for a hearing on this allegation on the date and the time indicated or as soon thereafter as possible. You may remain silent, if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class I misconduct, any pre-release status you have will be revoked.

Case 1:01-cv-00904-YK-KH   Document 72-4   Filed 05/29/2003   Page 57 of 100

9-11-00

**-141**
**6-84**
**CIPLINARY HEARING REPORT**

**PART II B**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

| Number | Name | Institution | Hearing Date | Hearing Time | No. from Part I |
|---|---|---|---|---|---|
| 3483 | Culver | SCI NAH | 9-22-00 | 10:40 | A212770 |

| IATE | ☐ Guilty | ☐ No Plea | Verdict | ☒ Guilty |
|---|---|---|---|---|
| EA | ☒ Not Guilty | ☐ Other | | ☐ Not Guilty |

**HEARING ACTION**

ARGES  A#15. THREAT — not gp

**IDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED**

Culver Submits a version stating essentially that he did author the attached copy of the request slip. He did make the statement that "I cannot be held responsible or accountable for any action on my part that might occur related to this situation..." But he does not see this as a threat.

I find for the staff report over Culver's denial that the statement he authored in the attached request slip, that he could not be held responsible for _____ any action on his part, as a threat to staff. I find he never left this not meant it as a threat. I find him guilty of this threaty chge.

Sancti: 90 @ DC
DC 9-11-00
To
12-9-00

| | | |
|---|---|---|
| YES ✓ | ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. |
| YES ✓ | ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. |
| YES ✓ | ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. |
| YES ✓ | ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. |

SEE APPENDICES

**NAME(S) OF HEARING EXAMINER/COMMITTEE**
**(TYPED OR PRINTED)**

J V KANE

Hearing Report and all appended information must be signed. Signature indicates finished report with appendices.

**SIGNATURE OF HEARING EXAMINER/COORDINATOR**

**-141   PART II A**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

6-84
TE REQUEST FOR
PRESENTATION AND WITNESSES

| C Number | Name | Institution | Date | Number as on Part I |
|---|---|---|---|---|
| D3483 | CULVER, BRETT | SCI MAh | 9-18-00 | A212770 |

ou have been charged with a misconduct. You may request assistance and/or witnesses to appear at your hearing by completing the section(s) below. _With Assistance by Attorney/Case involves Official Criminal intent._

n order to have assistance or witnesses at your hearing, you must complete this form and present all copies to one of our housing officers no later than 9:00 a.m. the first working day after you receive notice of the misconduct.

Assistance:  ☐ I do not request assistance
☒ I request assistance by _Kelly R. Stuber Esquire_
(The person requested must be willing to assist you)

_Pa. Institutional Law Project_
_924 Cherry St._
_Philadelphia PA._

Witnesses:   You may request witnesses in accord with DC-ADM 801. State the relevance and importance of the testimony the witness will give.

**DO NOT WRITE IN THIS SECTION**
For Use by Hearing Examiner

1. Name of Witness: _Original Document (R. Shannon 95-00) Stamp Dated to V. Mooney Office recipt_  If Inmate Quarters

Witness permitted?    If not, why not?

Why is this person's testimony relevant and important? _Mooney rendering of statement in A212770 altered and not correct to the original text. Also V. Mooney twists this original statement out of the context present in the original. Office Date Stamp for Evidence._

Institutions

2. Name of Witness: _Work Attendance Trucking Record for V. Mooney_  If Inmate No. Quarters 9-5-00 to 9-18-00

Witness permitted?    If not, why not?

Why is this person's testimony relevant and important? _Mooney enters (implies) evidence by testimony in respect that he had not been at this Institution 9-5-00 to 9-11-00 for rational, that this charge could not be written-up (outside his authority and presence) Whomever was V. Mooney's replacement during absence._

no, cag no on request specifically

3. Name of Witness: _Whomever was in charge of V. Mooney's duties_  If Inmate Quarters

Witness permitted?    If not, why not?

Why is this person's testimony relevant and important? _during his explain why nobody at this Prison absence 9-5-00 were found any reason, or could not to 9-11-00 take action if this violation (alleged) existed. And why no violation was found by anyone for the 6 days (six days) V. Mooney alleges he was not at this Institution._

_Brett Culver_
Inmate's Signature

_Hearing Examiner's Signature_

his section to be completed by Housing Officer only
eceived completed form _0645_ hours _9-19-00_
Time    Date

_CO HENDERSON_
Housing Officer's Signature

nannon (Superintendent) ...d not find any violation in document 9-5-00.
...oney did not charge me w... #15 Because document 9...0 was in violation, I
charged with the alleg... ...iolation because I w... wouldn't speak about
...rmation V. Mooney wanted. I was charged because I would not do what
V. Mooney wanted me to do
Document R. Shannon 9-5-00
is not in violation, and they
is no documentation to Him

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

-141    PART II C
6-84    HEARING SUPPLEMENT
...ATE VERSION AND WITNESS STATEMENTS

| : Number | Name | Institution | No. from PART I |
|---|---|---|---|
| -3483 | CULVER BRETT | SCI-MAH | A-212770 |

...ATE'S VERSION

Statement of allegation is a isolated partial of a statement
...ing twisted out of context to which it was presented. Also, this
...lated partial being twisted out of context has been ALTERED
...om its original text, as it is rendered in #A212770. Even
...t of context this isolated partial implies no threat to anyone.
... context presented in the two form documentation sent to R. Shannon
...5-00, this document was a Proclamation. Due to Administrative
...stilities and refusal to address violations being committed against
...y person, I Proclaimed, as to the context, that I am not respons-
...le for any of the issues or situations I have been forced to
...ek relief for or resolution to. And regardless of the Admin-
...trative Official threats to "stop pursuing these issues of
...omplaint, I am not accountable (or responsible) for any
...ctions on my part or efforts to secure relief. "I" am not
...esponsible for these situations or violations being committed
...against me" (I "am not" accountable). XX I also Proclaimed that
...ecause of Administrative Corruption, retaliation, and refusal
...o address/Process these issues, I would not be submitting
...nymore issues to the authority of this Administration.
...uperintendent R. Shannon received this documentation (for record)
...d sent a copy to (    ?    ) to have the ISSUES OF
...OMPLAINT investigated. There was no "alleged Threat" by Super-
...tendent R. Shannon concerning the document. (to be investigated)
...hannon is in a position (d. Authority) and knowledgable enough to know if a rule
...r regulation had been violated. And he would have had me
...harged immediately 9-5-00.) (had there been violated) But no action was taken because no
...ule or regulation had been violated, nor was there any Threat made
...9-11-00 Vincent Mooney did not ask me anything about a Threatening Statement
...s he testifies in his report. V. Mooney was enraged because I immediately
...ld him I had nothing to say to this Administration on these issues.
(Proclaimed in the Document, reasons included) V. Mooney was asking about names
...f employees refered to in the Document "ONLY". I again told him
...d nothing to say, all issues are being handled by outside agencies. In
...ge V. Mooney had me sent to RHU. V. Mooney's report ... implies that Mr
...annon is not capable of reporting this alleged charge, nor is anyone else chargin...
...a... ... 9-11-00. The Proclamation Document itself was specificall...

Exh F

# UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT

## OF PENNSYLVANIA

\* \* \* \* \* \* \* \*

BRETT T. CULVER,      \*

    Plaintiff      \*   Case No.

    vs.      \*   1:01 CV 00904

COMMONWEALTH OF      \*

PENNSYLVANIA,      \*

DEPARTMENT OF      \*

CORRECTIONS,      \*

et al.      \*

    Defendants      \*

      \* \* \* \* \* \* \* \*

RECEIVED
Office of Attorney General
AUG 1 3 2002
Litigation Section

## DEPOSITION OF

## BRETT T. CULVER

## JULY 30, 2002



COPY

Any reproduction of this transcript
is prohibited without authorization
by the certifying agency.

Sargent's Court Reporting Service, Inc.
(814) 536-8908

DEPOSITION

OF

BRETT T. CULVER, taken on behalf of
the Defendants herein, pursuant to
the Rules of Civil Procedure, taken
before me, the undersigned, Rhonda K.
Lingle, a Court Reporter and Notary
Public in and for the Commonwealth of
Pennsylvania, at SCI Frackville, 301
Morea Road, Frackville, Pennsylvania,
on July 30, 2002, at 10:05 a.m.

           A P P E A R A N C E S

NONE PRESENT

     COUNSEL FOR PLAINTIFF


MARYANNE M. LEWIS, ESQUIRE

SUSAN J. FORNEY, ESQUIRE

GREGORY R. NEUHAUSER, ESQUIRE

Chief Deputy Attorney General

Chief Litigation Section

Strawberry Square

Harrisburg, PA  17120

     COUNSELS FOR DEFENDANTS

4

I N D E X

WITNESS:  BRETT T. CULVER

EXAMINATION

   by Attorney Lewis                    7 - 84

CERTIFICATE                            85

<u>EXHIBIT PAGE</u>

| NUMBER | DESCRIPTION | PAGE IDENTIFIED |
|--------|-------------|-----------------|
| E-A | Complaint | 19 |
| E-B | Grievance | 22 |
| E-C | Misconduct Report | 24 |
| E-D | Misconduct Report | 46 |

# OBJECTION PAGE

| ATTORNEY | PAGE |
|----------|------|
| CULVER | 81 |

P R O C E E D I N G S

------------------------------------------

BRETT T. CULVER, HAVING FIRST BEEN

DULY SWORN, TESTIFIED AS FOLLOWS:

------------------------------------------

EXAMINATION

BY ATTORNEY LEWIS:

Q.      Good morning, Mr. Culver.
Once again, I'm Maryanne Lewis from
the Pennsylvania Office of Attorney
General and I represent the
Defendants in a lawsuit that you
filed against them.  Before we get
into the actual deposition, there's
some preliminary matters that we need
to put on the record.

          This is the case of Culver
versus the Commonwealth, et al., and
it's docketed to number 01CV0904, and
it's filed in the Middle District of
Pennsylvania.  We're here today for
the purposes of taking your
deposition in regard to this
complaint.  Have you ever been
deposed before?

1    A.        No.

2    Q.        Let me tell you a little bit

3    about what a deposition is.  Do you

4    have any idea what a deposition is?

5    A.        No idea.

6    Q.        It's a discover mechanism

7    where I will ask you questions

8    concerning this complaint.  As you

9    already are aware, it's testimony

10   that's given under oath.  It's oral

11   testimony and a reporter is going to

12   take down your responses.  Now, I'll

13   ask you a series of questions about

14   the facts and allegations in your

15   complaint and you will give a verbal

16   response to those.

17        Before we even get into the

18   questions, you have two options or

19   choices regarding the reading and the

20   signing of the deposition.  The first

21   option is that you have the right to

22   read it, review it, make any

23   corrections that you believe are

24   appropriate, sign it as to its

25   accuracy and correctness.  If you

9

1  exercise that option, the court

2  reporter will send you a copy of the

3  deposition and then you're going to

4  have to pay for it.  And depending on

5  the length and the mail, the postage,

6  it could be $30 to $40.

7         The other option is that you

8  could waive the signing and reading

9  and assume and trust that the court

10 reporter is going to take everything

11 down correctly and then you don't

12 incur any expenses.  What do you want

13 to do?

14 A.     How was that last one?

15 Q.     Well, the second one is you do

16 not read it and sign it.  You do not

17 get a copy of it.  You will just

18 believe or trust that the court

19 reporter will take down your

20 testimony accurately.

21 A.     Well, first of all, I have a

22 problem with the whole disposition

23 because I am in the care of an agency

24 of the system.  My rights are non-

25 existent.  I filed interrogatories to

1  the Defendants.  Everything I asked

2  for was refused, objected to.  They

3  told me nothing.  They gave me no

4  information.  So why should I be

5  expected --- why does everything have

6  to be one way for them?  Everything I

7  filed to the court has been denied.

8  Everything the Defendants, the

9  violators of the compliant have filed

10  has been granted.

11  Q.    First of all, the purpose here

12  is to take the deposition.  The court

13  authorized it.  There's a court order

14  that permitted your deposition.  If

15  you refuse to testify, that option is

16  yours.

17      Second of all, as far as the

18  interrogatories go, I believe you

19  were provided with answers to those

20  interrogatories and documents as

21  well.  I can see the documents.

22  A.    There's nothing there.  These

23  documents I have.  I didn't ask for

24  none of them.  Everything I asked for

25  was denied and objected to.

1  Q.      And if I do recall, and I will

2  take exception, my recollection is

3  that you filed the motion with the

4  court which was responded to and the

5  Defendants were not deemed by the

6  court to produce any additional

7  information.

8  A.      Well, the questions I asked

9  are pertaining to the complaint, the

10 violations.  I couldn't have been

11 more simpler.

12 Q.      Well, this is not the time and

13 place, of course, to argue as to or

14 discuss the interrogatories.  Answers

15 were provided.  Objections were duly

16 noted.  And if I can recall, I

17 believe you did file a motion which

18 was responded to.  If you have a

19 problem with those answers to

20 interrogatories or document

21 production then I suggest you file a

22 motion with the court.

23 A.      I mean, I have everything I

24 need documented because the four

25 issues raised in the complaint --.

1   Q.     You said you have everything?

2   A.     I have everything I need.

3   Q.     Do you wish to continue with

4   this deposition?

5   A.     No, not one way like this.  I

6   imagine I should be given the same

7   courtesy, you know.  I mean, I have

8   no problem going to court right now

9   on this complaint.  I have everything

10  I need to prove the issues raised in

11  that complaint.  As far as everything

12  being demanded from me and nothing

13  coming from the Defendants at this

14  point, I don't see this --- it's real

15  imbalanced.

16  Q.     Well, Mr. Culver, I have a

17  right under the federal rules to

18  depose you, as you are the Plaintiff

19  in this case and you brought the

20  lawsuit.

21  A.     I understand.

22  Q.     If you do not cooperate with

23  this, this, in fact, could harm your

24  lawsuit.

25  A.     Well, I'm going to retain ---

13

1  I'll go ahead, but I'm going to

2  retain the option to object just as

3  the Defendants did to any questions

4  posed ---.

5  Q.      We can --- I'll address the

6  objections.  You may object and put

7  an objection to the question on the

8  record, but you still have to answer

9  it.

10  A.      Well, they didn't.

11  Q.      They were responded to.

12  A.      I think you're missing the

13  point, but we'll proceed.

14  Q.      What do you want to do about

15  the deposition?  Do you want to read

16  and sign it and pay for the postage

17  or do you want to --- and you have to

18  mail it back to the reporter.

19  A.      And if I don't sign it, I'll

20  be able to get a copy?

21  Q.      I don't know that, if you'll

22  be able to get a copy.  You'll have

23  to pay for the transcript.

24  A.      How much will that cost?

25  Q.      I have no idea.  That's

14

1   between you and the reporter.

2   A.      I have very limited funds, so

3   I don't know.  I really don't see the

4   benefit other than for the Defendants

5   in this.  I'm not really trying to

6   help them in anything.  The court has

7   been up to bat for them since the

8   start of this.

9   Q.      You filed the lawsuit.

10  A.      Yes, I did.  But since then,

11  everything has been in support of the

12  violators and everything has been me,

13  as the victim.  Now, I understand

14  that I have a past record and that

15  I'm in care of this system, but that

16  doesn't negate, you know, it

17  shouldn't compromise the entire

18  system to be against me from the

19  start.

20  Q.      And as I said ---.

21  A.      I see no justice or fairness

22  in this whole complaint, the case

23  that I filed.

24  Q.      And as I explained to you,

25  under the federal rules of Civil

1    Procedure, the Defendants have a

2    right to a defense to the complaint.

3    And that is what my job is, to

4    conduct their defense.

5    A.    Well, I also have a right to

6    the information that they hold that

7    they denied me.

8    Q.    As I said, Mr. Culver - - -.

9    A.    In relation to the violations

10   committed by them as violators.

11   Q.    As I said before, Mr. Culver,

12   if you are dissatisfied with the

13   discovery, you can file another

14   motion.  Were you going to continue

15   with the deposition?

16   A.    It seems very unfair.  I

17   really don't want to, no.  There's

18   nothing fair about this at all.  This

19   is all in - - -.

20   Q.    If you don't continue with

21   this deposition this complaint can be

22   dismissed.

23   A.    I have case law to back up

24   this complaint.  I have documentation

25   to support every violation committed

1  by the Defendants.  If the court

2  chooses to do that then this will be

3  refiled on those grounds.

4  Q.     You're running the risk of

5  this case being dismissed.

6  A.     Okay.  We'll go ahead.  I'm

7  not trying to make enemies with you

8  people.  I understand you have a job

9  to do.  It's just that my point is

10 everything has been very unfair to

11 this point.  I will continue and if I

12 get a copy, I suppose I'll pay for

13 it.

14 Q.     Do I understand that you want

15 a copy of the deposition?  You want

16 to read and sign the deposition?

17 A.     Yeah.  Yes.

18 Q.     The second matter we need to

19 put on the record and we discussed

20 this a little bit is objections.  You

21 have a right to object to questions

22 now or you can hold it until the time

23 of trial, if this case does, in fact,

24 go to trial.  You can waive your

25 objections until the time of trial or

1  put an objection on the record now.

2  What do you want to do with that?

3  A.    I think I'll raise the

4  objection now.

5  Q.    Do you understand if you raise

6  the objection, you're preserving it,

7  but you have to answer the questions?

8  A.    In court?

9  Q.    No, at this deposition.

10  A.    Oh, I see.

11  Q.    If this is being used in court

12  then the objection will be ruled on

13  at that time.

14      The other thing I need to

15  remind you is that this is oral

16  testimony so your answers to the

17  questions have to be oral or spoken,

18  that the court reporter can hear

19  them.  A nod of the head or shake of

20  shoulders is not going to work.  If

21  an answer to a question is yes or no,

22  say it's yes or no or you don't know.

23  She can't put down anything that is a

24  non-response.  If you don't

25  understand the question or if it's

1  unclear, just ask me to repeat it or

2  rephrase it and I will do that.  Do

3  you understand?

4  A.      Yes.

5  Q.      If later in the deposition

6  something comes to mind that you

7  remember concerning a question that

8  was asked before, just stop me, we'll

9  amend your answer to that question.

10  Do you understand that?

11  A.      Yes.

12  Q.      If you answer a question that

13  I ask that you think it's fair for me

14  to ask, but you don't understand it

15  or that you heard the question and

16  it's unclear, just ask me to restate

17  it or to repeat it and I will do

18  that.  Do you understand?

19  A.      Yes.

20  Q.      Do you understand that you're

21  under oath today?

22  A.      Yes.

23  Q.      And that you're obligated to

24  tell the truth?

25  A.      Yes.

19

1  Q.      Is there anything that would

2  prevent you from testifying

3  accurately, such as being under the

4  influence of drugs or alcohol?

5  A.      No.

6  Q.      I think that's it for the

7  background information and we can

8  move into the facts of your

9  complaint.

10                 ATTORNEY LEWIS:

11                 I'm going to hand you a

12            copy of the complaint.  We're

13            going to mark that as Exhibit

14            A.

15                 (Deposition Exhibit A

16            marked for

17            identification.)

18  BY ATTORNEY LEWIS:

19  Q.      Mr. Culver, how long have you

20  been in here at SCI Mahanoy?

21  A.      Three years, since December of

22  '99.

23  Q.      And before you were at Mahanoy

24  where were you?

25  A.      Rockview, SCI Rockview.

Case 1:01-cv-00904-YK-KH   Document 72-4   Filed 05/09/2003   Page 79 of 100

1  Q.      And how long at Rockview, do

2  you recall?

3  A.      I would say since '95, 1995.

4  Q.      And when did you first become

5  incarcerated in the Commonwealth of

6  Pennsylvania?

7  A.      1992 on this.

8  Q.      And you are serving time for a

9  conviction of?

10  A.      Statutory rape, aggravated

11  assault, a number of other things.  I

12  can't even recall.

13  Q.      Do you recall what your

14  sentence is?

15  A.      Seventeen (17) and a half to

16  41, something like that.

17  Q.      That's fine.  Mr. Culver, in

18  your complaint, I'm going to direct

19  you to paragraph one.  You state that

20  Defendant Miknich harassed you with

21  assaultive behavior, threats and

22  illegal seizure, theft of Plaintiff's

23  legal material, records and

24  documents.  Can you explain to me how

25  he harassed you?

1  A.      I came out of the library, he

2  asked me to empty my pockets.  I did

3  so.  He was asking me for my

4  vend-a-card, it's a little plastic

5  card that is used to make copies in

6  the library.  I told him I didn't

7  have it.  And then he proceeded to

8  shake me down the second time asking

9  me about this card that I had already

10 told him I didn't have.  And then he

11 made me sit off to the side for like

12 15 minutes which is all unnormal.

13 It's not a routine shakedown or else

14 he would have just patted me down and

15 let me go.  But he frisked me, shook

16 me down twice, made me sit in the

17 lobby area for 15 minutes, called me

18 back to the desk and he was real

19 agitated with me and he told me I

20 could go then.  And I told him I

21 needed my materials.  He refused to

22 give them to me.  I told him that I

23 need my legal work, that I can't

24 leave without it.

25 Q.      And what did you have with you

1  when you were going to the library?

2  A.    I had a folder like that

3  manila folder right there, packed

4  with legal materials, original copies

5  that I needed copied.

6  Q.    And did you file a grievance

7  concerning Mr. Miknich's alleged

8  behavior?

9  A.    After other attempts through

10  the unit manager and my counselor

11  that tried to retained my legal

12  materials, yes, I had to file a

13  grievance.

14  Q.    And was this on the same date

15  you filed the grievance?

16  A.    I'm not sure.

17  Q.    Let me show you a copy that

18  we'll mark as Exhibit B.  This is the

19  grievance we're talking about;

20  correct?

21           (Deposition Exhibit B

22            marked for

23            identification.)

24  A.    Maybe.  Let's see.

25  WITNESS REVIEWS DOCUMENT

1  A.      Uh-huh (yes).

2  BY ATTORNEY LEWIS:

3  Q.      And I think that was on the

4  same date as you're alleging your

5  complaint; correct?

6  A.      Right, but this was after I

7  talked to the unit manager and

8  counselor about getting back my legal

9  work and they refused to do so.

10  Q.      And you received a response

11  concerning that grievance, the next

12  page, from the grievance coordinator

13  at that time?

14  A.      Oh, this was --- yeah, Banto,

15  yes, I remember this.

16  Q.      And that is the grievance that

17  was responded to; correct?

18  A.      Yes.  In here it mentions the

19  misconduct that Mr. Miknich gave me

20  because I wanted a confiscation slip

21  for my legal materials.

22  Q.      And you did receive a

23  misconduct, in fact, on that same

24  day; isn't that true?

25  A.      On no violation, yes, I did.

1  Q.      I'll show you, and we'll mark

2  this as Exhibit, I think, C, a copy

3  of that misconduct.  This misconduct

4  was issued on the same day; is that

5  correct?

6                  (Deposition Exhibit C

7                  marked for

8                  identification.)

9  A.      Yes, it was.

10 BY ATTORNEY LEWIS:

11 Q.      And if you'll look at the

12 second page of the misconduct, there

13 is a confiscation slip; correct?

14 A.      Yes, there is.

15 Q.      And you did receive a

16 confiscation slip; correct?

17 A.      Yes, I did.

18 Q.      And this grievance, if you

19 will flip to the last page, went

20 through the appeal process at the

21 institution; isn't that correct?

22 A.      If you call it that, yes.

23 Q.      It's the last page.

24 A.      Am I on the wrong stuff?

25 Q.      Yes.  And Superintendent

1  Shannon did review the misconduct?

2  A.      Uh-huh (yes).

3  Q.      And found the procedures were

4  contrary to law and administrated

5  directly and the appeal was denied;

6  is that correct?

7  A.      That's what's marked.  I don't

8  understand it though.

9  Q.      Did you take an appeal of this

10  misconduct to the hearing examiner of

11  the DOC, the chief hearing examiner

12  at the DOC?  Do you recall appealing

13  this misconduct?

14  A.      Not offhand.  I'd have to go

15  through the records.  You have to

16  understand, I have like 500 documents

17  related to all this mess.

18  Q.      Now, Mr. Culver ---.

19  A.      I know that the misconduct was

20  issued after Mr. Miknich discussed

21  the situation with a paralegal coming

22  out of the legal library and he was

23  told by that individual that he could

24  not take my legal work, seize my

25  legal work and therefore he told that

1  individual he's going to get me
2  before I get him.  Then I received
3  this misconduct which has no grounds.
4  It's frivolous.
5  Q.      And do you know the name of
6  the paralegal?
7  A.      Smith.  I have an affidavit
8  written by him.  I submitted it to
9  the court with the complaint.
10  Q.      You raise a good point here,
11  Mr. Culver, because when I received
12  the complaint, you referenced a
13  number of exhibits, which I have
14  never received a copy of.
15  A.      You didn't get those?
16  Q.      No.  If you have those
17  exhibits, maybe before we leave here
18  today, I could get a copy of them.
19  A.      Okay.  I would have to go back
20  to the unit to get them, but I could
21  do that.  There's about --- I'm not
22  going to put a number, but there's a
23  number of affidavits ---.
24  Q.      We'll discuss this after the
25  deposition, how we can work that out.

Case 1:01-cv-00904-YK-KH   Document 72-4   Filed 05/09/2003   Page 86 of 100

1    A.      But Mr. Miknich eluded to some

2    of the materials I had as contraband

3    when I appealed --- made an appeal on

4    that decision, I cited DOC policy and

5    directives on that and I asked that

6    if they support Mr. Miknich's

7    allegations that they do so by citing

8    DOC policy, which couldn't be done.

9    And it was basically just backing up

10   the staff member is what it was.

11   There's no grounds to the misconduct.

12   Q.      But you appealed the

13   misconduct and your appeal and your

14   documents were reviewed and acted

15   upon; correct?

16   A.      Yes, I remember dealing with

17   that part of it.  As far as going all

18   the way, I'm not sure offhand if it

19   did get that far or not because

20   usually at this administration it's

21   not even allowed to go through the

22   entire process.

23   Q.      It's not permitted to go

24   through the entire process?  Can you

25   explain that?

1    A.     Your grievance examiner will
2    say, well, this has to be handled
3    through --- how does she say --- I
4    can't recall how it's phrased, but
5    you have to go through other chain of
6    commands, that it can't be filed as a
7    grievance.  And you go to the other
8    chain of command and you never get a
9    response and it just gets spun around
10   and then you're trying --- it's just
11   --- .
12   Q.     But as far as the misconduct,
13   you're familiar with the
14   administrative directive as far as
15   the appeal process; is that correct?
16   A.     Yes.
17   Q.     And the inmate handbook?
18   A.     Right.
19   Q.     Likewise, the procedures for
20   the grievances?
21   A.     Oh, yes.  I have 18 years
22   experience with this system.  I know
23   how to file a grievance.  I've never
24   had a problem until I came to this
25   administration.

1   Q.      What's your problem with this
2   administration?
3   A.      The administration is
4   dysfunctional.  They don't honor DOC
5   policy and procedure.  They call it
6   as they go.  If you challenge them,
7   you pay the price, but me having
8   nothing to lose and having my legal
9   work taken from me and needing that
10  back, I kind of had, you know, go toe
11  to toe so to speak with this
12  administration and this is the
13  result.  I mean, I've done nothing
14  wrong.  I'm simply trying to get my
15  legal work back.  I'm trying to keep
16  from being retaliated against, thrown
17  in RHU, punished, threatened.
18  Q.      Let me direct your attention
19  to paragraph two of the complaint.
20  In the paragraph you say that Miknich
21  harassed you, presented false
22  allegations, false misconduct reports
23  and charges and point of reference,
24  that's the misconduct A159045 that we
25  just discussed.

30

1    A.     This was the start, yes.

2    Q.     And he illegally seized your

3    legal materials, documents, property.

4    Can you describe what was in this

5    property, this legal property?

6    A.     Documents pertaining to a

7    stabbing assault on my person at

8    Rockview for which I was transferred

9    here.

10   Q.     And when did the stabbing take

11   place?

12   A.     I'm going to say August of

13   '99.  I'm not absolutely sure on

14   that, but I think it was August.

15   Q.     Do you remember what the

16   documents were?

17   A.     Yes, they were administrative

18   documents.  I was suffering terrible

19   post traumatic stress from the

20   assault.  I couldn't sleep.  I was

21   having nightmares and they had locked

22   me up right next to the assailants

23   and they were threatening me every

24   day and everything like this and I

25   was appealing to the staff for some

1  sort of relief from the situation.

2  Q.      This is at Rockview?

3  A.      I mean, these guys were thrown

4  in my face every day, yes.  And also,

5  about documents to the administration

6  trying to get --- they have a

7  monitoring system for the guards'

8  rounds on the tiers in the prison for

9  security measures.  Okay.  At the

10  time of the stabbing there was no

11  staff on those tiers.  It was in

12  between shifts for at least a half

13  hour, if not 45 minutes.  And I

14  wanted records of those check-in

15  stations because they were trying to

16  deny that there was --- but everybody

17  knows there's no staff on.  This

18  stuff goes on all the time, you know.

19  Q.      And the document was?

20  A.      From, I think I sent it to

21  security.  I was asking security for

22  those records so I could, you know,

23  show that --- because I was asleep

24  when the stabbing occurred.  My door

25  was electronically opened and there

1    was no security.  That's why the

2    incident happened.

3    Q.      As to the document that you

4    said was in this packet, this

5    document was a request to staff at

6    Rockview?

7    A.      Yes.  I had a number of

8    documents from the administrative

9    figures at Rockview that I needed a

10    copy of the report.

11    Q.      For?

12    A.      for the legal work I was

13    putting in on the incident.

14    Q.      And what was the legal work

15    that you were putting in?

16    A.      Basically their responsibility

17    for the attack taking place, opening

18    my door while I was sleeping and I

19    was in a single cell, no security.

20    Q.      Was this a lawsuit you filed,

21    or were going to file?

22    A.      I was going to file.

23    Q.      Going ---.

24    A.      I was going through the

25    grievance headaches with the system

1  at that time.

2  Q.     So you were filing a

3  grievance?

4  A.     No.   These were documents I

5  was trying to get relief at the time

6  I was at Rockview through the

7  administrators, but they weren't

8  doing anything for me.   They just

9  threw me in lock up with the

10  assailants.

11  Q.     So we're talking then in April

12  of 2000, these were documents that

13  you had relating to an incident that

14  happened in Rockview?

15  A.     Yes.   Them and certain

16  documents I needed for habeas corpus,

17  I was preparing for my case.   It was

18  my original files.   It was the files

19  I had with my originals that I needed

20  copies of and that's why I was in the

21  library to get them copied.

22  Q.     Back to the misconduct, you

23  received the confiscation slip;

24  correct?

25  A.     Uh-huh (yes).

1    Q.      And the sanction of the

2   hearing examiner in this package, his

3   sanction was --- can you read that,

4   what the sanction was?

5    A.      His handwriting is hard.

6   Something contraband.

7    Q.      It was to revoke the

8   contraband, if I suggest that would

9   you agree that it's revoke

10  contraband?

11   A.      Possibly.

12   Q.      So according to the hearing

13  examiner, the contraband was to be

14  revoked?

15   A.      Can you explain that, revoke

16  contraband?

17   Q.      Well, a hearing examiner made

18  --- .

19   A.      I've got two different

20  interpretations on that.

21   Q.      What were your

22  interpretations?

23   A.      Well, what's your

24  interpretation?

25   Q.      I'm asking the questions, not

1  you.

2  A.      One interpretation was that it

3  had to be given back to me.  The

4  other interpretation was that I get

5  nothing back.  Basically, in so many

6  words.

7  Q.      Did you ever get your

8  materials back?

9  A.      I got nothing back.  That's

10  what this is all about.

11  Q.      And according to this decision

12  by the superintendent your appeals

13  were denied; correct, and he upheld

14  the hearing examiner?

15  A.      That's what it says.

16  Q.      Do you at any time recall

17  signing any slips to have your

18  property destroyed?

19  A.      Most certainly not except when

20  I came out of RHU one time they

21  wanted to take all my stuff and they

22  forced me to sign something.

23  Q.      And who forced you to sign

24  something?

25  A.      The officer receiving me out

1  of RHU that was taking all my
2  personal property.
3  Q.      Do you recall his name?
4  A.      Kingston.  And I think the
5  order was from Lieutenant Brennen.
6  Q.      Did you have any property that
7  was stored anywhere in the
8  institution?
9  A.      The only time my property was
10 stored was when they were throwing me
11 in the RHU.
12 Q.      And upon your release from the
13 RHU, is that the time that you signed
14 the slip to have property destroyed?
15 A.      The thing I had signed for
16 property destroyed was for art
17 materials.  They were taking all my
18 art supplies.  They were basically
19 taking everything I had as far as
20 personal property, commissary items,
21 stuff like that.  The slip that I
22 signed was for art materials, paints,
23 paint brushes, paint boards and
24 finished works.  And that was
25 December 2001, December 9th or

1   something like that is when that
2   paper was signed.
3   Q.      Directing your attention to
4   paragraph three, you make the
5   allegation that on 4/17 Miknich
6   assaulted you again.  What did he do?
7   A.      4/17, oh, this is when I was
8   going to the library again, I do
9   believe.  And he blew up on me.  He
10  works the desk out there.
11  Q.      Did you file a grievance
12  concerning that?
13  A.      I might have.  I went directly
14  to the hole that night.
15  Q.      You might have.  I'll refer
16  you back to your misconduct packet.
17  The date of the hearing.
18  A.      I'm not there yet.  Okay.  The
19  hearing date.
20  Q.      Is that the same day?
21  A.      No.
22  Q.      Well, your complaint says
23  4/17.
24  A.      That might be a typographical
25  error.  This is a different --- this

1  is the first hearing. That was that

2  same day I went to the library, I do

3  believe if I remember correctly. He

4  gave me another misconduct.

5  Q.    There's another misconduct?

6  A.    Yeah, this guy was rifling me.

7  Every time he seen me he was filing

8  false allegations on me, saying I

9  threatened him and his family. The

10  only thing I ever said to him was

11  seven words after the first incident,

12  I said, what's the matter? Can't

13  tell the truth. That was the only

14  words I ever spoke to this individual

15  after he filed that first grievance.

16  He just every time he seen me he was

17  blowing up on me, threatening me,

18  what have you.

19  Q.    Let's move to paragraph number

20  five, you also say that Miknich again

21  threatened you with abusive language.

22  A.    Okay. And your question is?

23  Q.    Tell me what happened. What

24  did Mr. Miknich do?

25  A.    I do believe that's the time I

1  was going to education classes at the

2  education building and I had to sneak

3  around this guy.  And he caught me in

4  the hallway and he was chasing me

5  after, calling me names down the

6  hall.  I was trying to get to the

7  front desk so I wouldn't go to the

8  hole by this guy or something and he

9  blocked the door, threatening me if I

10 went through it --- I don't know, I

11 can't recall what it was, but he was

12 threatening me not to go through the

13 door to get to the outer officers.

14 Q.      And did you file a grievance

15 concerning this?

16 A.      I do believe I did.  No, I

17 think I filed to Camp Hill on that.

18 I think I had given up on the

19 grievance system at this point.  The

20 administration here was doing

21 absolutely nothing but supporting

22 this officer and it had been ongoing

23 for months and months.

24 Q.      Turn to the last page of your

25 grievance package that I handed you.

1    WITNESS COMPLIES

2    A.      This is it.

3    BY ATTORNEY LEWIS:

4    Q.      Let's go to the last page.  I

5    believe it's dated June 8th.  It says

6    begins on June 7th, would that be the

7    grievance?

8    A.      Uh-huh (yes).  I guess I did

9    file.

10   Q.      Is that your signature on the

11   bottom that says, I wish to withdraw

12   this grievance?

13   A.      Brennen, that was a unique

14   situation.

15   Q.      The question is, is that your

16   signature?

17   A.      Yes, it is.  But I do believe

18   I also filed a withdraw of the

19   signature right afterwards.  This was

20   after I was taken to the property

21   office at 8:40 at night.  Kind of a

22   poor situation.

23   Q.      Let's move to paragraph six of

24   the complaint.  It says Miknich

25   obstructed, hindered and prevented

1   you from legal pursuits release and

2   remedies.  How did he do that?

3   A.      By seizure of my legal work.

4   Originals I needed for my legal

5   pursuits, my appeals, everything.

6   Q.      And what are the suits that

7   we're talking about here?  Can you

8   name them for me?

9   A.      That would be the Rockview.

10  Q.      Rockview stabbing that

11  occurred, you believe, sometime in

12  1999?

13  A.      Right, somewhere between

14  August and October, somewhere in

15  there it happened.

16  Q.      You also say that you were

17  injured as a result of this.  How

18  were you injured?

19  A.      Well, to start with it

20  degrades my record.  I can't lower my

21  status.  I'm a troubled inmate.  I

22  had to go to the hole.  I ended up

23  doing, I don't know, four or five

24  months in RHU because of all this

25  junk.