1  Q.      For what misconducts?

2  Certainly not A159045?

3  A.      I did three months in the hole

4  for supposedly threatening this

5  officer.

6  Q.      And when was that?

7  A.      That's when I got out in

8  December.  So October ---.

9  Q.      That was in the fall?

10  A.      Yeah.

11  Q.      We'll get there.  You also

12  state that Defendant Miknich violated

13  your due process and equal protection

14  rights.  How did he do that?  And

15  that's paragraph seven.

16  A.      Well, that pertains to my

17  legal pursuits.  My right to pursue

18  legal remedies and relief.  My right

19  to have legal documents pertaining to

20  my case.  Seizure of my personal

21  property in violation of DOC policy

22  and procedure.

23  Q.      If you go to paragraph nine,

24  paragraph nine alleged that

25  Superintendent Shannon failed and

1  refused to render and perform
2  services, duties.  What services?
3  A.    The ones he's paid to do.  The
4  duties he's paid to perform.
5  Q.    Like what duties are you
6  talking about?
7  A.    This man has compromised his
8  entire office, his entire
9  administration to support this
10 violator.  He had lied.
11 Q.    What violator are we talking
12 about?
13 A.    Miknich, Mooney, all of them.
14 Q.    And how did he do that?
15 A.    By supporting them,
16 compromising his position to do
17 what's right, to follow DOC policy
18 and procedure or to even be honest,
19 the man corrupts his position to
20 support his employees regardless of
21 what is done or said.
22 Q.    Well, what did he do to
23 corrupt his position?
24 A.    Well, he supported --- even
25 the first misconduct, it's frivolous.

44

1    It has no merit.  It had no DOC

2    policy or procedural standing and yet

3    he supported it.  Why?  He doesn't

4    know his job, of course he does.

5    Also, he received a document that

6    they put me in the hole three months

7    a week before they put me in the

8    hole, at that time they said I had

9    threatened Miknich.  From this

10   document there's no threat in the

11   document.  I sent the document to

12   him, explaining to him that he

13   refuses to address these problems and

14   that he only --- that he sends people

15   to threaten me, not to proceed with

16   these issues.  And then when I send

17   him a document telling him, you know,

18   he doesn't need to send his threats,

19   he doesn't have to worry, I'm going

20   to no longer proceed with these

21   issues to this administration, but

22   that I'm going to proceed with them

23   to outside agencies.  I told him I'm

24   not responsible for any of these

25   situations, circumstances or events,

Case 1:01-cv-00904-YK-KH   Document 72-5   Filed 05/09/2003   Page 4 of 45

1  you know.  He sends this document to

2  his superiority office, week later

3  they call me down.  They want to know

4  who the staff members are that I

5  mentioned in there.  And when I

6  refused to tell them, they threw me

7  in the hole.  Later on that night I

8  get a misconduct saying I threatened

9  Miknich in the statement.  In the

10 appeal he never responded to the

11 appeal to his office because I put

12 him on paper asking him if there was

13 a threat in the document to Mr.

14 Miknich why didn't he respond to it.

15 Q.     Let's slow down a minute.  Are

16 we talking about this misconduct

17 appeal or another misconduct?

18 A.     Another one.

19 Q.     Well, we'll get those.  He did

20 respond, though, to this misconduct;

21 correct, you got a copy of his

22 response?

23 A.     To that one he evidently did,

24 but the one I'm referring to, he did

25 not.

1   Q.      We'll get there.  You also say

2   that he collaborated with staff.

3   What evidence do you have that he

4   collaborated with staff?

5   A.      Right what I'm speaking about.

6   His refusal to enter an appeal on

7   that misconduct that had me in the

8   RHU knowing he couldn't respond to it

9   unless he dismissed it because he

10  found no threat in it or action would

11  have been taken at that time.

12  Q.      Is this the misconduct?

13  A.      It could be.

14  Q.      I think this is Exhibit D.

15  Mr. Culver, will you look through

16  this misconduct?

17                  (Deposition Exhibit D

18                  marked for

19                  identification.)

20  A.      Uh-huh (yes).

21  BY ATTORNEY LEWIS:

22  Q.      We have numerous letters here

23  to PRC, numerous appeals.  Isn't it

24  true that they were all responded to?

25  A.      Yeah, but not honestly.  I

1    mean, this is just processing.

2    Q.     And isn't it true that ---?

3    A.     They manipulate the record any

4    way they want with any kind of

5    response they want and there's

6    nothing you can do about it.

7    Q.     You look through the packet,

8    on November 2nd, 2000, you received a

9    two-page response from Superintendent

10   Shannon; correct?  It's the last page

11   in the packet, last two pages.

12   A.     No, I never got this.  No, I

13   never seen this before.

14   Q.     Well, it's addressed to you.

15   A.     It might be addressed to me,

16   but I never received it.

17   Q.     You never received it.

18   A.     You fail to understand how

19   this administration works.  It works

20   any way it chooses to.  It

21   manipulates the record any way it

22   chooses to.  It responds to things

23   when it chooses to.  You receive

24   copies when they decide you will.

25   And you don't when they decide you

1   won't.

2   Q.     Directing your attention to

3   paragraph nine of the complaint.  You

4   allege that the superintendent failed

5   to provide adequate care and

6   treatment.

7   A.     Number nine.  Uh-huh (yes).

8   Q.     What care and treatment are

9   you talking about?

10   A.     Fair and impartial treatment.

11   Ever since I've been here, I mean, I

12   just recently established working

13   privileges.  But for these first

14   three years I was here I was denied

15   everything.  I was not permitted to

16   work.  I was not given inmate

17   compensation.  I wasn't allowed to do

18   nada.  Is that fair and partial

19   treatment?  Of course not.  All the

20   other inmates are permitted these

21   things, I was not.  Why?  Because I

22   filed a grievance on a violation by

23   this administration's staff.

24   Therefore, I was ground up, I was not

25   permitted to work.  I was not

1  permitted to receive inmate

2  compensation.  I was not permitted to

3  take program or whatever.  I don't

4  know.  You tell me.

5  Q.      You also allege that Defendant

6  Shannon violated your 1st, 4th, 8th

7  and 14th Amendment rights.

8  A.      Uh-huh (yes).

9  Q.      How did he do that?

10  A.      Well, that would take a lot of

11  litigation to go over all that.

12  Q.      Let's break it down.  What did

13  he do that violated your 1st

14  Amendment right?

15  A.      Well, I'm not going to be able

16  to cite everything right at this

17  moment because I'm not prepared.  I

18  could go through my records and give

19  you a list.

20  Q.      Send me a list.

21  A.      I'm not able to even answer

22  all these questions completely

23  because I don't have all my records.

24  Q.      What evidence do you have?  I

25  mean, you made the allegation in the

1   complaint.

2   A.     The same thing has been going

3   on since I filed that first grievance

4   have been daily, daily, almost daily

5   harassment by staff and everything

6   else.

7   Q.     We're going to stick to this

8   complaint.

9   A.     I can't even --- I don't even

10   have enough paper to cite all the

11   incidents and things that occur. And

12   up to this date, I've been enduring

13   this. Why? Because this officer

14   took my legal work and the

15   administration refused to return it

16   and supported all the violations,

17   therefore, being committed by this

18   officer and other staff.

19   Q.     And that's how he violated

20   your rights?

21   A.     Well, nobody is doing anything

22   right here. You know, this was a

23   very simple incident to begin with,

24   very simple. Just return the legal

25   work. No.

1  Q.      Did you file ---?

2  A.      I had to be penalized for

3  filing something on a staff member.

4  I had to be put in the hole.  I had

5  to be ground up, so to speak.

6  Q.      You received a misconduct for

7  that incident in March; correct, and

8  it was appealed; correct?  We're back

9  here to the March incident --- or

10  April, excuse me.

11  A.      The first misconduct?

12  Q.      Yes.

13  A.      Yes.

14  Q.      The incident you're talking

15  about is your legal materials?

16  A.      I've been trying to get this

17  back ever since I got ---.

18  Q.      And you also filed the

19  grievance; correct?  And the

20  grievance was responded to; correct?

21  A.      Right.

22  Q.      Let's move to paragraph ten.

23  You allege that Carol Dotter through

24  refusal and neglect of her duties has

25  obstructed, hindered and prevented

1    his ability to establish legal

2    relief, remedies and pursuits?

3    A.      Uh-huh (yes).

4    Q.      Can you tell me how she did

5    that?

6    A.       I can give you a pile of

7    copies of her efforts to prevent due

8    process.

9    Q.      When you filed grievances with

10   Ms. Dotter, she responded to them;

11   correct?

12   A.      Hardly ever.

13   Q.      Hardly ever?

14   A.      Hardly ever.  She refused to

15   accept them.

16   Q.      And if I show you a pack of

17   grievances that have responses to

18   them - - -.

19   A.      Then you can imagine how many

20   I had to file that are not there.

21   Q.      But you received responses?

22   A.      To some.

23   Q.      To some?

24   A.      When they deemed it

25   appropriate to respond to certain

1    ones.

2    Q.    And what grievances are you

3    talking about?

4    A.    I can't --- there is quite a

5    few.  I meant there's many.  I've had

6    nothing but problems with this

7    administration, battles to try to ---

8    grievance issues.

9    Q.    And what evidence do you have

10   that Ms. Dotter collaborated with

11   other individuals?

12   A.    Well, I would have to go

13   through the records and cite

14   documentation of that.

15   Q.    Can you name a few?

16   A.    Offhand I can't.  No.  I would

17   have to refer to the records and get

18   copies of the documentation

19   supporting that.

20   Q.    When you wrote this paragraph,

21   do you recall what information you

22   had to make the allegation?

23   A.    Well, first of all, it is very

24   evident with the evidence

25   documentation that I have that Ms.

1  Dotter has, in fact, utilized her

2  office to try to prevent these issues

3  from being processed on record.

4  Q.      What issues?

5  A.      I would have to get the

6  grievances and cite them.

7  Q.      You also state that your

8  remedies were lost.  What remedies

9  were lost?  Can you tell me?

10  A.      Remedies that I could have

11  obtained through the legal efforts I

12  was pursuing.  I can't really ---.

13  Q.      What specifically were you

14  looking for?  What was the remedy

15  here that she, in some way,

16  prevented?

17  A.      Carol Dotter, remedies to all

18  this mess, giving back my legal work,

19  leave me alone, treat me fairly and

20  unbiasly, give me, you know, the

21  privileges other inmates are getting

22  at this administration.  I've been

23  being denied all this until recently

24  Camp Hill basically handed down maybe

25  orders, I don't know, but they gave

55

1    me a job.  They finally gave me a job

2    six months ago.  I was given a job.

3    Q.      Now, in order to have a job,

4    must you be misconduct free or be out

5    of the RHU?

6    A.      Sure.

7    Q.      And at some point you were in

8    the RHU; correct?

9    A.      At many points I was not.

10   Q.      But you were in the RHU ---?

11   A.      I was on false allegations,

12   false charges because I proceeded to

13   file grievances on administrative

14   staff members, yes.

15   Q.      How did Ms. Dotter violate

16   your 1st Amendment rights?

17   A.      Well, she uses her position to

18   prevent proper resolution to the

19   issues.  She certainly did nothing to

20   try to return the legal documents to

21   me.  It was her position to resolve

22   that issue, as it was with any other

23   issue.  She just has failed to

24   resolve any issue adequately,

25   properly and honestly.

1    Q.      How did she violate your 4th

2    Amendment right?

3    A.      Where are we at in here?

4    Q.      Paragraph 13.

5    A.      I'm on the wrong page.  4th

6    Amendment, can I even remember what

7    that says?  I can't even recall what

8    the 4th Amendment is at this time.

9    Q.      What about the 8th?

10   A.      Offhand, I can't recall what

11   these are, other than the 1st.  I

12   have a copy of them somewhere but

13   they're not with me.

14   Q.      Let's move to paragraph 14.

15   It states that Linda Chismar has

16   conspired and collaborated with

17   offending staff.  What evidence do

18   you have of that?

19   A.      Documented evidence.  She

20   blatantly lied on record.

21   Q.      On what record about what?

22   A.      Well, they had filed a

23   grievance on me saying that when they

24   put me in the hole they said that I

25   had damaged items in the cell and

Case 1:01-cv-00904-YK-KH   Document 72-5   Filed 05/09/2003   Page 16 of 45

1  when I cited a --- when I moved in

2  the cell, the item that they were

3  accusing me of breaking was already

4  broken.  I had reported it to the

5  officer and he wrote a report and

6  when I informed them of that written

7  report, Ms. Chismar falsified the

8  record saying she had that document

9  and that it had nothing to do with

10  the --- that the item was okay when I

11  moved in there.  She knew she was

12  lying, but this is just the way these

13  individuals conduct themselves.

14  Q.      So Ms. ---.

15  A.      She lied to support the

16  misconduct.  She also never did

17  anything when I went to her about the

18  legal work that day.  She could have

19  just called over there and had that

20  officer --- she could have just cited

21  DOC policy and procedure to give me

22  back my legal ---.

23  Q.      What date are we talking about

24  concerning this cell and broken item?

25  A.      I don't know.  I don't know

whether that was the first time they
put me in the hole saying I had
broken it or second. I would not
know. I do not know. They were just
trying to give me misconducts any way
they could and support them by saying
anything they could.

Q.    So she too falsified records?

A.    Most certainly.

Q.    And you have here that she
- - - .

A.    I have proof that she lied on
record, falsified documents.

Q.    What proof do you have?

A.    First of all, I asked for - - -
the document that she was citing that
she said she had right in front of
her, it was impossible for her to
have because she was lying. That was
never produced. When the PRC
inadvertently cited the date of the
document she was referring to, it was
for a time when I was in a different
cell, half a year, a year earlier.

Q.    What document are we talking

1  about?

2  A.      The one she said she had that

3  was supporting the misconduct.

4  Q.      Supporting what misconduct?

5  A.      That I damaged the item in the

6  cell.  But I had done all the work

7  for her citing the dates and

8  everything through this and what

9  document it was.  She said she had

10  it.  It was sitting right there in

11  front of her signed by the officer

12  that I cited and that it said

13  something that it couldn't have said

14  because I know --- I read the report

15  the officer wrote.  I made ---.

16  Q.      And you have these documents?

17  A.      Yes, I do.  But it's just a

18  small example of the way they have no

19  problem lying on record or lying

20  against inmates to support other

21  staff action.

22  Q.      And how did she violate your

23  rights?

24  A.      Well, by not performing the

25  duties she paid to do, the care and

Case 1:01-cv-00904-YK-KH   Document 72-5   Filed 05/09/2003   Page 19 of 45

1  treatment of inmates honestly and

2  - - - .

3  Q.      What duties didn't she

4  perform?

5  A.      Her job.  She uses her

6  position to support corruption.

7  Should people be getting paid tax

8  dollars to do that.  There are many

9  people out there that can do these

10  jobs honestly and professionally if

11  the individual comes in here and

12  abuses their position in forms of

13  corruption.  They really don't have

14  any right to those paychecks; do

15  they?

16  Q.      What did she do that was

17  corrupt?

18  A.      She compromises her position

19  in any way she feels or deems

20  necessary.

21  Q.      And how does that relate to

22  this complaint?  What did she do?

23  A.      Well, she's involved in

24  misconducts that they were trying to

25  get me in between.  They were all

1    just trying to ruin my record,

2    degrade my record, make me out to be

3    whatever they wanted me to be in

4    retaliation for my efforts to try to

5    get my legal work back and to resolve

6    the issues I was having with Mr.

7    Miknich, Officer Miknich.

8    Q.        So you're telling me that ---?

9    A.        This is all a collaborated

10    grind Mr. Culver up thing.  I mean,

11    I've done nothing wrong.  And that's

12    the point of all this.  I'm not the

13    violator.  I'm not the --- I mean,

14    I'm in jail, but I'm not the bad guy

15    in all of this.  I simply was trying

16    to do my legal work and the rest is

17    violation, retaliation, you know, and

18    everything else.  So I just ---.

19    Q.        And the retaliation and

20    correct me if I'm wrong, is because

21    you filed the initial grievance in

22    April?

23    A.        Yes, I do believe because a

24    violation was committed against me by

25    a staff member and I filed it on

62

1    record.   Yes, I do believe that.

2    It's quite evident.

3    Q.      Paragraph 16, you say that

4    Kevin Kane used his authority to

5    fairly, impartially and justly

6    towards Plaintiff.   He failed to

7    fairly, impartially and justly

8    towards Plaintiff.   I think that's

9    --- authority, fairly, impartially

10   and justly towards Plaintiff.

11   Explain that to me.   What do you mean

12   by that?

13   A.      Kevin Kane has failed and

14   refused to render services and duties

15   entrusted to his authority fairly,

16   impartially and justly towards

17   Plaintiff.   He's just like the rest

18   of them.   He compromises his position

19   to support violations committed by

20   fellow staff members of this

21   administration.   He will not correct

22   the situation or justify the record.

23   Q.      And he was the hearing

24   examiner in both of those

25   misconducts; correct?

1    A.       For all of them, yes.

2    Q.       And you received sanctions as

3    a result of those misconducts;

4    correct?

5    A.       Yes, I did.

6    Q.       And how did he violate your

7    constitutional rights?

8    A.       Supporting the staff

9    violations. I do feel that he

10   collaborated with Vincent Mooney to

11   give me three months in RHU for no

12   violation, just to grind me up to

13   make me shut up because I'm a wise

14   guy for filing on record these

15   violations of staff.

16   Q.       And just once again, in this

17   - - -.

18   A.       He also falsified a record

19   document date.  It turned out that he

20   didn't need to, but he did.

21   Q.       He falsified - - -.

22   A.       There was six of us that went

23   to the hearing that day and everybody

24   else's documents were dated correctly

25   except for mine.  It was because time

1  limitations under the old policy
2  would have ran out and I said
3  something about it and so he
4  backdated those records and I noticed
5  it after the hearing and then I guess
6  the new policy took affect that date.
7  So evidently he wasn't sure at that
8  time whether it was effective or not.
9  So he just backdated the documents so
10 the time limitations wouldn't have
11 run out as I injected in my - - -.
12 Q.      So you appealed the misconduct
13 that Mooney wrote on you and I think
14 it was misconduct number A212770;
15 correct?  Do you have the packet?
16 A.      This packet?
17 Q.      This one here.
18 A.      What number?
19 Q.      212770.  And you appealed
20 this?
21 A.      Yeah, this is the one Shannon
22 never responded to until I see this
23 today.
24 Q.      And it went to the Chief
25 Hearing Examiner, Mr. Bitner's

1  office; correct? And it went to the

2  superintendent also.

3  A.      Yeah, that's proof of this

4  because I never filed to Camp Hill.

5  I was waiting on the superintendent's

6  response, which I never got, so I

7  never appealed to Camp Hill. This

8  appeal never went to Camp Hill

9  because I was waiting on the

10  superintendent's response, which I

11  never got and I got a response from

12  Camp Hill and I wrote them saying,

13  well, I can't even appeal this to

14  your office. I'm still waiting on

15  the superintendent's response, which

16  I never got. And so I filed again to

17  the superintendent. He said he made

18  a response, but he never gave me a

19  response and I never filed it to Camp

20  Hill.

21  Q.      Well, we have a response from

22  the chief hearing examiner and said

23  he reviewed the record of the appeal.

24  A.      Where's my appeal to Camp Hill

25  then?

1    Q.        I think we have a document

2    that's dated October 13th that is

3    another appeal to Superintendent

4    Shannon.  We have a program review

5    committee decision dated October 5th.

6    I mean, you can look through the

7    packet.

8    A.        And there's no appeal to Camp

9    Hill.  I never got this response from

10   Shannon.  He knows it.  I know it.

11   Q.        Well, but you wrote to the

12   superintendent on October 25th.

13   A.        Yes.

14   Q.        The response is - - -.

15   A.        He said he gave me a response,

16   but I never got it.  And I told him

17   that repeatedly.  I told him I never

18   got a response from him.  He could

19   have just gave me a copy; correct?

20   Q.        I think his response is dated

21   after there were two letters to him.

22   A.        Right.  That would be correct.

23   Q.        So he responded to you.

24   A.        I never got it.  Oh, this one.

25   Yeah, I never got it.  He evidently

1 made one up after he told me he gave

2 me one and that's why it's dated

3 later, after my responses of not

4 receiving it.  And I still never got

5 a copy.

6 Q.      So you're saying he made it

7 up?

8 A.      And I never appealed it to

9 Camp Hill because I was waiting for

10 that response which I never got.  And

11 I would love to read this in full.  I

12 never even seen it.

13 OFF RECORD DISCUSSION

14 A.      Unless he's got his records

15 confused, he's referring to a

16 different appeal because all he has

17 cited is a PRC response and then

18 Chief Bitner's office response, the

19 final review and he isn't even in

20 there, his office, his chain of

21 command.  I can't even understand

22 this.  This is incorrect, but it

23 still doesn't have his chain of

24 command included.  Wait a minute.

25 Yeah, this is all incorrect.

1    Hogwash.

2    BY ATTORNEY LEWIS:

3    Q.      And how did Hearing Examiner

4    Kane violate your constitutional

5    rights?

6    A.      By supporting and giving

7    sanctions on frivolous --- these

8    frivolous misconducts that half of

9    which had no merit.  The document

10   that they said was a threat to

11   Miknich and his family, there's no

12   threat in that document.  It's a

13   written document.

14   Q.      You're talking about the

15   misconduct?

16   A.      I'm talking about the one he

17   gave me three months in RHU on.

18   Q.      That's 212770, the one we just

19   looked at?

20   A.      Yes.

21   Q.      Paragraph 18 of your complaint

22   --- .

23   A.      Plus there was a history of

24   Miknich filing frivolous misconducts

25   stating that I threatened him and his

1    family which were not supported by

2    his own authority and yet this one

3    was.

4    Q.      Well, wasn't this misconduct

5    issued by Mooney, Captain Mooney?

6    A.      Vincent Mooney, yes.  That was

7    on the document that he received a

8    week after it was received by

9    Superintendent Shannon.  It was to

10   Superintendent Shannon because he had

11   basically sent threats by way of Ms.

12   Chismar to me not to pursue these

13   efforts or these issues.

14   Q.      And the issues we're talking

15   about?

16   A.      I was told I was making

17   enemies in high places.

18   Q.      And who told you this?

19   A.      Ms. Chismar.

20   Q.      Paragraph 18 in your complaint

21   you state that Mooney deliberately

22   accosted Plaintiff with retaliatory

23   assaults of false claims, allegation

24   and charges.  What charges are you

25   talking about and allegations?

1   A.     The gasket he blew when I

2   wouldn't give him information he

3   wanted on the staff mentioned in that

4   document to Shannon.

5   Q.     And when ---?

6   A.     He had me thrown in the hole

7   later on.  He devised this misconduct

8   that I had threatened to harm Miknich

9   and his family.

10   Q.     The false accusations would be

11   in this misconduct; is that what

12   you're saying?

13   A.     It's all false, sure.  There's

14   nothing true there.  I've threatened

15   nobody.  I have 18 years in the

16   prison system.  I have no misconducts

17   even close relating to these

18   misconducts these people are giving

19   me.  It's totally out of my

20   character.

21   Q.     You also said that he

22   collaborated efforts with Defendants

23   Shannon and Kane.  What evidence do

24   you have of that?

25   A.     They all know what's up.  They

1    all know these are frivolous charges.

2    They all know I haven't threatened

3    anybody.  They all know that I'm

4    filing grievances on a violation by

5    one of their staff members who they

6    backed up from day one, that they're

7    not going to change up now.  They're

8    just going to continue suppressing

9    me, the whistle blower or whatever

10   you want to call me.

11   Q.      Paragraph 20, it states that

12   Vincent Mooney assaulted you by

13   threatening you with bodily harm.

14   Tell me how that happened.

15   A.      There was a security

16   situation, L5 D-pod.  The inmates

17   were holding trays because the

18   officer working wasn't feeding

19   individuals he didn't like.  So there

20   was a bit of a --- I don't know what

21   you call it, maybe a rebellion and

22   the inmates were holding trays until

23   everybody got fed.  It was a security

24   situation.  They sent Captain Mooney

25   and some other lieutenant.  I don't

1  know his name.  And they were on the

2  pod investigating the situation.  And

3  he came by and looked in my door and

4  I said, you're here to lie on

5  somebody else.  I shouldn't have said

6  that, but I'm sitting here doing

7  three months in RHU for doing nothing

8  because this individual lied on me.

9  He snaps out.  He's kicking and

10  punching the door, telling me --- I

11  can't even remember all he was

12  saying.  I'm lucky there's a door

13  between me and him and this and that.

14  But I know the video cameras are on

15  because it's a security situation on

16  this V-pod.  So I file charges on

17  this guy because he's doing exactly

18  what he falsely states I did and why

19  I'm being held in the RHU.  This

20  individual, the captain of the

21  security office, and he's making

22  slanderous remarks to the whole pod

23  trying to instigate inmate aggression

24  against me and everything else.  So I

25  filed charges of his terroristic

73

1   threats and everything to the state
2   police.   They never do anything, but
3   I also sequestered those tapes for
4   evidence because I know they exist.
5   Q.      Let's back up a minute.
6   A.      To his office, to the
7   superintendent's office, the Camp
8   Hill office, to every office I could
9   possibly think of because I knew they
10  would try to make those tapes
11  disappear.
12  Q.      Let me ask you a question.
13  This date you say is October 13th,
14  2000.   This is while you're still in
15  the midst of appealing your
16  misconduct that Mooney brought on
17  you; correct?
18  A.      Most possibly, yes.   I was
19  doing everything to try to get out of
20  that situation I was wrongfully
21  subjected to.
22  Q.      I think you'll note in your
23  misconduct packet on the 12th, I
24  think you wrote an appeal to
25  Superintendent Shannon concerning the

1    misconduct that Mooney wrote;

2    correct?

3    A.      Okay.

4    Q.      That's your appeal that's

5    dated the 12th of October; correct?

6    A.      Uh-huh (yes).  Yes.

7    Q.      So this is the next day?

8    A.      I don't know, 10/12.

9    Q.      And you have in your complaint

10   10/13.

11   A.      I was in the hole --- or RHU

12   at this time, yes.

13   Q.      On the misconduct that Mooney

14   wrote; correct?

15   A.      Yes.

16   Q.      Did you file a grievance

17   concerning his alleged activities,

18   Mooney's?

19   A.      I might have.  I don't know.

20   I've tried everything to resolve

21   these problems.  And like I said, I

22   have a pile of efforts trying to

23   grieve issues and most of them

24   rejected and few responded to and

25   I've been going through it.  I have

1    like 500 documents on this stuff.

2    Q.      Did you also file a complaint

3    with the Bureau of Professional

4    Responsibility concerning Mr. Mooney?

5    A.      Possibly.  I'm pretty sure I

6    did.

7    Q.      And do you remember giving an

8    interview to a Lieutenant Datcho

9    (phonetic)?

10   A.      Yes, I do remember that.

11   Q.      And this matter was

12   investigated that you alleged;

13   correct?

14   A.      If you call it that, by a

15   fellow staff member, yes, who tried

16   to rationalize his conduct and

17   everything which is cited was not

18   appropriate professionally and that

19   it did jeopardize my safety within

20   this facility.

21   Q.      And do you recall if any

22   action was taken against Captain

23   Mooney?

24   A.      No, I never got a response,

25   no.  Nothing has changed.

1  Q.      How did Defendant Mooney

2  violate your constitutional rights?

3  A.      By using his position the way

4  he does.  He abuses his authority.

5  He uses his position to abuse me

6  personally.  My biggest issue over

7  all this, besides the legal work, is

8  basically the unprofessionalism and

9  the authoritative abuse by a lot of

10  staff members in this administration.

11  Like I said, there's many people out

12  there that can do these jobs honestly

13  and professionally that should be

14  given these positions instead of

15  individuals that are going to

16  compromise the position and abuse

17  their authority in any way they

18  choose to.

19  Q.      How was Defendant Mooney

20  unprofessional?

21  A.      Well, you could ask probably

22  anybody in the institution that

23  question and you'd get a number of

24  responses.  But he's very

25  unprofessional and very

1  authoritatively abusive.  He follows

2  no rule, no policy, no directive

3  other than when he has to.  But he

4  manipulates the system anyway he

5  chooses to, to achieve his own

6  agenda.  In this case, to retaliate

7  against me.  He is the one that wrote

8  this misconduct that placed me in the

9  hole for 90 days when I had done

10  nothing wrong other than try to

11  appeal for the return of my legal

12  materials and to prevent this Officer

13  Miknich from continuing to accost me

14  with false allegations and

15  misconducts.  That's all.  I'm not

16  asking for anything wrong.  I'm not

17  asking for anything extra.  I'm not

18  asking for any favors.  I'm asking

19  for what's right, you know.

20  Q.      In paragraph 19 you state that

21  Mooney had collaborated efforts with

22  Defendants Shannon and Kane.  How?

23  A.      They're all aware of the

24  situation, circumstances and events.

25  They're all aware what they're doing

1    is wrong.  They're all manipulating

2    their positions and using their

3    authority to retaliate against me.

4    Q.      And what evidence do you have

5    that they collaborated?

6    A.      All that I have.

7    Q.      And what's all that you have?

8    A.      Like I said, about 500

9    documents involving all this.  I

10   would love to show them to the court,

11   love to.  There's so many things that

12   I have that ain't even included in

13   all this.  You know, it's just you

14   would not believe the retaliation I

15   have had to put up with since I filed

16   for that legal work to be returned.

17   Q.      You allege in paragraph 23

18   through 26 that Martin Horn failed to

19   perform duties and that he was

20   negligent, he is responsible for

21   these incidents.  Can you explain

22   those paragraphs?

23   A.      Basically as an administrator

24   of the DOC I do believe it's

25   procedural.

1 Q.      Just as an administrator of

2 the DOC?

3 A.      He should be in control of the

4 DOC and his underlying

5 administrators, yes.  I imagine

6 somebody in the top office has to

7 bear responsibility and

8 accountability for violations or

9 errors of ---.

10 Q.      And what did he do to violate

11 your constitutional rights?

12 A.      Well, evidently somebody ---

13 some members of the administrative

14 chain is failing to prevent these

15 incidents from happening the way

16 they've happened here.  There's been

17 no resolution.  There's been no

18 attempts at resolutions other than in

19 favor of the violator.  I still have

20 not gotten my legal work back.  I'm

21 entitled to that.  I'm entitled to my

22 personal property, my legal documents

23 and records.  I have not received

24 those back.  What I have received has

25 been total retaliation, abuses,

1  punishments, threats.

2  Q.      Who retaliated against you?

3  A.      The entire administration, all

4  the times I was put in the hole on

5  false misconduct allegations, the

6  refusal to resolve any of the issues

7  properly, nothing has been resolved.

8  It's just been the violators have

9  been supported, that's it.  This is

10  denied.  That is denied.  Everything

11  is denied.  The conduct of the staff

12  members is supported basically, cut

13  and dry.  That's all these papers

14  are.  Nothing has been resolved.

15  Nothing has been addressed properly

16  or honestly or professionally.  I'm

17  sorry, I didn't mean to --- go ahead.

18  Q.      Mr. Culver, now, you said that

19  you have approximately 500 documents?

20  A.      I would say at least that,

21  yes.

22  Q.      Where are these documents?

23  A.      Are they going to come for

24  them later?

25  Q.      Well, where are the documents?

                    MR. CULVER:

                    I object.

A.      I have them.

BY ATTORNEY LEWIS:

Q.      You have them?

A.      They exist.

Q.      They exist?

A.      They exist.

Q.      I'm going to, in the next few
days, get together something called a
request for production of documents
that I will serve on you.  Can we
make an arrangement here that you can
have them --- there will be a request
and then you're going to have to
produce them.

A.      Can I object to that?

Q.      On the basis?  What's your
objection?

A.      I think I've given you a fair
amount of information to your
questions here that are outlined in
this complaint.

Q.      But once again, Mr. Culver,
under the federal rules of Civil

1  Procedure, I have a right to request

2  those documents.  You've been

3  explaining to me through the course

4  of this deposition that they are

5  relevant.

6  A.      Uh-huh (yes).

7  Q.      You, in fact, with the

8  questions you have documents to back

9  this up.  I have a right to see those

10  documents.

11  A.      I plan to present them in

12  court.  You don't want to wait until

13  then?  Yes.  But like I said in the

14  beginning, I also feel that I have

15  that right of courtesy which was

16  never extended to me by the

17  Defendants.  I mean, they explained

18  it their way, but the things I asked

19  for are directly related to the

20  violations committed.  And they're

21  going to be brought up in court and

22  they're going to have to present them

23  in court anyway.  The only difference

24  is, I don't have the courtesy to have

25  that material to present the issues

1   in the complaint because they refuse

2   to give them to me.  But they will be

3   brought out in court.  So that's, you

4   know, you see what I'm saying?

5   Q.      Do you have anything you'd

6   like to put on the record as far as

7   this case?

8   A.      No, ma'am.  Other than the

9   harassment, the verbal harassment by

10  staff members has been ongoing.  I

11  have had problems with inmate

12  population because of the slanderous

13  allegations Vincent Mooney made

14  during the incident in L5 D-pod to

15  try to instigate inmate aggression

16  against me.

17  Q.      How so?

18  A.      He made a lot of slanderous

19  statements against me to try to turn

20  inmates against me, to have them

21  retaliate against me, basically

22  assault me, if possible.  And I've

23  had problems since then with certain

24  individuals that were present on that

25  pod during that time when he made

1    those statements and I've gotten

2    threats and been in --- I can't

3    really state the incidents because

4    they could probably be used against

5    me, you know.  So at this time we'll

6    just say that I've been put in

7    dangerous situations because of those

8    statements that Security Captain

9    Vincent Mooney made in slander

10   against me during that incident.

11   Q.      Anything else?

12   A.      Nope.  No.

13                    ATTORNEY LEWIS:

14                    Thank you.

15

16            *  *  *  *  *  *  *  *

17      DEPOSITION CONCLUDED AT 11:40 A.M.

18            *  *  *  *  *  *  *  *

19

20

21

22

23

24

25

COMMONWEALTH OF PENNSYLVANIA)

COUNTY OF CLEARFIELD          )

C E R T I F I C A T E

I, Rhonda K. Lingle, Notary Public in and for the Commonwealth of Pennsylvania, do hereby certify:

That the witness was hereby first duly sworn to testify to the truth, the whole truth, and nothing but the truth; that the foregoing deposition was taken at the time and place stated herein; and that the said deposition was taken in Stenotype by me and reduced to typewriting, and constitutes a true and correct record of the testimony given by the witness.

I further certify that the reading and signing of said depositions were (not) waived by counsel for the respective parties and by the witness.

I further certify that I am not a relative, employee or attorney of any of the parties, nor a relative or employee of counsel, and that I am in no way interested directly or indirectly in this action.

IN WITNESS WHEREOF, I have hereunto set my hand and stamp this 8 day of Aug 2002.

*Rhonda K. Lingle*

NOTARIAL SEAL
RHONDA K. LINGLE, Notary Public
Clearfield, Clearfield County, PA
My Commission Expires July 11, 2005

· PITTSBURGH, PA

· CLEARFIELD, PA

· STATE COLLEGE, PA

· HOLLIDAYSBURG, PA

· ERIE, PA

· OIL CITY, PA

· HARRISBURG, PA

SARGENT'S
COURT REPORTING
SERVICE, INC.
210 Main Street
Johnstown, PA 15901

· INDIANA, PA

· GREENSBURG, PA

· PHILADELPHIA, PA

· SOMERSET, PA

· WILKES-BARRE, PA

· CHARLESTON, WV

## <u>CERTIFICATE OF SERVICE</u>

I, **MARYANNE M. LEWIS**, Deputy Attorney General, hereby certify that on this date I caused to be served the foregoing **Documents in Support of Defendants' Motion for Summary Judgment**, by depositing a copy of the same in the United States mail, postage prepaid, in Harrisburg, PA., addressed to the following:

**Brett T. Culver, #DD 3483**
**SCI-Mahanoy**
**301 Morea Road**
**Frackville, PA  17932**

**MARYANNE M. LEWIS**
**Deputy Attorney General**

**DATE: May 9, 2003**